# APPENDIX

# TABLE OF CONTENTS

**First Principal Investment**

- 116 Coquillard (1-1)
  - Promissory Note (Note 1-1)................................................................A-1
  - Disclosure Document (DD 1-1)..........................................................A-8
- 4109 NE Sumner (1-2)
  - Promissory Note (Note 1-2)............................................................A-14
  - Disclosure Document (DD 1-2)........................................................A-17
- 625 SE 49th (1-3)
  - Promissory Note (Note 1-3)............................................................A-23
  - Private Placement Memorandum (PPM 1-3)....................................A-25

**Second Principal Investment**

- 22209 CR 10 (2-1)
  - Promissory Note (Note 2-1)............................................................A-38
  - Disclosure Document (DD 2-1)........................................................A-46
- 4134 N. Michigan (2-2)
  - Promissory Note (Note 2-2)............................................................A-52
  - Disclosure Document (DD 2-2)........................................................A-55

**Third Principal Investment**

- Sheriff Sale (3-1)
  - Promissory Note (Note 3-1)............................................................A-61
  - Disclosure Document (DD 3-1)........................................................A-68
- 2025 Harold (3-2)
  - Promissory Note (Note 3-2)............................................................A-74
  - Disclosure Document (DD 3-2)........................................................A-76
- 1116 NE Failing (3-3)
  - Promissory Note (Note 3-3)............................................................A-82
- 8235 SE 45th (3-4)
  - Promissory Note (Note 3-4)............................................................A-86
  - Private Placement Memorandum (PPM 3-4)....................................A-89
- 1500 Zuider (3-5)
  - Promissory Note (Note 3-5)..........................................................A-100
  - Private Placement Memorandum (PPM 3-5)..................................A-102

# NOTE 1-1

## PROMISSORY NOTE
### TERM NOTE

**COPY**

116 Coquillard
South Bend

Middlebury, Indiana
May 21st, 2013

$50000.00

#1

FOR VALUE RECEIVED, the undersigned, 5Star Investment Group V, LLC, ("Borrower"), who address is P.O. Box 706 Middlebury, Indiana 46540, promises to pay to the order of William Adamczyk ("Lender"), whose address is 740 Drury Court, Gurnee, IL 60031, the principal sum of Fifty-Thousand US dollars ($50000.00) Interest will accrue under this Note at the rate of Ten Percent (10%) per annum. Borrower promises to pay all attorney's fees, paralegal's fees, and any costs and expenses incurred by Lender in connection with collection under this Note. Borrower agrees that all amounts payable under this Note shall be paid without relief from valuation and appraisement laws. The principal and interest under this Note shall be payable at the address set forth above for Lender as follows:

a. Borrower shall make Thirty (30) consecutive monthly payments of $416.67, which shall be due and payable beginning July 15, 2013, (June payment to be pro-rated from May 21st to June 15th) and shall be payable on the same day of each consecutive month thereafter; and

Then, on the sooner of Thirty months from July 15, 2013 or the sale of the real estate serving as collateral for this Note under a Mortgage of even date, the balance of all principal and interest due and owing under this Note shall be paid in full. Any request from a borrower for his or her funds before the end of this 30-month period may or may not be honored at the sole discretion of the Company, and if and when agreed to by the Company, the borrower shall receive back his or her initial investment amount, minus an early-withdrawal penalty equal to two percent (2%) of the initial investment amount. No additional interest will be earned upon the funds invested or due to the borrower after such a request for early withdrawal is made and the loan amount is repaid.

b.

If any payment shall be paid more than thirty (30) days after the due date thereof, a penalty equal to three percent (3%) of the amount due and owing shall be paid with said payment as a penalty for the delinquency.

If Borrower fails to pay interest or other amounts under this Note when due, or if Borrower shall be dissolved, merge or consolidate with any other firm or entity, or Borrower files a petition in bankruptcy, or one is filed against Borrower, or if Borrower defaults under the mortgage, Lender may declare all amounts due under this Note immediately due and payable.

The Lender may unilaterally defer (in writing or without notice to the Borrower) one or more monthly payments or may not require one or more monthly payments to be made when due, with our without notice to the Borrower, but any such deferral shall not be considered a waiver of the Lender's rights to enforce this Promissory Note, in whole or in part.

Initial _____

**A-1**

# NOTE 1-1

No failure by Lender to exercise any right under this Note, including any rights resulting from an event of default, shall operate as a waiver or otherwise prevent Lender from exercising any of Lender's rights under this Note at any other time, including the exercise by Lender of any rights at any time during the continuance of such event of default or on the occurrence of a subsequent even of default.

The holder of this Note, in its sole discretion, may renew this Note, accept a renewal Note or Notes, extend the time for the payment of the indebtedness evidenced by this Note, reduce the payments under this Note, or do any combination of such actions on any number of occasions; provided, however, any such action or omission shall not release the Borrower on the obligations evidenced by this Note. Borrower waives presentment for payment, protest, notice of protest, notice of non-payment or dishonor of this Note, and diligence in the collection of this Note; and Borrower consents to any actions by Lender or any holder of this Note as set forth in this paragraph.

If this Note is negotiated by Lender, the word "Lender" as used in this Note shall refer to the "holder" unless the context otherwise requires.

**Because of our filing that we have to do with the Securities Exchange Commission we are required to have our investors indicate whether they are an "Accredited" or a "Sophisticated" investor. Please initial which ever option applies:**

1. I am an accredited investor by nature of my income or net worth. _____.
   *Definition: (Any person whose individual, or joint net worth exceeds $1,000,000 or has an income in excess of $200,000 in each of the two most recent years or joint income with that person's spouse in excess of $300,000 in each of those years and has a reasonable expectation of reaching the same income level in the current year)*

2. I am a sophisticated non-accredited investor, meaning that although I may not be an accredited investor by nature of my income or net worth, I have sufficient investing experience and an understanding of the risks and benefits of investing in general and this offering in particular. _____.

Borrower: 5 Star Investment Group V, LLC

Signed: *Earl Miller*

Printed: *Earl Miller* _____ (Manager)

Investor_____  Date __May 21st, 2013__

# NOTE 1-1



*1 3 1 6 6 2 9  5*

1316629
RECORDED AS PRESENTED ON
06/05/2013  07:55:09AM
PHILLIP G. DOTSON
ST. JOSEPH COUNTY
RECORDER
PGS: 5  FEES:  $22.00

*116 Coquillard*

*Southbend*

## REAL ESTATE MORTGAGE

This indenture witnesseth, that for $1.00 and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, 5 Star Investment Group V, LLC (the "Mortgagor") whose address is 304 N. Main Street Suite A Middlebury, Indiana 46540, Elkhart County, State of Indiana mortgages and warrants to William Adamczyk located at: 740 Drury Court, Gurnee, IL 60031 (the "Mortgagee") of Lake County, IL, the following described real estate in St. Joseph County, Indiana:

See Exhibit "A"

(hereinafter referred to as the "Mortgaged Premises") together with all rights, privileges, interests, easements, hereditaments, appurtenances, fixtures and improvements now or hereafter belonging, appertaining, attached to, or used in connection with, the Mortgaged Premises, and all the rents, issues, income and profits thereof.

This Mortgage is given to secure the performance of the provisions hereof and the payment of a certain Promissory Note dated the 21st day of May, 2013, as it is amended, replaced and/or extended from time to time in the principal amount of Fifty-Thousand U.S. Dollars ($50000.00), with interest as set forth in the Note. The Mortgagor and Mortgagee may replace, amend, extend, renew or substitute said Note, which shall in each and every case be secured by this Mortgage and shall be considered the "Note" for all purposes of this Agreement.

Said principal and interest are payable as follows:

**As set forth in the Note.**

Mortgagee may unilaterally defer (in writing, or orally, or without notice to the Mortgagor) one or more payments to be made when due with or without notice to the Mortgagor, but any such deferral shall not be considered a waiver of Mortgagee's rights to enforce this Mortgage, in whole or in part, and shall not be a legal basis from which Mortgagor shall be entitled to argue that the statute of limitation has run or begun to expire with respect to any payment on this Mortgage.

This Mortgage is to secure any and all indebtedness owing to Mortgagee up to a maximum principal amount of Fifty-Thousand US Dollars ($50000.00), together with costs, expenses and reasonable attorney's fees, plus all interest which accrues after the date hereof.

**A-3**

# NOTE 1-1

The Mortgagor jointly and severally covenants and agrees with the Mortgagee that:

1. **Payment of Indebtedness.** The Mortgagor shall pay when due all indebtedness secured by this mortgage, and perform all obligations under this Mortgage, on the dates and in the amounts, respectively, as provided in the Note or in this Mortgage, without relief from valuation and appraisement laws, and with attorneys' and paralegals' fees.

2. **Liens.** The Mortgagor, by its duly authorized representative, and by the duly authorized representative individually, hereby jointly represent and warrant that all mortgages or liens in the Mortgaged Premises will be paid according to their terms.

3. **Repair of Mortgaged Premises; Insurance.** The Mortgagor shall keep the Mortgaged Premises in good repair and shall not commit waste thereon. The Mortgagor shall procure and maintain in effect at all times adequate insurance in insurance companies acceptable to the Mortgagee against loss, damage to, or destruction of the Mortgaged Premises because of fire, windstorm or other such hazards in such amounts as the Mortgagee may reasonably require from time to time, and all such insurance policies shall contain proper clauses making all proceeds of such policies payable to the Mortgagee and the Mortgagor as their respective interests may appear. Each such policy shall provide that it may not be cancelled and/or amended without ten (10) days prior written notice to Mortgagee. All such policies of insurance shall be delivered to and retained by the Mortgagor until the indebtedness secured hereby is fully paid.

4. **Taxes and Assessments.** The Mortgagor shall pay all taxes or assessments levied or assessed against the Mortgaged Premises, or any part thereof, as and when the same become due and before penalties accrue.

5. **Advancements to Protect Security.** The Mortgagee may, at Mortgagee's option, advance and pay all sums necessary to protect and preserve the security intended to be given by this mortgage. All sums advanced and paid by the Mortgagee shall become a part of the **indebtedness** secured hereby and shall bear interest from the date or dates of payment at the rates set forth above for the indebtedness. Such sums may include, but are not limited to, insurance premiums, taxes, assessments and liens which may be or become prior and senior to this mortgage as a lien on the Mortgaged Premises, or any part thereof, and all costs, expenses and attorney's fees incurred by the Mortgagee in respect of any and all legal or equitable proceedings which relate to this mortgage or to the Mortgaged Premises.

6. **Default by Mortgagor; Remedies of Mortgagee.** Upon default by the Mortgagor which remains uncured for a period of ten (10) days after written notice by Mortgagee to any Mortgager to cure said default, in any payment provided for herein or in the Note, or in the performance of any covenant or agreement of the Mortgagor hereunder, or if the Mortgagor shall abandon the Mortgaged Premises, or die (if an individual), or if Mortgagor dissolves or merges or consolidates with another firm, company, or entity, or if a trustee or receiver shall be appointed for Mortgagor, in any bankruptcy action, and the same is not

dismissed within thirty (30) days thereafter, then and in any such event, the entire indebtedness secured hereby, at the election of Mortgagee, shall become immediately due and payable at the option of the Mortgagee, without additional notice, and this mortgage may be foreclosed accordingly, and Mortgagee shall be entitled to any and all remedies available at law and in equity, and the right to recover reasonable attorneys' and paralegals' fees, costs, and expenses. Upon such foreclosure the Mortgagee may obtain appropriate title evidence, and may add the cost thereof to the principal balance due.

7. **Non-Waiver; Remedies Cumulative.** No delay by the Mortgagee in the exercise of any of Mortgagee's rights hereunder shall preclude the exercise thereof so long as the Mortgagor is in default hereunder, and no failure of the Mortgagee to exercise any of Mortgagee's rights hereunder shall preclude the exercise thereof in the event of a subsequent default by the Mortgagor hereunder. The Mortgagee may enforce any one or more of Mortgagee's rights or remedies hereunder successively or concurrently.

8. **Extensions; Reductions; Renewals; Continued Liability of Mortgagor.** The Mortgagee at Mortgagee's option, may extend the time for the payment of the indebtedness, or reduce the payments thereon, or accept a renewal Note or Notes therefore, without consent of any junior lien holder, and without the consent of the Mortgagor if the Mortgagor has then parted with title to the Mortgaged Premises. No such extension, reduction or renewal shall affect the priority of this mortgage or impair the security hereof in any manner whatsoever, or release, discharge or affect in any manner the personal liability of the Mortgagor to the Mortgagee.

9. **General Agreement of Parties.** All rights and obligations hereunder shall extend to and be binding upon the several heirs, representatives, successors and assigns of the parties to this mortgage. When applicable, use of the singular form of any word also shall mean or apply to the plural and masculine form shall mean and apply to the feminine or the neuter. The titles of the several paragraphs of this mortgage are for convenience only and do not define, limit or construe the contents of such paragraphs.

IN WITNESS WHEREOF, the Mortgagor has executed this mortgage this _21st_ day of _May_, 2013.

Mortgagor: 5 Star Investment Group V, LLC (legal name)

Signed: _Earl Miller_

Printed: _Earl Miller_

# NOTE 1-1

STATE OF INDIANA    )
                             ) SS:

COUNTY OF ELKHART   )

     Before me, a Notary public in and for said County and State, personally appeared _Earl Miller_ the _Manager_ of 5 Star Investment Group V, LLC, who acknowledged the execution of the foregoing mortgage.

     Witness my hand and Notarial Seal this _16th_ day of _May_, 2013.

                                      _Jeffrey Clemmer_, Notary Public
                              Residing in Elkhart County, Indiana

My Commission Expires:
_9/02/2018_

This Instrument Prepared By: Earl Miller,
P.O. Box 706, Middlebury, Indiana 46540.

     I affirm, under the penalties for perjury, that I have taken reasonable care
to redact each Social Security number in this document, unless required by law.
Earl Miller

**A-6**

# NOTE 1-1

## EXHIBIT "A"

27' S SIDE LOT 70 & 27' N SIDE LOT 71 CHRISTMAN PL 1ST

Also known as: 116 Coquillard, South Bend, IN 46617

DD 1-1



5 Star Investment Group VII, LLC
Disclosure Document

## PROPRIETARY AND CONFIDENTIAL

This Document is for Discussion purposes only and is not intended to be used or considered as an offering of securities. Please see disclaimers at end of document for more information on offering requirements.

This document includes information that is proprietary and confidential and is not to be copied or distributed without the approval of an officer of 5Star Investment Group VII, LLC.

This offer is limited to accredited investors and non-accredited sophisticated investors resident in the United States and has been prepared to comply with the securities laws and regulations of the United States, particularly under Regulation D, Rule 506 of the Securities Act of 1933, as amended.

Because this Disclosure Document focuses primarily on details concerning the company rather than the industry in which the company operates or will operate, potential investors may wish to conduct their own separate investigation of the company's industry in order to obtain broader insight in assessing the company's prospects.

## THE COMPANY

5Star Investment Group VII, LLC ("Company") is a company being organized in the State of Indiana. Its office is located at 304 N. Main Street, Suite A, Middlebury, Indiana 46540, and its telephone number is 574-825-4100.

5Star Investment Group VII, LLC is being created solely for the purpose of attracting private lenders' funds, which in turn will be directed to and or managed 5Star Investment Group V, an Indiana limited liability company, and possibly one or more other companies, which will be identified and described to private lenders before any funds are accepted. 5Star Investment Group V, LLC was organized in the state of Indiana in order to invest in real estate.

The Company is a private Real Estate Investing Company, being founded by Mr. Earl Miller and Mr. Matthew Gingerich to acquire, rehabilitate, lease or resell residential and or commercial real estate. The company was started in 2008 with the goal of providing the opportunity for both private lenders and themselves the opportunity to profit from real estate investing while also offering affordable housing within Indiana and other states. The company is not a realtor; it is a real estate investor. As the company grew, we understood that many of our tenants, while wanting to own their own home, had economic, employment or credit problems, which kept them from qualifying for a traditional mortgage loan. Because we quickly recognized that huge pent-up demand, we expanded our rental business to include creating affordable, single-family housing

1

# DD 1-1

throughout Indiana. The company also purchases homes, rehabilitates them and then resells them for a profit, as well as purchasing homes via short sale, after which it sells them for a profit without holding them for a long period of time.

Our tenant/buyers understand and appreciate that 5Star Investment Group VII, LLC has demonstrated a strong commitment to parts of the community whose housing needs have been badly underserved and where few realistic options have been available to those seeking and capable of home ownership. 5Star Investment Group VII, LLC not only provides affordable housing but also by the very nature of the business, helps the local economy by providing work for local contractors, realtors, mortgage companies and other related businesses.

## RISKS OF INVESTMENT

The Company uses funds borrowed from private lenders to invest in real estate primarily but not necessarily exclusively in Indiana. We focus on residential properties, although we will consider investing in commercial and other properties in certain circumstances.

As a real-estate investment company, we are subject to risks including, but not limited to:

- Availability of investment capital from private lenders
- Local real estate markets
- Competition from other real-estate investment companies, which may offer competitive interest rates or possibly better terms and/or conditions to private lenders
- Availability of investment-grade properties
- Legal and regulatory issues
- Costs associated with rehabbing and maintaining properties
- The possibility of selling a home for less than it was purchased
- The possibility of selling a home for less profit than anticipated
- The possibility of a home going unsold for an extended period of time
- Unanticipated repair costs
- Changing market conditions
- Interest rate changes
- Potential damage caused by tenants
- The death or disability of either or both of Mr. Earl Miller and Mr. Matthew Gingerich.
- Because some deals are funded with multiple investors, a first lien position cannot be guaranteed.
- Potential lack of demand for a property or types of property

2

**A-9**

## MANAGEMENT

- Mr. Miller and Mr. Gingerich will both be members and managers of the Company.
- Both Mr. Miller and Mr. Gingerich will be compensated by the company out its profits from real estate investments.
- Both Mr. Miller and Mr. Gingerich will own 50% of the units, or equity of the Company.
- The company will not conduct related-party transactions between the company and its owners. This means that the company does not rent office space owned by the owners or otherwise conduct such business with its owners.

## COMPANY OPERATIONS

We will pay 6-10% simple interest to private lenders. Payments are made to our private lenders on an annual basis (monthly, quarterly, or otherwise to be specified) or at the time the property is sold. Invested funds are secured with a mortgage on the properties, and when appropriate, with a state UCC filing to record the security interest in the properties. Hazard insurance is secured on the properties, payable to our private lenders. Mr. Miller and Mr. Gingerich know the local real estate markets and look at numerous properties before purchasing them. They use qualified contractors to rehab purchased properties. Real estate attorneys conduct closings.

## TERMS OF THE OFFERING

The company is offering its investors ("private lenders" or "lenders") the opportunity to invest with the company. The minimum investment is $15,000 and there is no maximum individual investment, nor any minimum or maximum total amount of investments being sought, other than may be imposed by law or regulation. Only accredited investors or sophisticated non-accredited investors, with the guidance of a purchaser representative, resident in the United States, will be offered or sold such investment and any person or business entity not resident in the United States who may attempt to invest or invest in the company may and shall have such investment cancelled and funds returned upon the discovery of same. The investment is a security and will only be offered pursuant to a filing of Form D with the federal Securities and Exchange Commission, and notice filings in states where the Company has investors, and after investors have been offered an opportunity to review a private placement memorandum and ask questions of the Company's management and of their own professional advisors or purchaser representative. Such an offering will be governed by relevant securities laws and regulations, and in compliance with both state and federal laws and regulations. The investment will be in the form of an interest-bearing debt security. The company does not have a minimum amount of securities that must be sold by a certain date for the offering to go forward. The interest rate will be set at 10, simple interest, for a term of 30 months.

## USE OF PROCEEDS

The funds will be used to:

- Invest in residential real estate in and around the state of Indiana.
- Invest in residential real estate in and around other states.
- Invest in other types of real estate within the State of Indiana, or other states, at the Company's discretion.
- No commissions will be paid to any person or business entity for the sale of these securities, unless and except if they are licensed and/or registered broker-dealers within the State of Indiana, and the company does not anticipate doing so in any case, and may only be sold by authorized representatives of the company and in compliance with all relevant securities laws and regulations.

## FINANCIAL INFORMATION

The Company's managers and owners have sold millions of dollars in real estate to people all over the country, since 2007. They currently manage several LLCs that own several million dollars worth of real estate in the state of Indiana, and they have over 120 investors with whom they regularly work. They have also consistently maintained an A+ Rating with the Better Business Bureau.

## LITIGATION

The company may, from time to time, become engaged in certain litigation related to the eviction of tenants unable or unwilling to pay rent or otherwise abide by their rental agreement with the company. There is no past, present, or anticipated litigation that would have a material effect on the business, financial condition, or operations of the Company.

## DISCLAIMERS

THESE DEBT SECURITIES ARE NOT REGISTERED WITH THE SECURITIES EXCHANGE COMMISSION UNDER THE SECURITIES ACT OF 1933 (THE "ACT"). THESE DEBT SECURITIES WILL BE OFFERED AND SOLD IN RELIANCE ON REGULATION D, RULE 506 SECTION OF THE SECURITIES ACT OF 1933, AS AMENDED, AND UNDER THE BLUE-SKY LAWS OF THE STATES WHERE THEY MAY BE SOLD, PURSUANT TO A FILING BY THE COMPANY OF FORM D WITH THE FEDERAL SECURITIES AND EXCHANGE COMMISSION AND ANY STATE REQUIRING A NOTICE FILING RELEVANT THERETO AND ANY OTHER APPLICABLE.

ALL PURCHASES MUST BE MADE FOR INVESTMENT PURPOSES ONLY AND NOT WITH THE VIEW TO OR FOR SALE IN CONNECTION WITH A DISTRIBUTION OF THE SECURITY. ANY RESALE OF A SECURITY SOLD IN

RELIANCE OF THIS EXEMPTION WITHIN 12 MONTHS OF THE SALE SHALL BE PRESUMED TO BE WITH A VIEW TO DISTRIBUTION AND NOT FOR INVESTMENT, EXCEPT A RESALE PURSUANT TO A REGISTRATION OR TO AN ACCREDITED INVESTOR PURSUANT TO AN EXEMPTION.

NO PERSON HAS BEEN AUTHORIZED BY THE COMPANY TO GIVE ANY INFORMATION OR MAKE ANY REPRESENTATIONS OF ANY KIND WHATSOEVER CONCERNING THE COMPANY OR THIS OFFERING OTHER THAN THOSE CONTAINED IN THIS CIRCULAR, AND, IF GIVEN OR MADE, SUCH OTHER INFORMATION OR REPRESENTATIONS MUST NOT BE RELIED UPON AS HAVING BEEN AUTHORIZED BY THE COMPANY. NEITHER THE DELIVERY OF THIS DISCLOSURE DOCUMENT NOR ANY SALES MADE HEREUNDER SHALL, UNDER ANY CIRCUMSTANCES, IMPLY THAT THERE HAS BEEN NO CHANGE IN THE AFFAIRS OF THE COMPANY DESCRIBED HEREIN SINCE THE DATE HEREOF, OR THAT THE INFORMATION CONTAINED HEREIN IS CORRECT AS OF ANY TIME AFTER THE DATE IT WAS FIRST DISTRIBUTED. THIS DOES NOT CONSTITUTE AN OFFER OR SOLICITATION IN ANY STATE TO ANY PERSON TO WHOM SUCH OFFER OR SOLICITATION WOULD BE UNLAWFUL.

FORWARD LOOKING STATEMENTS

THE COMPANY AND ITS REPRESENTATIVES MAY FROM TIME TO TIME MAKE WRITTEN OR ORAL FORWARD-LOOKING STATEMENTS. ONE CAN IDENTIFY THESE FORWARD-LOOKING STATEMENTS BY USE OF WORDS SUCH AS "STRATEGY," "EXPECTS," "PLANS," "ANTICIPATES," "BELIEVES," "WILL," "CONTINUES," "ESTIMATES," "INTENDS," "PROJECTS," "GOALS," "TARGETS" AND OTHER WORDS OF SIMILAR MEANING. ONE CAN ALSO IDENTIFY THEM BY THE FACT THAT THEY DO NOT RELATE STRICTLY TO HISTORICAL OR CURRENT FACTS. THESE STATEMENTS ARE BASED ON OUR ASSUMPTIONS AND ESTIMATES AND ARE SUBJECT TO RISKS AND UNCERTAINTIES. IN CONNECTION WITH THE "SAFE HARBOR" PROVISIONS OF THE PRIVATE SECURITIES LITIGATION REFORM ACT OF 1995, THE COMPANY IS HEREBY IDENTIFYING IMPORTANT FACTORS THAT COULD CAUSE ACTUAL RESULTS AND OUTCOMES TO DIFFER MATERIALLY FROM THOSE CONTAINED IN ANY FORWARD-LOOKING STATEMENT MADE BY OR ON BEHALF OF THE COMPANY; ANY SUCH STATEMENT IS QUALIFIED BY REFERENCE TO THE FOLLOWING CAUTIONARY STATEMENTS.

THE COMPANY'S BUSINESS IS SUBJECT TO COMPETITION, CHANGES IN THE MARKETPLACE, AND THE EFFECTS OF CHANGING HOME PRICES AND/OR INTEREST RATES AND LOCAL ECONOMIC CONDITIONS. OUR RESULTS ARE DEPENDENT UPON OUR CONTINUED ABILITY TO BORROW MONEY FROM PRIVATE LENDERS, LOCATE PROPERTIES WORTH PURCHASING,

REHABILITATING AND RESELLING OR LEASING TO TENANTS INTERESTED IN PURCHASING SUCH PROPERTIES, ANTICIPATING AND RESPONDING TO CHANGING MARKET CONDITIONS, AND OTHER IMPORTANT FACTORS INCORPORATED INTO THIS SECTION BY REFERENCE, WHICH COULD CAUSE THE COMPANY'S RESULTS TO DIFFER MATERIALLY FROM RESULTS THAT HAVE BEEN OR MAY BE PROJECTED BY OR ON BEHALF OF THE COMPANY. THE COMPANY CAUTIONS THAT THE FOREGOING LIST OF IMPORTANT FACTORS IS NOT EXCLUSIVE. ANY FORWARD-LOOKING STATEMENTS ARE MADE AS OF THE DATE OF THE DOCUMENT IN WHICH THEY APPEAR. THE COMPANY DOES NOT UNDERTAKE TO UPDATE ANY FORWARD-LOOKING STATEMENT THAT MAY BE MADE FROM TIME TO TIME BY OR ON BEHALF OF THE COMPANY.

THIS OFFER IS SUBMITTED ON A CONFIDENTIAL BASIS FOR USE SOLELY IN CONNECTION WITH YOUR CONSIDERATION OF THIS OFFER. THIS DISCLOSURE DOCUMENT MAY NOT BE REPRODUCED IN WHOLE OR IN PART, AND NO ONE, FOR ANY REASON, SHOULD RELY ON ANY REPRODUCTION OF THIS MEMORANDUM.

THESE SECURITIES HAVE NOT BEEN APPROVED OR DISAPPROVED BY THE SECURITIES AND EXCHANGE COMMISSION OR ANY STATE SECURITIES COMMISSION OR OTHER REGULATORY AUTHORITY, NOR HAS THE COMMISSION OR ANY OTHER AUTHORITY ASSESSED THE ACCURACY OR ADEQUACY OF THIS DISCLOSURE DOCUMENT. ANY REPRESENTATION TO THE CONTRARY IS A CRIMINAL OFFENSE.

THIS DISCLOSURE DOCUMENT DOES NOT CONSTITUTE AN OFFER OR SOLICITATION IN ANY STATE OR OTHER JURISDICTION IN WHICH SUCH OFFER OR SOLICITATION IS NOT AUTHORIZED.

I hereby acknowledge that I have received the Disclosure Documents from 5Star Investment Group VII, LLC.

_____

Name  (Printed)                              Date

_____

Name (Signature)                             Date

6

**A-13**

NOTE 1-2

## Note 1-2

4409 NE SUMNER

 COPY

### PROMISSORY NOTE
### TERM NOTE

Middlebury, Indiana
December 18, 2013

$50000.00

FOR VALUE RECEIVED, the undersigned, 5Star Investment Group VII, LLC, ("Borrower"), who address is P.O. Box 706 Middlebury, Indiana 46540, promises to pay to the order of William Adamczyk ("Lender"), whose address is 30019 N. Waukegan Rd., Apt. 109, Lake Bluff, IL 60044, the principal sum of Fifty-Thousand US dollars ($50000.00) Interest will accrue under this Note at the rate of Ten Percent (10%) per annum. Borrower promises to pay all attorney's fees, paralegal's fees, and any costs and expenses incurred by Lender in connection with collection under this Note. Borrower agrees that all amounts payable under this Note shall be paid without relief from valuation and appraisement laws. The principal and interest under this Note shall be payable at the address set forth above for Lender as follows:

    a.  Borrower shall make Fourteen (14) consecutive monthly payments of $416.67, which shall be due and payable beginning February 15, 2014, (January payment to be pro-rated from December 18 to January 15th) and shall be payable on the same day of each consecutive month thereafter; and

Then, on March 15, 2015 or the sale of the real estate serving as collateral for this Note under a Mortgage of even date, the balance of all principal and interest due and owing under this Note shall be paid in full. Any request from a lender for his or her funds before the above mentioned date has been reached may or may not be honored at the sole discretion of the Company, and if and when agreed to by the Company, the borrower shall receive back his or her initial investment amount, minus an early-withdrawal penalty equal to two percent (2%) of the initial investment amount. No additional interest will be earned upon the funds invested or due to the borrower after such a request for early withdrawal is made and the loan amount is repaid.

    b.  If any payment shall be paid more than thirty (30) days after the due date thereof, a penalty equal to three percent (3%) of the amount due and owing shall be paid with said payment as a penalty for the delinquency.

If Borrower fails to pay interest or other amounts under this Note when due, or if Borrower shall be dissolved, merge or consolidate with any other firm or entity, or Borrower files a petition in bankruptcy, or one is filed against Borrower, or if Borrower defaults under the mortgage, Lender may declare all amounts due under this Note immediately due and payable.

The Lender may unilaterally defer (in writing or without notice to the Borrower) one or more monthly payments or may not require one or more monthly payments to be made when due, with our without notice to the Borrower, but any such deferral shall not be considered a waiver of the Lender's rights to enforce this Promissory Note, in whole or in part.

No failure by Lender to exercise any right under this Note, including any rights resulting from an event of default, shall operate as a waiver or otherwise prevent Lender from exercising any of Lender's rights under this Note at any other time, including the exercise by Lender of any rights at any time during the continuance of such event of default or on the occurrence of a subsequent even of default.

A-14

# Note 1-2

The holder of this Note, in its sole discretion, may renew this Note, accept a renewal Note or Notes, extend the time for the payment of the indebtedness evidenced by this Note, reduce the payments under this Note, or do any combination of such actions on any number of occasions; provided, however, any such action or omission shall not release the Borrower on the obligations evidenced by this Note. Borrower waives presentment for payment, protest, notice of protest, notice of non-payment or dishonor of this Note, and diligence in the collection of this Note; and Borrower consents to any actions by Lender or any holder of this Note as set forth in this paragraph.

If this Note is negotiated by Lender, the word "Lender" as used in this Note shall refer to the "holder" unless the context otherwise requires.

**Because of our filing that we have to do with the Securities Exchange Commission we are required to have our investors indicate whether they are an "Accredited" or a "Sophisticated" investor. Please initial whichever option applies:**

1. _____ I am an accredited investor by nature of my income or net worth.

   *Definition: (Any person whose individual, or joint net worth exceeds $1,000,000 or has an income in excess of $200,000 in each of the two most recent years or joint income with that person's spouse in excess of $300,000 in each of those years and has a reasonable expectation of reaching the same income level in the current year)*

2. _____ I am a sophisticated non-accredited investor, meaning that although I may not be an accredited investor by nature of my income or net worth, I have sufficient investing experience and an understanding of the risks and benefits of investing in general and this offering in particular.

Investor_____ Date December 18, 2013

Borrower: 5 Star Investment Group VII, LLC

Signed: *Earl Miller* Printed: Earl Miller _____ (Manager)

# Note 1-2

DocuSign Envelope ID: 0192DB69-24B1-464E-B5AB-A5AB911741B0

The below stated borrower signs as an additional borrower on this Promissory Note regarding the joint venture entered therein pertaining to the property known as: 4109 NE Sumner, Portland, OR  97211 in promise to repay the lender the amount as specified in Section 1 above.

Borrower: Metro Homes Northwest, LLC

Signed: _Randall Palazzo_ _____ Printed: _Randall Palazzo_____ (Manager)

**A-16**

DD 1-2

 COPY

**5 Star Investment Group VII, LLC**
**Disclosure Document**

### PROPRIETARY AND CONFIDENTIAL

This Document is for Discussion purposes only and is not intended to be used or considered as an offering of securities. Please see disclaimers at end of document for more information on offering requirements.

This document includes information that is proprietary and confidential and is not to be copied or distributed without the approval of an officer of 5Star Investment Group VII, LLC.

This offer is limited to accredited investors and non-accredited sophisticated investors resident in the United States and has been prepared to comply with the securities laws and regulations of the United States, particularly under Regulation D, Rule 506 of the Securities Act of 1933, as amended.

Because this Disclosure Document focuses primarily on details concerning the company rather than the industry in which the company operates or will operate, potential investors may wish to conduct their own separate investigation of the company's industry in order to obtain broader insight in assessing the company's prospects.

### THE COMPANY

5Star Investment Group VII, LLC ("Company") is a company being organized in the State of Indiana. Its office is located at 304 N. Main Street, Suite A, Middlebury, Indiana 46540, and its telephone number is 574-825-4100.

5Star Investment Group VII, LLC is being created solely for the purpose of attracting private lenders' funds, which in turn will be directed to and or managed 5Star Investment Group I, an Indiana limited liability company, and possibly one or more other companies, which will be identified and described to private lenders before any funds are accepted. 5Star Investment Group I, LLC was organized in the state of Indiana in order to invest in real estate.

The Company is a private Real Estate Investing Company, being founded by Mr. Earl Miller and Mr. Matthew Gingerich to acquire, rehabilitate, lease or resell residential and or commercial real estate. The company was started in 2008 with the goal of providing the opportunity for both private lenders and themselves the opportunity to profit from real estate investing while also offering affordable housing within Indiana and other states. The company is not a realtor; it is a real estate investor. As the company grew, we understood that many of our tenants, while wanting to own their own home, had economic, employment or credit problems, which kept them from qualifying for a traditional mortgage loan. Because we quickly recognized that huge pent-up demand, we expanded our rental business to include creating affordable, single-family housing throughout Indiana. The company also purchases homes, rehabilitates them and then resells them for a profit, as well as purchasing homes via short sale, after which it sells them for a profit without holding them for a long period of time.

Our tenant/buyers understand and appreciate that 5Star Investment Group VII, LLC has demonstrated a strong commitment to parts of the community whose housing needs have been badly underserved and where few realistic options have been available to those seeking and capable of home ownership. 5Star Investment Group VII, LLC not only provides affordable housing but also by the very nature of the business, helps the local economy by providing work for local contractors, realtors, mortgage companies and other related businesses.

## RISKS OF INVESTMENT

The Company uses funds borrowed from private lenders to invest in real estate primarily but not necessarily exclusively in Indiana. We focus on residential properties, although we will consider investing in commercial and other properties in certain circumstances.

As a real-estate investment company, we are subject to risks including, but not limited to:

- Availability of investment capital from private lenders
- Local real estate markets
- Competition from other real-estate investment companies, which may offer competitive interest rates or possibly better terms and/or conditions to private lenders
- Availability of investment-grade properties
- Legal and regulatory issues
- Costs associated with rehabbing and maintaining properties
- The possibility of selling a home for less than it was purchased
- The possibility of selling a home for less profit than anticipated
- The possibility of a home going unsold for an extended period of time
- Unanticipated repair costs
- Changing market conditions
- Interest rate changes
- Potential damage caused by tenants
- The death or disability of either or both of Mr. Earl Miller and Mr. Matthew Gingerich.
- Because some deals are funded with multiple investors, a first lien position cannot be guaranteed.
- Potential lack of demand for a property or types of property

## MANAGEMENT

- Mr. Miller and Mr. Gingerich will both be members and managers of the Company.
- Both Mr. Miller and Mr. Gingerich will be compensated by the company out its profits from real estate investments.
- Both Mr. Miller and Mr. Gingerich will own 50% of the units, or equity of the Company.
- The company will not conduct related-party transactions between the company and its owners. This means that the company does not rent office space owned by the owners or otherwise conduct such business with its owners.

## COMPANY OPERATIONS

We will pay 6-10% simple interest to private lenders. Payments are made to our private lenders on an annual basis (monthly, quarterly, or otherwise to be specified) or at the time the property is sold. Invested funds are secured with a mortgage on the properties, and when appropriate, with a state UCC filing to record the security interest in the properties. Hazard insurance is secured on the properties, payable to our private lenders. Mr. Miller and Mr. Gingerich know the local real estate markets and look at numerous properties before purchasing them. They use qualified contractors to rehab purchased properties. Real estate attorneys conduct closings.

## TERMS OF THE OFFERING

The company is offering its investors ("private lenders" or "lenders") the opportunity to invest with the company. The minimum investment is $15,000 and there is no maximum individual investment, nor any minimum or maximum total amount of investments being sought, other than may be imposed by law or regulation. Only accredited investors or sophisticated non-accredited investors, with the guidance of a purchaser representative, resident in the United States, will be offered or sold such investment and any person or business entity not resident in the United States who may attempt to invest or invest in the company may and shall have such investment cancelled and funds returned upon the discovery of same. The investment is a security and will only be offered pursuant to a filing of Form D with the federal Securities and Exchange Commission, and notice filings in states where the Company has investors, and after investors have been offered an opportunity to review a private placement memorandum and ask questions of the Company's management and of their own professional advisors or purchaser representative. Such an offering will be governed by relevant securities laws and regulations, and in compliance with both state and federal laws and regulations. The investment will be in the form of an interest-bearing debt security. The company does not have a minimum amount of securities that must be sold by a certain date for the offering to go forward. The interest rate will be set at 10, simple interest, for a term of 14 months.

## USE OF PROCEEDS

The funds will be used to:

- Invest in residential real estate in and around the state of Indiana.
- Invest in residential real estate in and around other states.
- Invest in other types of real estate within the State of Indiana, or other states, at the Company's discretion.
- No commissions will be paid to any person or business entity for the sale of these securities, unless and except if they are licensed and/or registered broker-dealers within the State of Indiana, and the company does not anticipate doing so in any case, and may only be sold by authorized representatives of the company and in compliance with all relevant securities laws and regulations.

## FINANCIAL INFORMATION

The Company's managers and owners have sold millions of dollars in real estate to people all over the country, since 2007. They currently manage several LLCs that own several million dollars worth of real estate in the state of Indiana, and they have over 120 investors with whom they regularly work. They have also consistently maintained an A+ Rating with the Better Business Bureau.

## LITIGATION

The company may, from time to time, become engaged in certain litigation related to the eviction of tenants unable or unwilling to pay rent or otherwise abide by their rental agreement with the company. There is no past, present, or anticipated litigation that would have a material effect on the business, financial condition, or operations of the Company.

## DISCLAIMERS

THESE DEBT SECURITIES ARE NOT REGISTERED WITH THE SECURITIES EXCHANGE COMMISSION UNDER THE SECURITIES ACT OF 1933 (THE "ACT"). THESE DEBT SECURITIES WILL BE OFFERED AND SOLD IN RELIANCE ON REGULATION D, RULE 506 SECTION OF THE SECURITIES ACT OF 1933, AS AMENDED, AND UNDER THE BLUE-SKY LAWS OF THE STATES WHERE THEY MAY BE SOLD, PURSUANT TO A FILING BY THE COMPANY OF FORM D WITH THE FEDERAL SECURITIES AND EXCHANGE COMMISSION AND ANY STATE REQUIRING A NOTICE FILING RELEVANT THERETO AND ANY OTHER APPLICABLE.

ALL PURCHASES MUST BE MADE FOR INVESTMENT PURPOSES ONLY AND NOT WITH THE VIEW TO OR FOR SALE IN CONNECTION WITH A DISTRIBUTION OF THE SECURITY. ANY RESALE OF A SECURITY SOLD IN RELIANCE OF THIS EXEMPTION WITHIN 12 MONTHS OF THE SALE SHALL BE PRESUMED TO BE WITH A VIEW TO DISTRIBUTION AND NOT FOR INVESTMENT, EXCEPT A RESALE PURSUANT TO A REGISTRATION OR TO AN ACCREDITED INVESTOR PURSUANT TO AN EXEMPTION.

NO PERSON HAS BEEN AUTHORIZED BY THE COMPANY TO GIVE ANY INFORMATION OR MAKE ANY REPRESENTATIONS OF ANY KIND WHATSOEVER CONCERNING THE COMPANY OR THIS OFFERING OTHER THAN THOSE CONTAINED IN THIS CIRCULAR, AND, IF GIVEN OR MADE, SUCH OTHER INFORMATION OR REPRESENTATIONS MUST NOT BE RELIED UPON AS HAVING BEEN AUTHORIZED BY THE COMPANY. NEITHER THE DELIVERY OF THIS DISCLOSURE DOCUMENT NOR ANY SALES MADE HEREUNDER SHALL, UNDER ANY CIRCUMSTANCES, IMPLY THAT THERE HAS BEEN NO CHANGE IN THE AFFAIRS OF THE COMPANY DESCRIBED HEREIN SINCE THE DATE HEREOF, OR THAT THE INFORMATION CONTAINED HEREIN IS CORRECT AS OF ANY TIME AFTER THE DATE IT WAS FIRST DISTRIBUTED. THIS DOES NOT CONSTITUTE AN OFFER OR SOLICITATION IN ANY STATE TO ANY PERSON TO WHOM SUCH OFFER OR SOLICITATION WOULD BE UNLAWFUL.

FORWARD LOOKING STATEMENTS

THE COMPANY AND ITS REPRESENTATIVES MAY FROM TIME TO TIME MAKE WRITTEN OR ORAL FORWARD-LOOKING STATEMENTS. ONE CAN IDENTIFY THESE FORWARD-LOOKING STATEMENTS BY USE OF WORDS SUCH AS "STRATEGY," "EXPECTS," "PLANS," "ANTICIPATES," "BELIEVES," "WILL," "CONTINUES," "ESTIMATES," "INTENDS," "PROJECTS," "GOALS," "TARGETS" AND OTHER WORDS OF SIMILAR MEANING. ONE CAN ALSO IDENTIFY THEM BY THE FACT THAT THEY DO NOT RELATE STRICTLY TO HISTORICAL OR CURRENT FACTS. THESE STATEMENTS ARE BASED ON OUR ASSUMPTIONS AND ESTIMATES AND ARE SUBJECT TO RISKS AND UNCERTAINTIES. IN CONNECTION WITH THE "SAFE HARBOR" PROVISIONS OF THE PRIVATE SECURITIES LITIGATION REFORM ACT OF 1995, THE COMPANY IS HEREBY IDENTIFYING IMPORTANT FACTORS THAT COULD CAUSE ACTUAL RESULTS AND OUTCOMES TO DIFFER MATERIALLY FROM THOSE CONTAINED IN ANY FORWARD-LOOKING STATEMENT MADE BY OR ON BEHALF OF THE COMPANY; ANY SUCH STATEMENT IS QUALIFIED BY REFERENCE TO THE FOLLOWING CAUTIONARY STATEMENTS.

THE COMPANY'S BUSINESS IS SUBJECT TO COMPETITION, CHANGES IN THE MARKETPLACE, AND THE EFFECTS OF CHANGING HOME PRICES AND/OR INTEREST RATES AND LOCAL ECONOMIC CONDITIONS. OUR RESULTS ARE DEPENDENT UPON OUR CONTINUED ABILITY TO BORROW MONEY FROM PRIVATE LENDERS, LOCATE PROPERTIES WORTH PURCHASING, REHABILITATING AND RESELLING OR LEASING TO TENANTS INTERESTED IN PURCHASING SUCH PROPERTIES, ANTICIPATING AND RESPONDING TO CHANGING MARKET CONDITIONS, AND OTHER IMPORTANT FACTORS INCORPORATED INTO THIS SECTION BY REFERENCE, WHICH COULD CAUSE THE COMPANY'S RESULTS TO DIFFER MATERIALLY FROM RESULTS THAT HAVE BEEN OR MAY BE PROJECTED BY OR ON BEHALF OF THE COMPANY. THE COMPANY CAUTIONS THAT THE FOREGOING LIST OF IMPORTANT FACTORS IS NOT EXCLUSIVE. ANY FORWARD-LOOKING STATEMENTS ARE MADE AS OF THE DATE OF THE DOCUMENT IN WHICH THEY APPEAR. THE COMPANY DOES NOT UNDERTAKE TO UPDATE ANY FORWARD-LOOKING STATEMENT THAT MAY BE MADE FROM TIME TO TIME BY OR ON BEHALF OF THE COMPANY.

THIS OFFER IS SUBMITTED ON A CONFIDENTIAL BASIS FOR USE SOLELY IN CONNECTION WITH YOUR CONSIDERATION OF THIS OFFER. THIS DISCLOSURE DOCUMENT MAY NOT BE REPRODUCED IN WHOLE OR IN PART, AND NO ONE, FOR ANY REASON, SHOULD RELY ON ANY REPRODUCTION OF THIS MEMORANDUM.

THESE SECURITIES HAVE NOT BEEN APPROVED OR DISAPPROVED BY THE SECURITIES AND EXCHANGE COMMISSION OR ANY STATE SECURITIES COMMISSION OR OTHER REGULATORY AUTHORITY, NOR HAS THE COMMISSION OR ANY OTHER AUTHORITY ASSESSED THE ACCURACY OR ADEQUACY OF THIS DISCLOSURE DOCUMENT. ANY REPRESENTATION TO THE CONTRARY IS A CRIMINAL OFFENSE.

THIS DISCLOSURE DOCUMENT DOES NOT CONSTITUTE AN OFFER OR SOLICITATION IN ANY STATE OR OTHER JURISDICTION IN WHICH SUCH OFFER OR SOLICITATION IS NOT AUTHORIZED.

I hereby acknowledge that I have received the Disclosure Documents from 5Star Investment Group VII, LLC.

_____

Name   (Printed)                                      Date

_____

Name (Signature)                                      Date

NOTE 1-3

# NOTE 1-3

5 Star Investment Group VII, LLC
3131 Grape Rd, Mishawaka, IN 46545



# PROMISSORY NOTE

June 16th, 2015          $50,000.00          Investment: I10001423

FOR VALUE RECEIVED, the undersigned, 5 Star Investment Group VII, LLC, ("Borrower"), whose address is 3131 Grape Rd, Mishawaka, IN 46545, promises to pay to the order of William Adamczyk ("Lender"), whose address is 30019 N Waukegan Rd, Apt 109, Lake Bluff, IL 60044 the principal sum of Fifty Thousand US dollars ($50,000.00) Interest will accrue under this Note at the rate of Ten Percent (10%) per annum. Borrower promises to pay all attorney's fees, paralegal's fees, and any costs and expenses incurred by Lender in connection with collection under this Note. Borrower agrees that all amounts payable under this Note shall be paid without relief from valuation and appraisement laws. The principal and interest under this Note shall be payable at the address set forth above for Lender as follows:

a. Borrower shall make Thirty (30) consecutive monthly payments of $416.67, which shall be due and payable beginning August 15, 2015, (July payment to be pro-rated from June 16th to July 15th) and shall be payable on the same day of each consecutive month thereafter (all interest checks to be mailed on the 25th of each month); and then, on January 15, 2018 the balance of all principal and interest due and owing under this Note shall be paid in full. Any request from a lender for his or her funds before the above mentioned date has been reached may or may not be honored at the sole discretion of the Company, and if and when agreed to by the Company, the lender shall receive back his or her initial investment amount, minus an early-withdrawal penalty equal to two percent (2%) of the initial investment amount. No additional interest will be earned upon the funds invested or due to the lender after such a request for early withdrawal is made and the loan amount is repaid.

a. If any payment shall be paid more than thirty (30) days after the due date thereof, a penalty equal to three percent (3%) of the amount due and owing shall be paid with said payment as a penalty for the delinquency.

If Borrower fails to pay interest or other amounts under this Note when due, or if Borrower shall be dissolved, merge or consolidate with any other firm or entity, or Borrower files a petition in bankruptcy, or one is filed against Borrower, Lender may declare all amounts due under this Note immediately due and payable.

The Lender may unilaterally defer (in writing or without notice to the Borrower) one or more monthly payments or may not require one or more monthly payments to be made when due, with or without notice to the Borrower, but any such deferral shall not be considered a waiver of the Lender's rights to enforce this Promissory Note, in whole or in part.

No failure by Lender to exercise any right under this Note, including any rights resulting from an event of default, shall operate as a waiver or otherwise prevent Lender from exercising any of Lender's rights under this Note at any other time, including the exercise by Lender of any rights at any time during the continuance of such event of default or on the occurrence of a subsequent even of default.

Initial_____

A-23

# NOTE 1-3

The holder of this Note, in its sole discretion, may renew this Note, accept a renewal Note or Notes, extend the time for the payment of the indebtedness evidenced by this Note, reduce the payments under this Note, or do any combination of such actions on any number of occasions; provided, however, any such action or omission shall not release the Borrower on the obligations evidenced by this Note. Borrower waives presentment for payment, protest, notice of protest, notice of non-payment or dishonor of this Note, and diligence in the collection of this Note; and Borrower consents to any actions by Lender or any holder of this Note as set forth in this paragraph. Your investment may be pooled with one or more investors.

If this Note is negotiated by Lender, the word "Lender" as used in this Note shall refer to the "holder" unless the context otherwise requires.

By signing this document, I acknowledge that I have received and have had at least 2 business days to review the Private Placement Memorandum before making this investment.

**Because of our filing that we have to do with the Securities Exchange Commission we are required to have our investors indicate whether they are an "Accredited" or a "Sophisticated" investor. Please initial which ever option applies:**

1. _____ I am an accredited investor by nature of my income or net worth.
   *Definition: (Any person whose individual, or joint net worth exceeds $1,000,000 (not including his or her principal residence) or has an income in excess of $200,000 in each of the two most recent years or joint income with that person's spouse in excess of $300,000 in each of those years and has a reasonable expectation of reaching the same income level in the current year)*

1. _____ I am a sophisticated non-accredited investor, meaning that although I may not be an accredited investor by nature of my income or net worth, I have sufficient investing experience and an understanding of the risks and benefits of investing in general and this offering in particular.

**Investment: I10001423**

**Borrower: 5 Star Investment Group VII, LLC**

      By: 5 Star Investment Goup, LLC
      Its: Manager

Signed *Earl Miller*

**Printed: Earl Miller (Manager)**

Investor_____ Date June 16th, 2015

PPM 1-3

# 5 Star Investment Group VII, LLC

## PRIVATE PLACEMENT MEMORANDUM

April 23, 2014

Earl Miller

## PRIVATE PLACEMENT MEMORANDUM
April 23rd , 2014

### 5 Star Investment Group VII, LLC
### (An Indiana Limited Liability Company)

Amount of Debt being offered: $5.0 Million

Minimum Investment: $15,000.00

### Confidential Private Placement Memorandum

The period of the Offering will continue until the earlier of 12 Months from April 23rd, 2014 or the date on which the full total amount of debt being sought has been raised (the "Termination Date"). Securities will be sold on a best efforts basis by Mr. Earl Miller ("Mr. Miller"), who is a founder and a Manager of the Company. Other employees of the Company will act as Promoters of the Company. As Promoters, these persons are authorized to encourage others to invest in the Company and introduce such potential investors to the Company. Promoters may be compensated for their work. The Company may also contract with one or more broker-dealers to sell Securities on a commission basis and may pay a flat introduction fee to persons who introduce Investors to an investment in the Company. The Company's Operating Agreement, a confidential document, is available upon request from the Company.

Securities will be sold to persons who are "Accredited Investors", as such term is defined under the Securities Act of 1933, as amended (the "Securities Act", or "The Act"), and to sophisticated non-accredited investors.

An investment in these securities is suited only for persons who have adequate means of providing for their current needs and personal contingencies and have no need for liquidity in their investment. The Securities are only being offered to those persons who represent they can bear the complete economic loss of their investment in the Company. The Securities have not been registered under the Securities Act and are being offered in reliance upon an exemption from the registration requirements thereunder. Offers and sales of the Securities will be made only to persons who satisfy the conditions set forth herein and who also represent in writing to the Company that, in connection with evaluating the merits and risks of an investment in the Company, they have such knowledge and experience in financial and business matters generally that they are capable of evaluating the merits and risks of an investment in the Company or that they are represented by a Purchaser Representative who satisfies such conditions.
This Confidential Private Placement Memorandum constitutes an offer only to the person to whom it has been delivered by the Company and only if such person meets the suitability requirements set forth herein.

EACH PERSON, BY ACCEPTING DELIVERY OF THE DOCUMENTS, AGREES AND ACKNOWLEDGES THAT THIS CONFIDENTIAL PRIVATE PLACEMENT MEMORANDUM AND THE INFORMATION CONTAINED HEREIN IS CONFIDENTIAL; AGREES TO RETURN THE DOCUMENTS TO THE COMPANY IF SUCH PERSON DOES NOT PURCHASE ANY OF THE SECURITIES OFFERED HEREBY; AND FURTHER AGREES TO HOLD THE COMPANY AND MR. EARL MILLER HARMLESS AGAINST CLAIMS, COSTS, EXPENSES OR DAMAGES THE COMPANY AND MR. EARL MILLER MAY SUFFER IF SUCH PERSON BREACHES THE CONFIDENTIALITY AND NON-DISCLOSURE THEREOF. THE DOCUMENTS ARE PERSONAL TO THE RECIPIENT HEREOF AND MAY NOT BE SHOWN TO ANY OTHER PERSON, OTHER THAN SUCH RECIPIENT'S LEGAL COUNSEL AND INVESTMENT ADVISORS. REPRODUCTION OF THE DOCUMENTS IS STRICTLY PROHIBITED

This Offering is subject to withdrawal, cancellation or modification by the Company without notice. The Company reserves the right, in its sole and absolute discretion, to reject any subscription, in whole or in part, for any reason, to accept less than the amount of the Securities subscribed for, to accept subscriptions for less than Minimum Investment being Offered, and to terminate the Offering at any time irrespective of the amount of Securities sold and irrespective of the amount of gross proceeds raised.

The company does not have a minimum amount of securities that must be sold by a certain date for the offering to go forward. This means the Company will accept funds as they are invested and will invest additional funds when they are invested, without any requirement to wait for any certain amount of funds before making investments. The Company's management reserves the right to structure invested funds, including but not limited to fund names, the opening and closing of different funds, pooling or not pooling funds.

**Instructions for Investing in Securities**

Investors who wish to purchase Securities must do all of the following no later than the Termination Date:

(1) Fill out and execute the Execution Page, which serves as a counterpart signature page for the Operating Agreement and the Securities Subscription Agreement or a Promissory Note;

(2) Fill out and execute the "Accredited Investor" Certificate;

(3) If applicable, fill out and execute the Purchaser Representative's Certificate;

(4) Send all of the documents listed above as (1) and (2), and (3) if applicable, to the following address:

> Mr. Earl Miller
> 5 Star Investment Group VII, LLC
> 3131 Grape Rd
> Mishawaka, IN 46545
> Phone: (574) 825-4100
> Fax: (574) 825-4120

(5) Remit the amount of the purchase price for the securities subscribed for in accordance with the instructions contained in Schedule I to the Securities Subscription Agreement.

2

**The Date of this Confidential Private Placement Memorandum is April 23rd, 2014**

THIS OFFERING IS MADE TO PERSONS OR ENTITIES WHO ARE CONSIDERED ACCREDITED INVESTORS AS DEFINED IN REGULATION D, PROMULGATED UNDER THE SECURITIES ACT AND SOPHISTICATED NON-ACCREDITED INVESTORS.

THE SECURITIES HAVE NOT BEEN APPROVED OR DISAPPROVED BY THE UNITED STATES SECURITIES AND EXCHANGE COMMISSION OR ANY OTHER REGULATORY AGENCY, NOR HAVE ANY SUCH AGENCIES PASSED UPON THE ACCURACY OR ADEQUACY OF STATEMENTS CONTAINED HEREIN OR THE MERITS OF ANY INVESTMENT CONTEMPLATED HEREBY. ANY REPRESENTATION TO THE CONTRARY IS A CRIMINAL OFFENSE.

THE SECURITIES ARE BEING OFFERED AND SOLD IN RELIANCE UPON APPLICABLE EXEMPTIONS FROM THE REGISTRATION REQUIREMENTS UNDER THE SECURITIES ACT, INCLUDING, WITHOUT LIMITATION, REGULATIONS AND EXEMPTIONS APPLICABLE TO ACCREDITED INVESTORS, AND CANNOT BE TRANSFERRED OR SOLD WITHOUT REGISTRATION UNDER THE SECURITIES ACT OR PURSUANT TO AN APPLICABLE EXEMPTION FROM REGISTRATION. THE SALE, TRANSFER OR OTHER DISPOSITION OF THE SECURITIES IS RESTRICTED BY APPLICABLE UNITED STATES FEDERAL AND STATE SECURITIES LAWS AND PURSUANT TO THE TERMS OF THE OPERATING AGREEMENT.

THE DOCUMENTS MAY CONTAIN CERTAIN STATEMENTS WITH RESPECT TO THE COMPANY'S FUTURE PERFORMANCE, INCLUDING CERTAIN STATEMENTS REGARDING THE COMPANY'S BUSINESS. SEE "RISK FACTORS." SUCH STATEMENTS REFLECT VARIOUS ASSUMPTIONS BY THE COMPANY CONCERNING ANTICIPATED RESULTS, WHICH MAY OR MAY NOT PROVE TO BE CORRECT. NO REPRESENTATIONS ARE MADE AS TO THE ACCURACY OF SUCH STATEMENTS. ANY STATEMENTS THAT ARE NOT BASED ON HISTORICAL FACTS ARE DEEMED TO BE FORWARD-LOOKING STATEMENTS, AS THE TERM IS DEFINED IN THE PRIVATE SECURITIES LITIGATION REFORM ACT OF 1995. FORWARD-LOOKING STATEMENTS ARE SUBJECT TO MANY UNCERTAINTIES AND RISKS. SEE "RISK FACTORS."

TO THE EXTENT ANY PROSPECTIVE INVESTOR HAS RECEIVED ANY FINANCIAL PROJECTIONS NOT CONTAINED HEREIN, SAID PROSPECTIVE INVESTOR HEREBY AGREES AND ACKNOWLEDGES THAT SAID PROSPECTIVE INVESTOR HAS NOT RELIED UPON SAID PROJECTIONS IN ACQUIRING SECURITIES HEREUNDER.
THE DOCUMENTS DO NOT CONSTITUTE AN OFFER TO SELL OR THE SOLICITATION OF AN OFFER TO BUY ANY SECURITY OTHER THAN THE SECURITIES OFFERED HEREBY, NOR DOES IT CONSTITUTE AN OFFER TO SELL OR A SOLICITATION OF AN OFFER TO BUY SUCH SECURITIES BY ANYONE IN ANY JURISDICTION IN WHICH SUCH OFFER OR SOLICITATION IS NOT AUTHORIZED, OR IN WHICH THE PERSON MAKING SUCH OFFER OR SOLICITATION IS NOT QUALIFIED TO DO SO, INCLUDING, WITHOUT LIMITATION, ANY FOREIGN JURISDICTION.

THE INFORMATION CONTAINED IN THE DOCUMENTS HAS BEEN SUPPLIED BY THE COMPANY. THE DOCUMENTS CONTAIN SUMMARIES, BELIEVED BY THE COMPANY TO BE ACCURATE, OF CERTAIN DOCUMENTS THAT ARE REFERRED TO HEREIN. FOR COMPLETE INFORMATION CONCERNING THE RIGHTS AND OBLIGATIONS OF THE PARTIES, COPIES OF DOCUMENTS REFERRED TO HEREIN WILL BE MADE AVAILABLE AT THE PRINCIPAL OFFICE OF THE COMPANY UPON THE REQUEST OF AN INVESTOR. ALL SUCH SUMMARIES SET FORTH HEREIN ARE QUALIFIED IN THEIR ENTIRETY BY THIS REFERENCE. INVESTORS MAY ALSO REQUEST ADDITIONAL INFORMATION CONCERNING THE COMPANY FROM MR. EARL MILLER OR HIS REPRESENTATIVES AND UPON TENDERING A SUBSCRIPTION TO THE COMPANY, INVESTORS WILL BE REQUIRED TO REPRESENT, AMONG OTHER THINGS, THAT THE INVESTORS HAVE RECEIVED ADEQUATE RESPONSES TO ALL INQUIRIES MADE

BY SUCH INVESTORS TO THE COMPANY AND MR. EARL MILLER OR HIS REPRESENTATIVES CONCERNING THE COMPANY, ITS PROPOSED BUSINESS, FINANCIAL RESULTS OF OPERATIONS, AND THE OFFERING, AND THAT THE INVESTORS HAVE BEEN AFFORDED SUCH RIGHT AND OPPORTUNITY TO MAKE SUCH INQUIRIES.

THE COMPANY HAS PREPARED AND PRESENTED THE INFORMATION CONTAINED IN THE DOCUMENTS, WITHOUT INDEPENDENT REVIEW, ANALYSIS AND/OR EVALUATION. INVESTORS SHOULD NOT RELY UPON ANY PROMISE OR REPRESENTATION CONCERNING THE COMPANY'S FUTURE PERFORMANCE CONTAINED HEREIN OR IN ANY OTHER DOCUMENT, AND INVESTORS SHOULD ONLY RELY ON THE INVESTOR'S OWN EVALUATION OF THE COMPANY'S BUSINESS, AND THE RISKS ASSOCIATED WITH AN INVESTMENT IN THE COMPANY.

IN DECIDING WHETHER TO PURCHASE SECURITIES, EACH INVESTOR MUST CONDUCT AND RELY ON ITS OWN EVALUATION OF THE COMPANY AND THE TERMS OF THE OFFERING, INCLUDING THE MERITS AND RISKS INVOLVED IN MAKING AN INVESTMENT DECISION WITH RESPECT TO THE SECURITIES. INVESTORS SHOULD NOT CONSTRUE THE CONTENTS OF THE DOCUMENTS OR ANY PRIOR OR SUBSEQUENT COMMUNICATIONS FROM THE COMPANY OR ANY PROFESSIONAL ASSOCIATED WITH THE OFFERING, AS LEGAL OR TAX ADVICE. EACH ACCREDITED INVESTOR OR SOPHISTICATED NON-ACCREDITED INVESTOR WHO IS AUTHORIZED TO RECEIVE THESE DOCUMENTS SHOULD CONSULT THEIR OWN COUNSEL, ACCOUNTANT AND/OR BUSINESS ADVISOR AS TO LEGAL, TAX AND RELATED MATTERS CONCERNING THEIR INVESTMENT IN THE COMPANY AND THEIR PURCHASE OF THE SECURITIES OFFERED HEREBY.

NO GENERAL SOLICITATION WILL BE CONDUCTED AND NO OFFERING LITERATURE OR ADVERTISING IN ANY FORM WILL OR MAY BE EMPLOYED IN THE OFFERING OF THE SECURITIES, EXCEPT FOR THE DOCUMENTS.

THE DOCUMENTS SPEAK AS OF THE DATE INDICATED, EXCEPT WHERE NOTED. NO DELIVERY OF THE DOCUMENTS OR ANY SALE MADE IN CONNECTION WITH THIS OFFERING SHOULD IMPLY THAT THE COMPANY'S AFFAIRS HAVE NOT CHANGED SINCE THE DATE OF THE DOCUMENTS.

IT IS THE RESPONSIBILITY OF ANY INVESTOR WISHING TO PURCHASE THE SECURITIES OFFERED HEREBY TO OBSERVE THE LAWS OF ANY RELEVANT JURISDICTION OUTSIDE THE UNITED STATES IN CONNECTION WITH ANY SUCH PURCHASE, INCLUDING OBTAINING ANY REQUIRED GOVERNMENTAL, REGULATORY OR OTHER CONSENTS OR OBSERVING ANY OTHER APPLICABLE LEGAL OR OTHER FORMALITIES PRIOR TO SUBSCRIBING FOR THE SECURITIES OF THE COMPANY.

THE DOCUMENTS HAVE BEEN PREPARED IN THE ENGLISH LANGUAGE AND NO AUTHORIZED TRANSLATION HAS BEEN MADE. ALL INVESTORS BY SUBSCRIBING FOR THE SECURITIES MUST AGREE THAT THEY ARE FULLY CONVERSANT IN THE ENGLISH LANGUAGE TO MAKE AN INFORMED DECISION REGARDING ANY SUCH INVESTMENT IN THE COMPANY.

AN INVESTOR PRIOR TO SUBSCRIBING FOR THE SECURITIES HERETO SHOULD READ, AND IS URGED TO READ, THE DOCUMENTS IN THEIR ENTIRETY.

\*     \*     \*

THE DOCUMENTS SUPERSEDE, RESTATE AND REPLACE ANY AND ALL PRIOR DOCUMENTATION PROVIDED BY THE COMPANY, MR. EARL MILLER, AND ANY AFFILIATES THEREOF IN CONNECTION WITH THE OFFER OR SALE OF THE SECURITIES, AND INVESTORS HEREBY AGREE AND ACKNOWLEDGE THAT IN CONNECTION WITH THE PURCHASE OF SECURITIES, INVESTORS HAVE RELIED ONLY ON THE INFORMATION CONTAINED IN THE DOCUMENTS IN CONNECTION WITH THE OFFERING.

Prospective Investors should not construe the contents of the Documents or any prior or subsequent communications from the Company, Mr. Earl Miller, or any of their respective agents or representatives, as legal, tax, and/or investment advice. EACH INVESTOR SHOULD CONSULT HIS, HER OR ITS OWN LEGAL COUNSEL, ACCOUNTANT, AND/OR OTHER PROFESSIONAL ADVISOR AS TO LEGAL, TAX, INVESTMENT, ACCOUNTING, SECURITIES AND/OR RELATED MATTERS CONCERNING AN INVESTMENT IN THE COMPANY. (Each prospective Investor is responsible for any fees or charges therefor.)

NO REPRESENTATIONS ARE MADE AS TO THE FEDERAL, STATE, OR LOCAL INCOME TAX CONSEQUENCES RESULTING FROM AN INVESTMENT IN THE SECURITIES. NO ASSURANCES ARE GIVEN THAT ANY DEDUCTIONS OR OTHER INCOME TAX ADVANTAGES WHICH MAY BE CONTEMPLATED WILL BE AVAILABLE.

The Securities being offered hereby have not been registered under the Securities Act or the securities laws of any jurisdiction, including any foreign jurisdiction, and are being offered in reliance upon exemptions from registration under the Securities Act. The right of Investors to sell, transfer, pledge or otherwise dispose of or assign the Securities issued is limited by the Securities Act and state securities laws, and the laws of other jurisdictions, and pursuant to the terms of the Operating Agreement. See the Section entitled "Risk Factors."

[Remainder of this page left intentionally blank]

## 5 Star Investment Group VII, LLC
### Private Placement Memorandum

### PROPRIETARY AND CONFIDENTIAL

This document includes information that is proprietary and confidential and is not to be copied or distributed without the approval of an officer of 5 Star Investment Group VII, LLC.

This offer is available to accredited investors and sophisticated non-accredited investors and has been prepared to comply with the securities laws and regulations of the United States.

Because this Private Placement Memorandum focuses primarily on details concerning the company rather than the industry in which the company operates or will operate, potential investors may wish to conduct their own separate investigation of the company's industry in order to obtain broader insight in assessing the company's prospects.

### THE COMPANY

5 Star Investment Group VII, LLC ("Company") is a limited liability company ("LLC") organized in the State of Indiana. Its principal office is located at 3131 Grape Rd, Mishawaka, IN 46545, and its telephone number is (574) 825-4100.

5 Star Investment Group VII, LLC has been created for the purpose of investing in single-family residential and multi-family residential (multi-unit apartment buildings), which it will do through the use of several options. These options include, but are not limited to, Promissory Notes, Subscription Agreements, and borrowing from one or more financial institutions as opposed to individuals. To be clear, this Executive Summary does not contain an offer of securities for sale.

Promissory Notes are debt securities, meaning the Company is promising to use its best efforts to return private lenders' or investors' their principal and an interest rate based on simple interest. Subscription Agreements are equity securities, meaning the Company is promising to use its best efforts to return investors their principal and a preferred return on investment in the form of a mutually-agreed upon portion of profits on properties investors' funds are invested into. Such equity securities may also result in a payout of a kicker, meaning an additional payment to investors based upon additional equity appreciation on properties investors' funds are invested into. Such additional equity appreciation would be above and beyond that originally anticipated by the Company when originally investing, and is at the sole discretion of the Company.

Earl Miller is an Indiana native who started his real estate career in 2006 as the sales manager of an Ohio company that sold condos on the Gulf Coast of Florida. The resort consisted of 450 units that were 23 stories high, overlooking the Gulf Coast. Earl has personally sold millions of dollars of real estate to investors all over the country.

5 Star Investment Group is a member of an elite group of highly trained and experienced commercial and multi-family real estate professionals. This group meets regularly to mastermind and streamline strategies that will group the organization and benefit our investors.

5 Star has partnered with a growing South Carolina-based Commercial Real Estate Investment firm and together, they manage over 2000 apartment units and hold assets valued at over $50,000,000. Each company operates with similar core values -- this allows them to recognize and capitalize on each organization's strengths.

The 5 Star "client first" philosophy is that every decision we make has to be able to benefit our client and 5 Star or it is not an opportunity we are interested in.

6

5 Star believes that there are many qualities and skills required to be a successful and professional real estate organization including:

- Integrity
- In-depth community and market knowledge
- Market savvy
- Effective negotiation skills
- Being a good listener and communicator
- Choosing to respond quickly to client needs

In addition, 5 Star has found that the latest technologies, when managed properly, allow them to implement effective and efficient processes which creates more time to spend with investors.

**Mission:** To provide win-win opportunities that are based on tried, tested, and proven systems.

**Vision:** To have a 5 Star Company that is built on the foundation of Integrity, Trust, Loyalty, and Friendship.

**Company Motto:** What goes around ALWAYS comes around! Life IS relationships and everything else is just details.

## RISKS OF INVESTMENT

This executive summary does not constitute an offer of securities for sale to or a solicitation of offers to invest from any person who may receive it. In the future, the Company may make such an offer, and would have funds from investors who would be called "Private Lenders" or "Investors." The Company will use its funds to acquire real estate primarily, although not necessarily exclusively, in the State of Indiana. The Company is focused primarily, although not necessarily exclusively, on single-family residential and multi-family residential (multi-unit apartment buildings).

Whatever the source of funding for funds the Company chooses to invest in real estate the funds it invests in real estate will be subject to certain risks. The Company will do its best to manage these risks. As a real-estate investment company, the Company is subject to risks including, but not limited to:

- Availability of investment capital
- Local real estate markets
- Competition from other real-estate investment companies
- Availability of investment-grade properties
- Legal and regulatory issues
- Potential vacancies
- Non-payment of rent by tenants
- Potential damage caused by tenants
- Costs associated with rehabbing and maintaining properties
- Unanticipated repair costs
- Lower Net Operating Income ("NOI") than projected
- The possibility of selling a property for less than it was purchased, including the possibility that there would be no equity in a property
- Interest rate increases
- Inability to obtain financing or refinance its debt
- The death or disability of Mr. Miller
- Changing market conditions
- Potential lack of demand for a property or types of property

- [For any rental or lease properties, the potential for damage to the properties or the failure to receive rental or lease payments as due]

## MANAGEMENT

- Mr. Miller will be a Manager of the Company.
- Mr. Miller shall not be paid a salary or wages of any type by the Company.
- Either the Company or a property management company hired by the Company will manage the properties the Company invests in.
- The Managers of the Company, as well other employees of the Company, who will be identified in relevant filings with the US Securities and Exchange Commission, will serve as Promoters of the Company, in addition to their other roles. Promoters will assist the Company by introducing potential private lenders or investors to the Company, and promoters may be compensated by the Company for such work. Promoters will not be paid any commissions, unless they are registered and licensed as securities brokers.
- The Company may conduct related-party transactions between the Company and its owners and employees. A related party is another company that has one or more things in common with The Company, such as management or ownership. Such transactions may include but are not necessarily limited to borrowing, lending, purchasing, selling, and may be conducted on terms and conditions that are different from market terms and conditions.
- Further, the Company may borrow money from or receive investments from investors and then lend the money to a related-party company. This means that this Company may borrow money or receive an investment and then lend such funds to one or more other company that share similar ownership. The company or companies that such money is loaned to will be fully responsible for returning such funds plus interest or other profits to this Company and the Company will remain fully responsible for returning your loan or investment principal plus promised interest or profit.
- The Manager will have the sole authority to manage the affairs of the Company, including the sole authority to:
  - o Identify properties to be loaned against or purchased by the Company;
  - o Monitor and assess Company performance and set the Company's accounting procedures
  - o Oversee rehabilitation, management, leasing, and disposing of properties
  - o Otherwise direct the day-to-day operations of the Company.

## COMPANY OPERATIONS

The Company intends to operate its business in a manner that will both secure its funds' value while reasonably working to enhance the value of its investments. For example, the Company believes in using "value plays" or "value-adding components." To illustrate such components, the Company intends to, where possible, increase rents to meet current market pricing.

The Company reserves the right to offer different Private Lenders or Investors different returns, based on mutually agreed to terms and conditions which will be put in writing. For example, the Company may give better returns to Private Lenders or Investors who provide funding earlier than other Private Lenders or Investors, or those who agree to provide funding above the minimum investment. These are only examples, and there may be other terms and conditions that will provide different rates of return to different Private Lenders.

The Company may, from time to time, engage in joint ventures or partnerships with other companies or individuals. Joint ventures may be in the form of contractual relationships with another person, persons, business or businesses, as well as other, less formal agreements. Such joint ventures or partnerships may be registered under state law, where required. There may be times when the Company will hold a lien position on behalf of its Investors, instead of the Investors themselves holding such a lien position. Also, the Company may offer its investors 1st, 2nd or 3rd lien positions, depending upon the investment amounts and opportunities.

Invested funds are a debt due from the LLC to its Private Lenders in the form of Promissory Notes, secured by the Company's investment in properties.. All property owned by the Company, or an affiliate of the company, will be managed either by the Company itself, or by a property management company hired by the Company. Property and casualty insurance will be obtained by the Company, or an affiliate of the Company, on property purchased using Private Lenders' or Investors' funds. Qualified contractors will be engaged to perform work on the property as may be necessary. A real estate attorney, or title company, will conduct closings.

## TERMS OF THE OFFERING

The Company is offering the opportunity to invest in the Company. The minimum investment is $15,000 and there is a maximum investment of $5 Million. Such investments must be made with the knowledge that funds must be kept within the Company for a minimum of one year and a maximum of five years' time or until the exercise by Mr. Miller of the Private Lender or Investor exit strategy, if earlier.

Accredited investors and sophisticated non-accredited investors will be offered or sold such investment. The investment is a security and will only be offered pursuant to a filing of Form D with the federal Securities and Exchange Commission, and notice filings in states where the Company has Private Lenders or Investors and such a filing is required, and after Private Lenders or Investors have been offered an opportunity to review a private placement memorandum and ask questions of the Company's management and of their own professional advisors or purchaser representative. Such an offering will be governed by relevant securities laws and regulations, and in compliance with both state and federal laws and regulations. Investments will be in the form of debt securities or Promissory Notes issued by the Company. The Company does not have a minimum amount of securities that must be sold by a certain date for the offering to go forward.

In most cases, the Company will offer its private lenders or investors the opportunity to make investments in properties which require the use of funds from two or more private lenders or investors. This type of investment is commonly referred to as "pooling." The Company intends to take advantage of such opportunities with the written consent of its investors. Such consents would be given on a deal-to-deal basis and may have an impact on the interest rates paid to investors for their investments.

## USE OF FUNDS

Our company began operations by just purchasing houses in our local market area. As our business has grown, we recognize the power of closely monitoring market cycles on a city-by-city basis. We also recognize the value of timing in terms of buying into a market. We have adjusted our investing strategy so we can enter and exit different markets quickly, as each area reaches its maximum potential.

While recognizing that much research is needed and is conducted by the Company, and acknowledging that this is at best an imprecise market investment approach, here are some of the aspects we look for to help us decide on when and where to invest our funds. On a city-by-city basis and when we look at states as a whole, we look for:

- Job growth
- Population growth
- Path of progress
- Local economic trends

As an example as a source of such data, chamber of commerce reports can prove especially helpful when analyzing for both negative and positive trends. To give our potential investors a better understanding of the strategies we use in market places, we want to explain that there are several different methodologies we can employ that can lead to profit for the Company and its investors.

1. Buy a home → Rehab → Sell
2. Buy empty lot → Build New (in high demand area)
3. Buy a home → Demolish home → Rebuild New
4. Buy a home with large lot → Remodel home → Subdivide Lot → Build additional house

Similar processes are used when the Company invests in multifamily apartments. The Company may also, from time to time, invest in development projects. This means that the Company may on its own or with one or more partner companies, invest in projects where land is currently undeveloped (has no buildings on it. The development would involve the construction of homes, apartment units, storage units, or other residential or commercial real estate.

The Company plans to use its funds to:

- Invest in single-family residential and multi-family residential (multi-unit apartment buildings) primarily, although not necessarily exclusively, in the State of Indiana.
- The Company is focused on residential real estate investments. It is possible that another investment opportunity, for example with commercial property in Indiana or another state, may arise that the Company may choose to consider. No investor funds would be used to invest in non-residential real estate investments without the written mutual agreement of the Company and one or more of its investors.
- Cover offering expenses. These may include offering preparation, filing, printing, legal, accounting and other fees and expenses related to the Offering. Fees include securities filing fees, legal fees for preparation of documents, and other fees such as printing and postage.
- Cover on-going legal and accounting fees
- Cover working capital reserve. Working capital reserve is for on-going operational expenses including regular bookkeeping services, office supplies, software, equipment, and office expenses.
- No commissions will be paid to any person or business entity for the sale of these securities, unless and except if they are licensed and/or registered broker-dealers within a particular state or states, and the Company does not anticipate doing so in any case, and may only be sold by authorized representatives of the Company and in compliance with all relevant securities laws and regulations.

## FINANCIAL INFORMATION

Certain financial information on the company is available upon request. Financial information should be treated as confidential.

## SECURITIES COUNSEL

In 2014, the Company retained the legal services of The Law Offices of Ralph M. Sherman, PC, a professional services company incorporated in the State of Michigan. The Company is utilizing the legal services, in particular, of Sherman Law Offices' Founding Partner, Ralph M. Sherman, Esq., who is licensed in both the Commonwealth of Massachusetts and the State of Michigan, and who has been practicing securities law since October of 1988. These legal services are addressed solely to the Company and its Managing Member. In any possible future offering made by the Company, potential investors would be advised to conduct due diligence and obtain advice from their own professional advisors, such as attorneys, accountants, or finance professionals.

## LITIGATION

The Company may, from time to time, become engaged in certain litigation related to the operation of their business, similar to other investing businesses. There is no past, present, or anticipated litigation that would have a material effect on the business, financial condition, or operations of the Company.

10

## DISCLAIMERS

THESE SECURITIES ARE NOT REGISTERED WITH THE SECURITIES EXCHANGE COMMISSION UNDER THE SECURITIES ACT OF 1933, AS AMENDED (THE "ACT"). THESE SECURITIES ARE BEING OFFERED AND SOLD IN RELIANCE ON REGULATION D, RULE 506 OF THE SECURITIES ACT OF 1933, AS AMENDED, AND OTHER RELATED RULES UNDER REGULATION D, PURSUANT TO A FILING OF FORM D WITH THE FEDERAL SECURITIES AND EXCHANGE COMMISSION, AND WHERE REQUIRED, AT THE STATE LEVEL TO PROVIDE NOTICE TO SUCH STATE SECURITIES REGULATOR(S), PURSUANT TO RELEVANT AND APPLICABLE REGULATIONS AND EXEMPTIONS AND PURSUANT TO EXEMPTIONS FROM REGISTRATION UNDER THE SECURITIES LAWS AND REGULATIONS OF SUCH STATES AND THE DISTRICT OF COLUMBIA.

ALL PURCHASES MUST BE MADE FOR INVESTMENT PURPOSES ONLY AND NOT WITH THE VIEW TO OR FOR SALE IN CONNECTION WITH A DISTRIBUTION OF THE SECURITY. ANY RESALE OF A SECURITY SOLD IN RELIANCE OF THIS EXEMPTION WITHIN 12 MONTHS OF THE SALE SHALL BE PRESUMED TO BE WITH A VIEW TO DISTRIBUTION AND NOT FOR INVESTMENT, EXCEPT FOR A RESALE PURSUANT TO A REGISTRATION OR TO AN ACCREDITED INVESTOR OR SOPHISTICATED NON-ACCREDITED INVESTOR PURSUANT TO AN EXEMPTION.

NO PERSON HAS BEEN AUTHORIZED BY THE COMPANY TO GIVE ANY INFORMATION OR MAKE ANY REPRESENTATIONS OF ANY KIND WHATSOEVER CONCERNING THE COMPANY OR THIS OFFERING OTHER THAN THOSE CONTAINED IN THIS CIRCULAR, AND, IF GIVEN OR MADE, SUCH OTHER INFORMATION OR REPRESENTATIONS MUST NOT BE RELIED UPON AS HAVING BEEN AUTHORIZED BY THE COMPANY. NEITHER THE DELIVERY OF THIS PRIVATE PLACEMENT MEMORANDUM NOR ANY SALES MADE HEREUNDER SHALL, UNDER ANY CIRCUMSTANCES, IMPLY THAT THERE HAS BEEN NO CHANGE IN THE AFFAIRS OF THE COMPANY DESCRIBED HEREIN SINCE THE DATE HEREOF, OR THAT THE INFORMATION CONTAINED HEREIN IS CORRECT AS OF ANY TIME AFTER THE DATE IT WAS FIRST DISTRIBUTED. THIS DOES NOT CONSTITUTE AN OFFER OR SOLICITATION IN ANY STATE TO ANY PERSON TO WHOM SUCH OFFER OR SOLICITATION WOULD BE UNLAWFUL.

## FORWARD LOOKING STATEMENTS

The Company and its representatives may from time to time make written or oral forward-looking statements. One can identify these forward-looking statements by use of words such as "strategy," "expects," "plans," "anticipates," "believes," "will," "continues," "estimates," "intends," "projects," "goals," "targets" and other words of similar meaning. One can also identify them by the fact that they do not relate strictly to historical or current facts. These statements are based on our assumptions and estimates and are subject to risks and uncertainties. In connection with the "safe harbor" provisions of the Private Securities Litigation Reform Act of 1995, the Company is hereby identifying important factors that could cause actual results and outcomes to differ materially from those contained in any forward-looking statement made by or on behalf of the Company; any such statement is qualified by reference to the following cautionary statements.

The Company's business is subject to competition and changes in the marketplace, and other risks both known and unknown. Our results are dependent upon our continued ability to borrow money from private lenders, anticipating and responding to changing market conditions, and other important factors incorporated into this section by reference, which could cause the Company's results to differ materially from results that have been or may be projected by or on behalf of the Company. The Company cautions that the foregoing list of important factors is not exclusive. Any forward-looking statements are made as of the date of the document in which they appear. The Company does not undertake to update any forward-looking statement that may be made from time to time by or on behalf of the Company.

THIS OFFER IS SUBMITTED ON A CONFIDENTIAL BASIS FOR USE SOLELY IN CONNECTION WITH YOUR CONSIDERATION OF THIS OFFER. THIS PRIVATE PLACEMENT MEMORANDUM MAY NOT BE REPRODUCED IN WHOLE OR IN PART, AND NO ONE, FOR ANY REASON, SHOULD RELY ON ANY REPRODUCTION OF THIS MEMORANDUM.

THESE SECURITIES HAVE NOT BEEN APPROVED OR DISAPPROVED BY THE SECURITIES AND EXCHANGE COMMISSION OR ANY STATE SECURITIES COMMISSION OR OTHER REGULATORY AUTHORITY, NOR HAS THE COMMISSION OR ANY OTHER AUTHORITY ASSESSED THE ACCURACY OR ADEQUACY OF THIS PRIVATE PLACEMENT MEMORANDUM. ANY REPRESENTATION TO THE CONTRARY IS A CRIMINAL OFFENSE.

THIS PRIVATE PLACEMENT MEMORANDUM DOES NOT CONSTITUTE AN OFFER OR SOLICITATION IN ANY STATE OR OTHER JURISDICTION IN WHICH SUCH OFFER OR SOLICITATION IS NOT AUTHORIZED.

[Remainder of this page left intentionally blank]

A-37

# NOTE 2-1

## PROMISSORY NOTE
### TERM NOTE



*72209*
*Eck Paul*

Middlebury, Indiana
May 24th, 2013

$55500.00

FOR VALUE RECEIVED, the undersigned, 5Star Investment Group VII, LLC, ("Borrower"), who address is P.O. Box 706 Middlebury, Indiana 46540, promises to pay to the order of William Adamczyk ("Lender"), whose address is 740 Drury Court, Gurnee, IL 60031, the principal sum of Fifty-Five Thousand Five Hundred US dollars ($55500.00) Interest will accrue under this Note at the rate of Ten Percent (10%) per annum. Borrower promises to pay all attorney's fees, paralegal's fees, and any costs and expenses incurred by Lender in connection with collection under this Note. Borrower agrees that all amounts payable under this Note shall be paid without relief from valuation and appraisement laws. The principal and interest under this Note shall be payable at the address set forth above for Lender as follows:

    a. Borrower shall make Thirty (30) consecutive monthly payments of $462.50, which shall be due and payable beginning July 15, 2013, (June payment to be pro-rated from May 24th to June 15th) and shall be payable on the same day of each consecutive month thereafter; and

Then, on the sooner of Thirty months from July 15, 2013 or the sale of the real estate serving as collateral for this Note under a Mortgage of even date, the balance of all principal and interest due and owing under this Note shall be paid in full. Any request from a borrower for his or her funds before the end of this 30-month period may or may not be honored at the sole discretion of the Company, and if and when agreed to by the Company, the borrower shall receive back his or her initial investment amount, minus an early-withdrawal penalty equal to two percent (2%) of the initial investment amount. No additional interest will be earned upon the funds invested or due to the borrower after such a request for early withdrawal is made and the loan amount is repaid.

    b.

If any payment shall be paid more than thirty (30) days after the due date thereof, a penalty equal to three percent (3%) of the amount due and owing shall be paid with said payment as a penalty for the delinquency.

If Borrower fails to pay interest or other amounts under this Note when due, or if Borrower shall be dissolved, merge or consolidate with any other firm or entity, or Borrower files a petition in bankruptcy, or one is filed against Borrower, or if Borrower defaults under the mortgage, Lender may declare all amounts due under this Note immediately due and payable.

The Lender may unilaterally defer (in writing or without notice to the Borrower) one or more monthly payments or may not require one or more monthly payments to be made when due, with our without notice to the Borrower, but any such deferral shall not be considered a waiver of the Lender's rights to enforce this Promissory Note, in whole or in part.

Initial _____

# NOTE 2-1

No failure by Lender to exercise any right under this Note, including any rights resulting from an event of default, shall operate as a waiver or otherwise prevent Lender from exercising any of Lender's rights under this Note at any other time, including the exercise by Lender of any rights at any time during the continuance of such event of default or on the occurrence of a subsequent even of default.

The holder of this Note, in its sole discretion, may renew this Note, accept a renewal Note or Notes, extend the time for the payment of the indebtedness evidenced by this Note, reduce the payments under this Note, or do any combination of such actions on any number of occasions; provided, however, any such action or omission shall not release the Borrower on the obligations evidenced by this Note. Borrower waives presentment for payment, protest, notice of protest, notice of non-payment or dishonor of this Note, and diligence in the collection of this Note; and Borrower consents to any actions by Lender or any holder of this Note as set forth in this paragraph.

If this Note is negotiated by Lender, the word "Lender" as used in this Note shall refer to the "holder" unless the context otherwise requires.

**Because of our filing that we have to do with the Securities Exchange Commission we are required to have our investors indicate whether they are an "Accredited" or a "Sophisticated" investor. Please initial which ever option applies:**

1. I am an accredited investor by nature of my income or net worth. _____.
   *Definition: (Any person whose individual, or joint net worth exceeds $1,000,000 or has an income in excess of $200,000 in each of the two most recent years or joint income with that person's spouse in excess of $300,000 in each of those years and has a reasonable expectation of reaching the same income level in the current year)*

2. I am a sophisticated non-accredited investor, meaning that although I may not be an accredited investor by nature of my income or net worth, I have sufficient investing experience and an understanding of the risks and benefits of investing in general and this offering in particular. _____

Borrower: 5 Star Investment Group VII, LLC

Signed: *Earl Miller*

Printed: *Earl Miller* (Manager)

Investor_____ Date __May 24th, 2013__

A-39

22209 CR 10
ELKHART

2013-13276

ELKHART COUNTY RECORDER
JERRY L WEAVER
FILED FOR RECORD ON
AS PRESENTED
06/05/2013 08:59 AM



## REAL ESTATE MORTGAGE

This indenture witnesseth, that for $1.00 and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, 5 Star Investment Group V, LLC (the "Mortgagor") whose address is 304 N. Main Street Suite A Middlebury, Indiana 46540, Elkhart County, State of Indiana mortgages and warrants to William Adamczyk located at: 740 Drury Court, Gurnee, IL 60031 (the "Mortgagee") of Lake County, IL, the following described real estate in Elkhart County, Indiana:

See Exhibit "A"

(hereinafter referred to as the "Mortgaged Premises") together with all rights, privileges, interests, easements, hereditaments, appurtenances, fixtures and improvements now or hereafter belonging, appertaining, attached to, or used in connection with, the Mortgaged Premises, and all the rents, issues, income and profits thereof.

This Mortgage is given to secure the performance of the provisions hereof and the payment of a certain Promissory Note dated the 24th day of May, 2013, as it is amended, replaced and/or extended from time to time in the principal amount of Fifty-Five Thousand Five Hundred U.S. Dollars ($55500.00), with interest as set forth in the Note. The Mortgagor and Mortgagee may replace, amend, extend, renew or substitute said Note, which shall in each and every case be secured by this Mortgage and shall be considered the "Note" for all purposes of this Agreement.

Said principal and interest are payable as follows:

**As set forth in the Note.**

Mortgagee may unilaterally defer (in writing, or orally, or without notice to the Mortgagor) one or more payments to be made when due with or without notice to the Mortgagor, but any such deferral shall not be considered a waiver of Mortgagee's rights to enforce this Mortgage, in whole or in part, and shall not be a legal basis from which Mortgagor shall be entitled to argue that the statute of limitation has run or begun to expire with respect to any payment on this Mortgage.

This Mortgage is to secure any and all indebtedness owing to Mortgagee up to a maximum principal amount of Fifty-Five Thousand Five Hundred US Dollars ($55500.00), together with costs, expenses and reasonable attorney's fees, plus all interest which accrues after the date hereof.

## A-40

# NOTE 2-1

The Mortgagor jointly and severally covenants and agrees with the Mortgagee that:

1. **Payment of Indebtedness.** The Mortgagor shall pay when due all indebtedness secured by this mortgage, and perform all obligations under this Mortgage, on the dates and in the amounts, respectively, as provided in the Note or in this Mortgage, without relief from valuation and appraisement laws, and with attorneys' and paralegals' fees.

2. **Liens.** The Mortgagor, by its duly authorized representative, and by the duly authorized representative individually, hereby jointly represent and warrant that all mortgages or liens in the Mortgaged Premises will be paid according to their terms.

3. **Repair of Mortgaged Premises; Insurance.** The Mortgagor shall keep the Mortgaged Premises in good repair and shall not commit waste thereon. The Mortgagor shall procure and maintain in effect at all times adequate insurance in insurance companies acceptable to the Mortgagee against loss, damage to, or destruction of the Mortgaged Premises because of fire, windstorm or other such hazards in such amounts as the Mortgagee may reasonably require from time to time, and all such insurance policies shall contain proper clauses making all proceeds of such policies payable to the Mortgagee and the Mortgagor as their respective interests may appear. Each such policy shall provide that it may not be cancelled and/or amended without ten (10) days prior written notice to Mortgagee. All such policies of insurance shall be delivered to and retained by the Mortgagor until the indebtedness secured hereby is fully paid.

4. **Taxes and Assessments.** The Mortgagor shall pay all taxes or assessments levied or assessed against the Mortgaged Premises, or any part thereof, as and when the same become due and before penalties accrue.

5. **Advancements to Protect Security.** The Mortgagee may, at Mortgagee's option, advance and pay all sums necessary to protect and preserve the security intended to be given by this mortgage. All sums advanced and paid by the Mortgagee shall become a part of the **indebtedness** secured hereby and shall bear interest from the date or dates of payment at the rates set forth above for the indebtedness. Such sums may include, but are not limited to, insurance premiums, taxes, assessments and liens which may be or become prior and senior to this mortgage as a lien on the Mortgaged Premises, or any part thereof, and all costs, expenses and attorney's fees incurred by the Mortgagee in respect of any and all legal or equitable proceedings which relate to this mortgage or to the Mortgaged Premises.

6. **Default by Mortgagor; Remedies of Mortgagee.** Upon default by the Mortgagor which remains uncured for a period of ten (10) days after written notice by Mortgagee to any Mortgager to cure said default, in any payment provided for herein or in the Note, or in the performance of any covenant or agreement of the Mortgagor hereunder, or if the Mortgagor shall abandon the Mortgaged Premises, or die (if an individual), or if Mortgagor dissolves or merges or consolidates with another firm, company, or entity, or if a trustee or receiver shall be appointed for Mortgagor, in any bankruptcy action, and the same is not

dismissed within thirty (30) days thereafter, then and in any such event, the entire indebtedness secured hereby, at the election of Mortgagee, shall become immediately due and payable at the option of the Mortgagee, without additional notice, and this mortgage may be foreclosed accordingly, and Mortgagee shall be entitled to any and all remedies available at law and in equity, and the right to recover reasonable attorneys' and paralegals' fees, costs, and expenses. Upon such foreclosure the Mortgagee may obtain appropriate title evidence, and may add the cost thereof to the principal balance due.

7. **Non-Waiver; Remedies Cumulative.** No delay by the Mortgagee in the exercise of any of Mortgagee's rights hereunder shall preclude the exercise thereof so long as the Mortgagor is in default hereunder, and no failure of the Mortgagee to exercise any of Mortgagee's rights hereunder shall preclude the exercise thereof in the event of a subsequent default by the Mortgagor hereunder. The Mortgagee may enforce any one or more of Mortgagee's rights or remedies hereunder successively or concurrently.

8. **Extensions; Reductions; Renewals; Continued Liability of Mortgagor.** The Mortgagee at Mortgagee's option, may extend the time for the payment of the indebtedness, or reduce the payments thereon, or accept a renewal Note or Notes therefore, without consent of any junior lien holder, and without the consent of the Mortgagor if the Mortgagor has then parted with title to the Mortgaged Premises. No such extension, reduction or renewal shall affect the priority of this mortgage or impair the security hereof in any manner whatsoever, or release, discharge or affect in any manner the personal liability of the Mortgagor to the Mortgagee.

9. **General Agreement of Parties.** All rights and obligations hereunder shall extend to and be binding upon the several heirs, representatives, successors and assigns of the parties to this mortgage. When applicable, use of the singular form of any word also shall mean or apply to the plural and masculine form shall mean and apply to the feminine or the neuter. The titles of the several paragraphs of this mortgage are for convenience only and do not define, limit or construe the contents of such paragraphs.

IN WITNESS WHEREOF, the Mortgagor has executed this mortgage this _24th_ day of _May_, 2013.

Mortgagor: 5 Star Investment Group V, LLC (legal name)

Signed: _Earl Miller_

Printed: _Earl Miller_

# NOTE 2-1

STATE OF INDIANA )
) SS:
COUNTY OF ELKHART )

Before me, a Notary public in and for said County and State, personally appeared _Earl Miller_ the _Manager_ of 5 Star Investment Group V, LLC, who acknowledged the execution of the foregoing mortgage.

Witness my hand and Notarial Seal this _22nd_ day of _May_, 2013.

_____, Notary Public
Jeffrey Clemmer
Residing in Elkhart County, Indiana

My Commission Expires:
_9/02/2018_

This Instrument Prepared By: Earl Miller,
P.O. Box 706, Middlebury, Indiana 46540.

I affirm, under the penalties for perjury, that I have taken reasonable care
to redact each Social Security number in this document, unless required by law.
Earl Miller

A-44

## EXHIBIT "A"

IN NE NE 362.68X86.75X343.14X 90' N SIDE N RIV RD 180' E OF W LINE SEC 36 .75A WRIGHTS NORTH LOT 3 EX N PT ROW

Also known as: 22209 CR 10, Elkhart, IN 46514

DD 2-1

5 Star Investment Group VII, LLC
Disclosure Document

 COPY

## PROPRIETARY AND CONFIDENTIAL

This Document is for Discussion purposes only and is not intended to be used or considered as an offering of securities. Please see disclaimers at end of document for more information on offering requirements.

This document includes information that is proprietary and confidential and is not to be copied or distributed without the approval of an officer of 5Star Investment Group VII, LLC.

This offer is limited to accredited investors and non-accredited sophisticated investors resident in the United States and has been prepared to comply with the securities laws and regulations of the United States, particularly under Regulation D, Rule 506 of the Securities Act of 1933, as amended.

Because this Disclosure Document focuses primarily on details concerning the company rather than the industry in which the company operates or will operate, potential investors may wish to conduct their own separate investigation of the company's industry in order to obtain broader insight in assessing the company's prospects.

## THE COMPANY

5Star Investment Group VII, LLC ("Company") is a company being organized in the State of Indiana. Its office is located at 304 N. Main Street, Suite A, Middlebury, Indiana 46540, and its telephone number is 574-825-4100.

5Star Investment Group VII, LLC is being created solely for the purpose of attracting private lenders' funds, which in turn will be directed to and or managed 5Star Investment Group V, an Indiana limited liability company, and possibly one or more other companies, which will be identified and described to private lenders before any funds are accepted. 5Star Investment Group V, LLC was organized in the state of Indiana in order to invest in real estate.

The Company is a private Real Estate Investing Company, being founded by Mr. Earl Miller and Mr. Matthew Gingerich to acquire, rehabilitate, lease or resell residential and or commercial real estate. The company was started in 2008 with the goal of providing the opportunity for both private lenders and themselves the opportunity to profit from real estate investing while also offering affordable housing within Indiana and other states. The company is not a realtor; it is a real estate investor. As the company grew, we understood that many of our tenants, while wanting to own their own home, had economic, employment or credit problems, which kept them from qualifying for a traditional mortgage loan. Because we quickly recognized that huge pent-up demand, we expanded our rental business to include creating affordable, single-family housing

1

throughout Indiana. The company also purchases homes, rehabilitates them and then resells them for a profit, as well as purchasing homes via short sale, after which it sells them for a profit without holding them for a long period of time.

Our tenant/buyers understand and appreciate that 5Star Investment Group VII, LLC has demonstrated a strong commitment to parts of the community whose housing needs have been badly underserved and where few realistic options have been available to those seeking and capable of home ownership. 5Star Investment Group VII, LLC not only provides affordable housing but also by the very nature of the business, helps the local economy by providing work for local contractors, realtors, mortgage companies and other related businesses.

## RISKS OF INVESTMENT

The Company uses funds borrowed from private lenders to invest in real estate primarily but not necessarily exclusively in Indiana. We focus on residential properties, although we will consider investing in commercial and other properties in certain circumstances.

As a real-estate investment company, we are subject to risks including, but not limited to:

- Availability of investment capital from private lenders
- Local real estate markets
- Competition from other real-estate investment companies, which may offer competitive interest rates or possibly better terms and/or conditions to private lenders
- Availability of investment-grade properties
- Legal and regulatory issues
- Costs associated with rehabbing and maintaining properties
- The possibility of selling a home for less than it was purchased
- The possibility of selling a home for less profit than anticipated
- The possibility of a home going unsold for an extended period of time
- Unanticipated repair costs
- Changing market conditions
- Interest rate changes
- Potential damage caused by tenants
- The death or disability of either or both of Mr. Earl Miller and Mr. Matthew Gingerich.
- Because some deals are funded with multiple investors, a first lien position cannot be guaranteed.
- Potential lack of demand for a property or types of property

2

## MANAGEMENT

- Mr. Miller and Mr. Gingerich will both be members and managers of the Company.
- Both Mr. Miller and Mr. Gingerich will be compensated by the company out its profits from real estate investments.
- Both Mr. Miller and Mr. Gingerich will own 50% of the units, or equity of the Company.
- The company will not conduct related-party transactions between the company and its owners. This means that the company does not rent office space owned by the owners or otherwise conduct such business with its owners.

## COMPANY OPERATIONS

We will pay 6-10% simple interest to private lenders. Payments are made to our private lenders on an annual basis (monthly, quarterly, or otherwise to be specified) or at the time the property is sold. Invested funds are secured with a mortgage on the properties, and when appropriate, with a state UCC filing to record the security interest in the properties. Hazard insurance is secured on the properties, payable to our private lenders. Mr. Miller and Mr. Gingerich know the local real estate markets and look at numerous properties before purchasing them. They use qualified contractors to rehab purchased properties. Real estate attorneys conduct closings.

## TERMS OF THE OFFERING

The company is offering its investors ("private lenders" or "lenders") the opportunity to invest with the company. The minimum investment is $15,000 and there is no maximum individual investment, nor any minimum or maximum total amount of investments being sought, other than may be imposed by law or regulation. Only accredited investors or sophisticated non-accredited investors, with the guidance of a purchaser representative, resident in the United States, will be offered or sold such investment and any person or business entity not resident in the United States who may attempt to invest or invest in the company may and shall have such investment cancelled and funds returned upon the discovery of same. The investment is a security and will only be offered pursuant to a filing of Form D with the federal Securities and Exchange Commission, and notice filings in states where the Company has investors, and after investors have been offered an opportunity to review a private placement memorandum and ask questions of the Company's management and of their own professional advisors or purchaser representative. Such an offering will be governed by relevant securities laws and regulations, and in compliance with both state and federal laws and regulations. The investment will be in the form of an interest-bearing debt security. The company does not have a minimum amount of securities that must be sold by a certain date for the offering to go forward. The interest rate will be set at 10, simple interest, for a term of 30 months.

## USE OF PROCEEDS

The funds will be used to:

- Invest in residential real estate in and around the state of Indiana.
- Invest in residential real estate in and around other states.
- Invest in other types of real estate within the State of Indiana, or other states, at the Company's discretion.
- No commissions will be paid to any person or business entity for the sale of these securities, unless and except if they are licensed and/or registered broker-dealers within the State of Indiana, and the company does not anticipate doing so in any case, and may only be sold by authorized representatives of the company and in compliance with all relevant securities laws and regulations.

## FINANCIAL INFORMATION

The Company's managers and owners have sold millions of dollars in real estate to people all over the country, since 2007. They currently manage several LLCs that own several million dollars worth of real estate in the state of Indiana, and they have over 120 investors with whom they regularly work. They have also consistently maintained an A+ Rating with the Better Business Bureau.

## LITIGATION

The company may, from time to time, become engaged in certain litigation related to the eviction of tenants unable or unwilling to pay rent or otherwise abide by their rental agreement with the company. There is no past, present, or anticipated litigation that would have a material effect on the business, financial condition, or operations of the Company.

## DISCLAIMERS

THESE DEBT SECURITIES ARE NOT REGISTERED WITH THE SECURITIES EXCHANGE COMMISSION UNDER THE SECURITIES ACT OF 1933 (THE "ACT"). THESE DEBT SECURITIES WILL BE OFFERED AND SOLD IN RELIANCE ON REGULATION D, RULE 506 SECTION OF THE SECURITIES ACT OF 1933, AS AMENDED, AND UNDER THE BLUE-SKY LAWS OF THE STATES WHERE THEY MAY BE SOLD, PURSUANT TO A FILING BY THE COMPANY OF FORM D WITH THE FEDERAL SECURITIES AND EXCHANGE COMMISSION AND ANY STATE REQUIRING A NOTICE FILING RELEVANT THERETO AND ANY OTHER APPLICABLE.

ALL PURCHASES MUST BE MADE FOR INVESTMENT PURPOSES ONLY AND NOT WITH THE VIEW TO OR FOR SALE IN CONNECTION WITH A DISTRIBUTION OF THE SECURITY. ANY RESALE OF A SECURITY SOLD IN

RELIANCE OF THIS EXEMPTION WITHIN 12 MONTHS OF THE SALE SHALL BE PRESUMED TO BE WITH A VIEW TO DISTRIBUTION AND NOT FOR INVESTMENT, EXCEPT A RESALE PURSUANT TO A REGISTRATION OR TO AN ACCREDITED INVESTOR PURSUANT TO AN EXEMPTION.

NO PERSON HAS BEEN AUTHORIZED BY THE COMPANY TO GIVE ANY INFORMATION OR MAKE ANY REPRESENTATIONS OF ANY KIND WHATSOEVER CONCERNING THE COMPANY OR THIS OFFERING OTHER THAN THOSE CONTAINED IN THIS CIRCULAR, AND, IF GIVEN OR MADE, SUCH OTHER INFORMATION OR REPRESENTATIONS MUST NOT BE RELIED UPON AS HAVING BEEN AUTHORIZED BY THE COMPANY. NEITHER THE DELIVERY OF THIS DISCLOSURE DOCUMENT NOR ANY SALES MADE HEREUNDER SHALL, UNDER ANY CIRCUMSTANCES, IMPLY THAT THERE HAS BEEN NO CHANGE IN THE AFFAIRS OF THE COMPANY DESCRIBED HEREIN SINCE THE DATE HEREOF, OR THAT THE INFORMATION CONTAINED HEREIN IS CORRECT AS OF ANY TIME AFTER THE DATE IT WAS FIRST DISTRIBUTED. THIS DOES NOT CONSTITUTE AN OFFER OR SOLICITATION IN ANY STATE TO ANY PERSON TO WHOM SUCH OFFER OR SOLICITATION WOULD BE UNLAWFUL.

FORWARD LOOKING STATEMENTS

THE COMPANY AND ITS REPRESENTATIVES MAY FROM TIME TO TIME MAKE WRITTEN OR ORAL FORWARD-LOOKING STATEMENTS. ONE CAN IDENTIFY THESE FORWARD-LOOKING STATEMENTS BY USE OF WORDS SUCH AS "STRATEGY," "EXPECTS," "PLANS," "ANTICIPATES," "BELIEVES," "WILL," "CONTINUES," "ESTIMATES," "INTENDS," "PROJECTS," "GOALS," "TARGETS" AND OTHER WORDS OF SIMILAR MEANING. ONE CAN ALSO IDENTIFY THEM BY THE FACT THAT THEY DO NOT RELATE STRICTLY TO HISTORICAL OR CURRENT FACTS. THESE STATEMENTS ARE BASED ON OUR ASSUMPTIONS AND ESTIMATES AND ARE SUBJECT TO RISKS AND UNCERTAINTIES. IN CONNECTION WITH THE "SAFE HARBOR" PROVISIONS OF THE PRIVATE SECURITIES LITIGATION REFORM ACT OF 1995, THE COMPANY IS HEREBY IDENTIFYING IMPORTANT FACTORS THAT COULD CAUSE ACTUAL RESULTS AND OUTCOMES TO DIFFER MATERIALLY FROM THOSE CONTAINED IN ANY FORWARD-LOOKING STATEMENT MADE BY OR ON BEHALF OF THE COMPANY; ANY SUCH STATEMENT IS QUALIFIED BY REFERENCE TO THE FOLLOWING CAUTIONARY STATEMENTS.

THE COMPANY'S BUSINESS IS SUBJECT TO COMPETITION, CHANGES IN THE MARKETPLACE, AND THE EFFECTS OF CHANGING HOME PRICES AND/OR INTEREST RATES AND LOCAL ECONOMIC CONDITIONS. OUR RESULTS ARE DEPENDENT UPON OUR CONTINUED ABILITY TO BORROW MONEY FROM PRIVATE LENDERS, LOCATE PROPERTIES WORTH PURCHASING,

5

**A-50**

REHABILITATING AND RESELLING OR LEASING TO TENANTS INTERESTED IN PURCHASING SUCH PROPERTIES, ANTICIPATING AND RESPONDING TO CHANGING MARKET CONDITIONS, AND OTHER IMPORTANT FACTORS INCORPORATED INTO THIS SECTION BY REFERENCE, WHICH COULD CAUSE THE COMPANY'S RESULTS TO DIFFER MATERIALLY FROM RESULTS THAT HAVE BEEN OR MAY BE PROJECTED BY OR ON BEHALF OF THE COMPANY. THE COMPANY CAUTIONS THAT THE FOREGOING LIST OF IMPORTANT FACTORS IS NOT EXCLUSIVE. ANY FORWARD-LOOKING STATEMENTS ARE MADE AS OF THE DATE OF THE DOCUMENT IN WHICH THEY APPEAR. THE COMPANY DOES NOT UNDERTAKE TO UPDATE ANY FORWARD-LOOKING STATEMENT THAT MAY BE MADE FROM TIME TO TIME BY OR ON BEHALF OF THE COMPANY.

THIS OFFER IS SUBMITTED ON A CONFIDENTIAL BASIS FOR USE SOLELY IN CONNECTION WITH YOUR CONSIDERATION OF THIS OFFER. THIS DISCLOSURE DOCUMENT MAY NOT BE REPRODUCED IN WHOLE OR IN PART, AND NO ONE, FOR ANY REASON, SHOULD RELY ON ANY REPRODUCTION OF THIS MEMORANDUM.

THESE SECURITIES HAVE NOT BEEN APPROVED OR DISAPPROVED BY THE SECURITIES AND EXCHANGE COMMISSION OR ANY STATE SECURITIES COMMISSION OR OTHER REGULATORY AUTHORITY, NOR HAS THE COMMISSION OR ANY OTHER AUTHORITY ASSESSED THE ACCURACY OR ADEQUACY OF THIS DISCLOSURE DOCUMENT. ANY REPRESENTATION TO THE CONTRARY IS A CRIMINAL OFFENSE.

THIS DISCLOSURE DOCUMENT DOES NOT CONSTITUTE AN OFFER OR SOLICITATION IN ANY STATE OR OTHER JURISDICTION IN WHICH SUCH OFFER OR SOLICITATION IS NOT AUTHORIZED.

I hereby acknowledge that I have received the Disclosure Documents from 5Star Investment Group VII, LLC.

_____

Name (Printed)                                   Date


_____

Name (Signature)                                 Date


6

**A-51**

# NOTE 2-2

# NOTE 2-2

 COPY

### PROMISSORY NOTE
### TERM NOTE

Middlebury, Indiana
October 18, 2013

$55500.00

FOR VALUE RECEIVED, the undersigned, 5Star Investment Group VII, LLC, ("Borrower"), who address is P.O. Box 706 Middlebury, Indiana 46540, promises to pay to the order of William Adamczyk ("Lender"), whose address is 30019 N. Waukegan Road, Apt. 109, Lake Bluff, IL 60044, the principal sum of Fifty-Five Thousand and Five Hundred US dollars ($55500.00) Interest will accrue under this Note at the rate of Ten Percent (10%) per annum. Borrower promises to pay all attorney's fees, paralegal's fees, and any costs and expenses incurred by Lender in connection with collection under this Note. Borrower agrees that all amounts payable under this Note shall be paid without relief from valuation and appraisement laws. The principal and interest under this Note shall be payable at the address set forth above for Lender as follows:

    a. Borrower shall make Thirty-One (31) consecutive monthly payments of $462.5, which shall be due and payable beginning December 15, 2013, (November payment to be pro-rated from October 18 to November 15th) and shall be payable on the same day of each consecutive month thereafter; and

Then, on June 15, 2016 or the sale of the real estate serving as collateral for this Note under a Mortgage of even date, the balance of all principal and interest due and owing under this Note shall be paid in full. Any request from a lender for his or her funds before the above mentioned date has been reached may or may not be honored at the sole discretion of the Company, and if and when agreed to by the Company, the borrower shall receive back his or her initial investment amount, minus an early-withdrawal penalty equal to two percent (2%) of the initial investment amount. No additional interest will be earned upon the funds invested or due to the borrower after such a request for early withdrawal is made and the loan amount is repaid.

    b. If any payment shall be paid more than thirty (30) days after the due date thereof, a penalty equal to three percent (3%) of the amount due and owing shall be paid with said payment as a penalty for the delinquency.

If Borrower fails to pay interest or other amounts under this Note when due, or if Borrower shall be dissolved, merge or consolidate with any other firm or entity, or Borrower files a petition in bankruptcy, or one is filed against Borrower, or if Borrower defaults under the mortgage, Lender may declare all amounts due under this Note immediately due and payable.

The Lender may unilaterally defer (in writing or without notice to the Borrower) one or more monthly payments or may not require one or more monthly payments to be made when due, with our without notice to the Borrower, but any such deferral shall not be considered a waiver of the Lender's rights to enforce this Promissory Note, in whole or in part.

No failure by Lender to exercise any right under this Note, including any rights resulting from an event of default, shall operate as a waiver or otherwise prevent Lender from exercising any of Lender's rights under this Note at any other time, including the exercise by Lender of any rights at any time during the continuance of such event of default or on the occurrence of a subsequent even of default.

The holder of this Note, in its sole discretion, may renew this Note, accept a renewal Note or Notes, extend the time for the payment of the indebtedness evidenced by this Note, reduce the payments under this Note, or do any combination of such actions on any number of occasions; provided, however, any such action or omission shall not release the Borrower on the obligations evidenced by this Note. Borrower waives presentment for payment, protest, notice of protest, notice of non-payment or dishonor of this Note, and diligence in the collection of this Note; and Borrower consents to any actions by Lender or any holder of this Note as set forth in this paragraph.

Initial_____

# A-52

If this Note is negotiated by Lender, the word "Lender" as used in this Note shall refer to the "holder" unless the context otherwise requires.

Because of our filing that we have to do with the Securities Exchange Commission we are required to have our investors indicate whether they are an "Accredited" or a "Sophisticated" investor. Please initial whichever option applies:

1. _____ I am an accredited investor by nature of my income or net worth.

   *Definition: (Any person whose individual, or joint net worth exceeds $1,000,000 or has an income in excess of $200,000 in each of the two most recent years or joint income with that person's spouse in excess of $300,000 in each of those years and has a reasonable expectation of reaching the same income level in the current year)*

2. _____ I am a sophisticated non-accredited investor, meaning that although I may not be an accredited investor by nature of my income or net worth, I have sufficient investing experience and an understanding of the risks and benefits of investing in general and this offering in particular.

Investor_____ Date October 18, 2013

Borrower: 5 Star Investment Group VII, LLC

Signed:____*Earl Miller*____Printed:___Earl Miller_____ (Manager)

### Personal Guaranty

Matthew Gingerich and Earl Miller each hereby agree to personally guaranty the repayment of the $55500 paid by the Lender pursuant to Section 1 above. This Guaranty shall expire and terminate upon the completion of the rehabilitation and remodeling of the real estate located at: 4134 N Michigan, Portland, OR 97217

Matthew Gingerich ___*Matthew Gingerich*___, Date _10|18|2013___

Earl Miller ___*Earl Miller*___, Date _10|18|2013___

The below stated borrower signs as an additional borrower on this Promissory Note regarding the joint venture entered therein pertaining to the property known as: 4134 N Michigan Ave., Portland, OR 97217. In promise to repay the lender the amount as specified in Section 1 above:

Borrower: Metro Homes Northwest, LLC

Signed: _____  Printed: _Ranosic Palazz_ (Manager)

Borrower: Dilusso Homes, LLC

Signed: _____  Printed: _Vlacl Rochnitslz_ (Manager)

Signed: _____  Printed: _Chris Baird_ (Manager)

DD 2-2



5 Star Investment Group VII, LLC
Disclosure Document

## PROPRIETARY AND CONFIDENTIAL

This Document is for Discussion purposes only and is not intended to be used or considered as an offering of securities. Please see disclaimers at end of document for more information on offering requirements.

This document includes information that is proprietary and confidential and is not to be copied or distributed without the approval of an officer of 5Star Investment Group VII, LLC.

This offer is limited to accredited investors and non-accredited sophisticated investors resident in the United States and has been prepared to comply with the securities laws and regulations of the United States, particularly under Regulation D, Rule 506 of the Securities Act of 1933, as amended.

Because this Disclosure Document focuses primarily on details concerning the company rather than the industry in which the company operates or will operate, potential investors may wish to conduct their own separate investigation of the company's industry in order to obtain broader insight in assessing the company's prospects.

## THE COMPANY

5Star Investment Group VII, LLC ("Company") is a company being organized in the State of Indiana. Its office is located at 304 N. Main Street, Suite A, Middlebury, Indiana 46540, and its telephone number is 574-825-4100.

5Star Investment Group VII, LLC is being created solely for the purpose of attracting private lenders' funds, which in turn will be directed to and or managed 5Star Investment Group , an Indiana limited liability company, and possibly one or more other companies, which will be identified and described to private lenders before any funds are accepted. 5Star Investment Group , LLC was organized in the state of Indiana in order to invest in real estate.

The Company is a private Real Estate Investing Company, being founded by Mr. Earl Miller and Mr. Matthew Gingerich to acquire, rehabilitate, lease or resell residential and or commercial real estate. The company was started in 2008 with the goal of providing the opportunity for both private lenders and themselves the opportunity to profit from real estate investing while also offering affordable housing within Indiana and other states. The company is not a realtor; it is a real estate investor. As the company grew, we understood that many of our tenants, while wanting to own their own home, had economic, employment or credit problems, which kept them from qualifying for a traditional mortgage loan. Because we quickly recognized that huge pent-up demand, we expanded our rental business to include creating affordable, single-family housing

1

throughout Indiana. The company also purchases homes, rehabilitates them and then resells them for a profit, as well as purchasing homes via short sale, after which it sells them for a profit without holding them for a long period of time.

Our tenant/buyers understand and appreciate that 5Star Investment Group VII, LLC has demonstrated a strong commitment to parts of the community whose housing needs have been badly underserved and where few realistic options have been available to those seeking and capable of home ownership. 5Star Investment Group VII, LLC not only provides affordable housing but also by the very nature of the business, helps the local economy by providing work for local contractors, realtors, mortgage companies and other related businesses.

## RISKS OF INVESTMENT

The Company uses funds borrowed from private lenders to invest in real estate primarily but not necessarily exclusively in Indiana. We focus on residential properties, although we will consider investing in commercial and other properties in certain circumstances.

As a real-estate investment company, we are subject to risks including, but not limited to:

- Availability of investment capital from private lenders
- Local real estate markets
- Competition from other real-estate investment companies, which may offer competitive interest rates or possibly better terms and/or conditions to private lenders
- Availability of investment-grade properties
- Legal and regulatory issues
- Costs associated with rehabbing and maintaining properties
- The possibility of selling a home for less than it was purchased
- The possibility of selling a home for less profit than anticipated
- The possibility of a home going unsold for an extended period of time
- Unanticipated repair costs
- Changing market conditions
- Interest rate changes
- Potential damage caused by tenants
- The death or disability of either or both of Mr. Earl Miller and Mr. Matthew Gingerich.
- Because some deals are funded with multiple investors, a first lien position cannot be guaranteed.
- Potential lack of demand for a property or types of property

**A-56**

## MANAGEMENT

- Mr. Miller and Mr. Gingerich will both be members and managers of the Company.
- Both Mr. Miller and Mr. Gingerich will be compensated by the company out its profits from real estate investments.
- Both Mr. Miller and Mr. Gingerich will own 50% of the units, or equity of the Company.
- The company will not conduct related-party transactions between the company and its owners. This means that the company does not rent office space owned by the owners or otherwise conduct such business with its owners.

## COMPANY OPERATIONS

We will pay 6-10% simple interest to private lenders. Payments are made to our private lenders on an annual basis (monthly, quarterly, or otherwise to be specified) or at the time the property is sold. Invested funds are secured with a mortgage on the properties, and when appropriate, with a state UCC filing to record the security interest in the properties. Hazard insurance is secured on the properties, payable to our private lenders. Mr. Miller and Mr. Gingerich know the local real estate markets and look at numerous properties before purchasing them. They use qualified contractors to rehab purchased properties. Real estate attorneys conduct closings.

## TERMS OF THE OFFERING

The company is offering its investors ("private lenders" or "lenders") the opportunity to invest with the company. The minimum investment is $15,000 and there is no maximum individual investment, nor any minimum or maximum total amount of investments being sought, other than may be imposed by law or regulation. Only accredited investors or sophisticated non-accredited investors, with the guidance of a purchaser representative, resident in the United States, will be offered or sold such investment and any person or business entity not resident in the United States who may attempt to invest or invest in the company may and shall have such investment cancelled and funds returned upon the discovery of same. The investment is a security and will only be offered pursuant to a filing of Form D with the federal Securities and Exchange Commission, and notice filings in states where the Company has investors, and after investors have been offered an opportunity to review a private placement memorandum and ask questions of the Company's management and of their own professional advisors or purchaser representative. Such an offering will be governed by relevant securities laws and regulations, and in compliance with both state and federal laws and regulations. The investment will be in the form of an interest-bearing debt security. The company does not have a minimum amount of securities that must be sold by a certain date for the offering to go forward. The interest rate will be set at 10, simple interest, for a term of 31 months.

## USE OF PROCEEDS

The funds will be used to:

- Invest in residential real estate in and around the state of Indiana.
- Invest in residential real estate in and around other states.
- Invest in other types of real estate within the State of Indiana, or other states, at the Company's discretion.
- No commissions will be paid to any person or business entity for the sale of these securities, unless and except if they are licensed and/or registered broker-dealers within the State of Indiana, and the company does not anticipate doing so in any case, and may only be sold by authorized representatives of the company and in compliance with all relevant securities laws and regulations.

## FINANCIAL INFORMATION

The Company's managers and owners have sold millions of dollars in real estate to people all over the country, since 2007. They currently manage several LLCs that own several million dollars worth of real estate in the state of Indiana, and they have over 120 investors with whom they regularly work. They have also consistently maintained an A+ Rating with the Better Business Bureau.

## LITIGATION

The company may, from time to time, become engaged in certain litigation related to the eviction of tenants unable or unwilling to pay rent or otherwise abide by their rental agreement with the company. There is no past, present, or anticipated litigation that would have a material effect on the business, financial condition, or operations of the Company.

## DISCLAIMERS

THESE DEBT SECURITIES ARE NOT REGISTERED WITH THE SECURITIES EXCHANGE COMMISSION UNDER THE SECURITIES ACT OF 1933 (THE "ACT"). THESE DEBT SECURITIES WILL BE OFFERED AND SOLD IN RELIANCE ON REGULATION D, RULE 506 SECTION OF THE SECURITIES ACT OF 1933, AS AMENDED, AND UNDER THE BLUE-SKY LAWS OF THE STATES WHERE THEY MAY BE SOLD, PURSUANT TO A FILING BY THE COMPANY OF FORM D WITH THE FEDERAL SECURITIES AND EXCHANGE COMMISSION AND ANY STATE REQUIRING A NOTICE FILING RELEVANT THERETO AND ANY OTHER APPLICABLE.

ALL PURCHASES MUST BE MADE FOR INVESTMENT PURPOSES ONLY AND NOT WITH THE VIEW TO OR FOR SALE IN CONNECTION WITH A DISTRIBUTION OF THE SECURITY. ANY RESALE OF A SECURITY SOLD IN

RELIANCE OF THIS EXEMPTION WITHIN 12 MONTHS OF THE SALE SHALL BE PRESUMED TO BE WITH A VIEW TO DISTRIBUTION AND NOT FOR INVESTMENT, EXCEPT A RESALE PURSUANT TO A REGISTRATION OR TO AN ACCREDITED INVESTOR PURSUANT TO AN EXEMPTION.

NO PERSON HAS BEEN AUTHORIZED BY THE COMPANY TO GIVE ANY INFORMATION OR MAKE ANY REPRESENTATIONS OF ANY KIND WHATSOEVER CONCERNING THE COMPANY OR THIS OFFERING OTHER THAN THOSE CONTAINED IN THIS CIRCULAR, AND, IF GIVEN OR MADE, SUCH OTHER INFORMATION OR REPRESENTATIONS MUST NOT BE RELIED UPON AS HAVING BEEN AUTHORIZED BY THE COMPANY. NEITHER THE DELIVERY OF THIS DISCLOSURE DOCUMENT NOR ANY SALES MADE HEREUNDER SHALL, UNDER ANY CIRCUMSTANCES, IMPLY THAT THERE HAS BEEN NO CHANGE IN THE AFFAIRS OF THE COMPANY DESCRIBED HEREIN SINCE THE DATE HEREOF, OR THAT THE INFORMATION CONTAINED HEREIN IS CORRECT AS OF ANY TIME AFTER THE DATE IT WAS FIRST DISTRIBUTED. THIS DOES NOT CONSTITUTE AN OFFER OR SOLICITATION IN ANY STATE TO ANY PERSON TO WHOM SUCH OFFER OR SOLICITATION WOULD BE UNLAWFUL.

FORWARD LOOKING STATEMENTS

THE COMPANY AND ITS REPRESENTATIVES MAY FROM TIME TO TIME MAKE WRITTEN OR ORAL FORWARD-LOOKING STATEMENTS. ONE CAN IDENTIFY THESE FORWARD-LOOKING STATEMENTS BY USE OF WORDS SUCH AS "STRATEGY," "EXPECTS," "PLANS," "ANTICIPATES," "BELIEVES," "WILL," "CONTINUES," "ESTIMATES," "INTENDS," "PROJECTS," "GOALS," "TARGETS" AND OTHER WORDS OF SIMILAR MEANING. ONE CAN ALSO IDENTIFY THEM BY THE FACT THAT THEY DO NOT RELATE STRICTLY TO HISTORICAL OR CURRENT FACTS. THESE STATEMENTS ARE BASED ON OUR ASSUMPTIONS AND ESTIMATES AND ARE SUBJECT TO RISKS AND UNCERTAINTIES. IN CONNECTION WITH THE "SAFE HARBOR" PROVISIONS OF THE PRIVATE SECURITIES LITIGATION REFORM ACT OF 1995, THE COMPANY IS HEREBY IDENTIFYING IMPORTANT FACTORS THAT COULD CAUSE ACTUAL RESULTS AND OUTCOMES TO DIFFER MATERIALLY FROM THOSE CONTAINED IN ANY FORWARD-LOOKING STATEMENT MADE BY OR ON BEHALF OF THE COMPANY; ANY SUCH STATEMENT IS QUALIFIED BY REFERENCE TO THE FOLLOWING CAUTIONARY STATEMENTS.

THE COMPANY'S BUSINESS IS SUBJECT TO COMPETITION, CHANGES IN THE MARKETPLACE, AND THE EFFECTS OF CHANGING HOME PRICES AND/OR INTEREST RATES AND LOCAL ECONOMIC CONDITIONS. OUR RESULTS ARE DEPENDENT UPON OUR CONTINUED ABILITY TO BORROW MONEY FROM PRIVATE LENDERS, LOCATE PROPERTIES WORTH PURCHASING,

5

**A-59**

REHABILITATING AND RESELLING OR LEASING TO TENANTS INTERESTED IN PURCHASING SUCH PROPERTIES, ANTICIPATING AND RESPONDING TO CHANGING MARKET CONDITIONS, AND OTHER IMPORTANT FACTORS INCORPORATED INTO THIS SECTION BY REFERENCE, WHICH COULD CAUSE THE COMPANY'S RESULTS TO DIFFER MATERIALLY FROM RESULTS THAT HAVE BEEN OR MAY BE PROJECTED BY OR ON BEHALF OF THE COMPANY. THE COMPANY CAUTIONS THAT THE FOREGOING LIST OF IMPORTANT FACTORS IS NOT EXCLUSIVE. ANY FORWARD-LOOKING STATEMENTS ARE MADE AS OF THE DATE OF THE DOCUMENT IN WHICH THEY APPEAR. THE COMPANY DOES NOT UNDERTAKE TO UPDATE ANY FORWARD-LOOKING STATEMENT THAT MAY BE MADE FROM TIME TO TIME BY OR ON BEHALF OF THE COMPANY.

THIS OFFER IS SUBMITTED ON A CONFIDENTIAL BASIS FOR USE SOLELY IN CONNECTION WITH YOUR CONSIDERATION OF THIS OFFER. THIS DISCLOSURE DOCUMENT MAY NOT BE REPRODUCED IN WHOLE OR IN PART, AND NO ONE, FOR ANY REASON, SHOULD RELY ON ANY REPRODUCTION OF THIS MEMORANDUM.

THESE SECURITIES HAVE NOT BEEN APPROVED OR DISAPPROVED BY THE SECURITIES AND EXCHANGE COMMISSION OR ANY STATE SECURITIES COMMISSION OR OTHER REGULATORY AUTHORITY, NOR HAS THE COMMISSION OR ANY OTHER AUTHORITY ASSESSED THE ACCURACY OR ADEQUACY OF THIS DISCLOSURE DOCUMENT. ANY REPRESENTATION TO THE CONTRARY IS A CRIMINAL OFFENSE.

THIS DISCLOSURE DOCUMENT DOES NOT CONSTITUTE AN OFFER OR SOLICITATION IN ANY STATE OR OTHER JURISDICTION IN WHICH SUCH OFFER OR SOLICITATION IS NOT AUTHORIZED.

I hereby acknowledge that I have received the Disclosure Documents from 5Star Investment Group VII, LLC.

_____

Name  (Printed)                                 Date


_____

Name (Signature)                                Date


6

**A-60**

# NOTE 3-1

# NOTE 3-1

*Sheriff Sale*

COPY

**PROMISSORY NOTE**
**TERM NOTE**

Middlebury, Indiana
July 19th, 2013

$20000.00

     FOR VALUE RECEIVED, the undersigned, 5Star Investment Group VII , LLC, ("Borrower"), who address is P.O. Box 706 Middlebury, Indiana 46540, promises to pay to the order of William Adamczyk ("Lender"), whose address is 30019 N. Waukegan Rd. - Apt. 109, Lake Bluff, IL 60044, the principal sum of Twenty-Thousand US dollars ($20000.00) Interest will accrue under this Note at the rate of Ten Percent (10%) per annum. Borrower promises to pay all attorney's fees, paralegal's fees, and any costs and expenses incurred by Lender in connection with collection under this Note. Borrower agrees that all amounts payable under this Note shall be paid without relief from valuation and appraisement laws. The principal and interest under this Note shall be payable at the address set forth above for Lender as follows:

    a.   Borrower shall make Thirty (30) consecutive monthly payments of $166.67, which shall be due and payable beginning September 15, 2013, (August payment to be pro-rated from July 19th to August 15th) and shall be payable on the same day of each consecutive month thereafter; and

Then, on Thirty months from September 15, 2013 or the sale of the real estate serving as collateral for this Note under a Mortgage of even date, the balance of all principal and interest due and owing under this Note shall be paid in full. Any request from a borrower for his or her funds before the above mentioned date has been reached may or may not be honored at the sole discretion of the Company, and if and when agreed to by the Company, the borrower shall receive back his or her initial investment amount, minus an early-withdrawal penalty equal to two percent (2%) of the initial investment amount. No additional interest will be earned upon the funds invested or due to the borrower after such a request for early withdrawal is made and the loan amount is repaid.

    b.   If any payment shall be paid more than thirty (30) days after the due date thereof, a penalty equal to three percent (3%) of the amount due and owing shall be paid with said payment as a penalty for the delinquency.

    If Borrower fails to pay interest or other amounts under this Note when due, or if Borrower shall be dissolved, merge or consolidate with any other firm or entity, or Borrower files a petition in bankruptcy, or one is filed against Borrower, or if Borrower defaults under the mortgage, Lender may declare all amounts due under this Note immediately due and payable.

    The Lender may unilaterally defer (in writing or without notice to the Borrower) one or more monthly payments or may not require one or more monthly payments to be made when due, with our without notice to the Borrower, but any such deferral shall not be considered a waiver of the Lender's rights to enforce this Promissory Note, in whole or in part.

    No failure by Lender to exercise any right under this Note, including any rights resulting from an event of default, shall operate as a waiver or otherwise prevent Lender from exercising any of Lender's rights under this Note at any other time, including the exercise by Lender of any rights at any time during the continuance of such event of default or on the occurrence of a subsequent even of default.

Initial _____

**A-61**

# NOTE 3-1

The holder of this Note, in its sole discretion, may renew this Note, accept a renewal Note or Notes, extend the time for the payment of the indebtedness evidenced by this Note, reduce the payments under this Note, or do any combination of such actions on any number of occasions; provided, however, any such action or omission shall not release the Borrower on the obligations evidenced by this Note. Borrower waives presentment for payment, protest, notice of protest, notice of non-payment or dishonor of this Note, and diligence in the collection of this Note; and Borrower consents to any actions by Lender or any holder of this Note as set forth in this paragraph.

If this Note is negotiated by Lender, the word "Lender" as used in this Note shall refer to the "holder" unless the context otherwise requires.

**Because of our filing that we have to do with the Securities Exchange Commission we are required to have our investors indicate whether they are an "Accredited" or a "Sophisticated" investor. Please initial which ever option applies:**

1. _____ I am an accredited investor by nature of my income or net worth.
   *Definition: (Any person whose individual, or joint net worth exceeds $1,000,000 or has an income in excess of $200,000 in each of the two most recent years or joint income with that person's spouse in excess of $300,000 in each of those years and has a reasonable expectation of reaching the same income level in the current year)*

2. _____ I am a sophisticated non-accredited investor, meaning that although I may not be an accredited investor by nature of my income or net worth, I have sufficient investing experience and an understanding of the risks and benefits of investing in general and this offering in particular.

Investor_____  Date  July 19th, 2013

Borrower: 5 Star Investment Group VII, LLC
Signed: _Earl Miller_  Printed: _Earl Miller_  (Manager)

A-62

## REAL ESTATE MORTGAGE

This indenture witnesseth, that for $1.00 and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, 5 Star Investment Group V, LLC (the "Mortgagor") whose address is 304 N. Main Street Suite A Middlebury, Indiana 46540, Elkhart County, State of Indiana mortgages and warrants to William Adamczyk located at: 30019 N. Waukegan Rd. - Apt. 109, Lake Bluff, IL 60044 (the "Mortgagee") of Lake County, IL, the following described real estate in  County, Indiana:

See Exhibit "A"

(hereinafter referred to as the "Mortgaged Premises") together with all rights, privileges, interests, easements, hereditaments, appurtenances, fixtures and improvements now or hereafter belonging, appertaining, attached to, or used in connection with, the Mortgaged Premises, and all the rents, issues, income and profits thereof.

This Mortgage is given to secure the performance of the provisions hereof and the payment of a certain Promissory Note dated the 19th day of July, 2013, as it is amended, replaced and/or extended from time to time in the principal amount of Twenty-Thousand U.S. Dollars ($20000.00),with interest as set forth in the Note. The Mortgagor and Mortgagee may replace, amend, extend, renew or substitute said Note, which shall in each and every case be secured by this Mortgage and shall be considered the "Note" for all purposes of this Agreement.

Said principal and interest are payable as follows:

**As set forth in the Note.**
Mortgagee may unilaterally defer (in writing, or orally, or without notice to the Mortgagor) one or more payments to be made when due with or without notice to the Mortgagor, but any such deferral shall not be considered a waiver of Mortgagee's rights to enforce this Mortgage, in whole or in part, and shall not be a legal basis from which Mortgagor shall be entitled to argue that the statute of limitation has run or begun to expire with respect to any payment on this Mortgage.

This Mortgage is to secure any and all indebtedness owing to Mortgagee up to a maximum principal amount of Twenty-Thousand US Dollars ($20000.00), together with costs, expenses and reasonable attorney's fees, plus all interest which accrues after the date hereof.

# NOTE 3-1

The Mortgagor jointly and severally covenants and agrees with the Mortgagee that:

1. **Payment of Indebtedness.** The Mortgagor shall pay when due all indebtedness secured by this mortgage, and perform all obligations under this Mortgage, on the dates and in the amounts, respectively, as provided in the Note or in this Mortgage, without relief from valuation and appraisement laws, and with attorneys' and paralegals' fees.

2. **Liens.** The Mortgagor, by its duly authorized representative, and by the duly authorized representative individually, hereby jointly represent and warrant that all mortgages or liens in the Mortgaged Premises will be paid according to their terms.

3. **Repair of Mortgaged Premises; Insurance.** The Mortgagor shall keep the Mortgaged Premises in good repair and shall not commit waste thereon. The Mortgagor shall procure and maintain in effect at all times adequate insurance in insurance companies acceptable to the Mortgagee against loss, damage to, or destruction of the Mortgaged Premises because of fire, windstorm or other such hazards in such amounts as the Mortgagee may reasonably require from time to time, and all such insurance policies shall contain proper clauses making all proceeds of such policies payable to the Mortgagee and the Mortgagor as their respective interests may appear. Each such policy shall provide that it may not be cancelled and/or amended without ten (10) days prior written notice to Mortgagee. All such policies of insurance shall be delivered to and retained by the Mortgagor until the indebtedness secured hereby is fully paid.

4. **Taxes and Assessments.** The Mortgagor shall pay all taxes or assessments levied or assessed against the Mortgaged Premises, or any part thereof, as and when the same become due and before penalties accrue.

5. **Advancements to Protect Security.** The Mortgagee may, at Mortgagee's option, advance and pay all sums necessary to protect and preserve the security intended to be given by this mortgage. All sums advanced and paid by the Mortgagee shall become a part of the indebtedness secured hereby and shall bear interest from the date or dates of payment at the rates set forth above for the indebtedness. Such sums may include, but are not limited to, insurance premiums, taxes, assessments and liens which may be or become prior and senior to this mortgage as a lien on the Mortgaged Premises, or any part thereof, and all costs, expenses and attorney's fees incurred by the Mortgagee in respect of any and all legal or equitable proceedings which relate to this mortgage or to the Mortgaged Premises.

6. **Default by Mortgagor; Remedies of Mortgagee.** Upon default by the Mortgagor which remains uncured for a period of ten (10) days after written notice by Mortgagee to any Mortgagor to cure said default, in any payment provided for herein or in the Note, or in the performance of any covenant or agreement of the Mortgagor hereunder, or if the Mortgagor shall abandon the Mortgaged Premises, or die (if an individual), or if Mortgagor dissolves or merges or consolidates with another firm, company, or entity, or if a trustee or receiver shall be appointed for Mortgagor, in any bankruptcy action, and the same is not

dismissed within thirty (30) days thereafter, then and in any such event, the entire indebtedness secured hereby, at the election of Mortgagee, shall become immediately due and payable at the option of the Mortgagee, without additional notice, and this mortgage may be foreclosed accordingly, and Mortgagee shall be entitled to any and all remedies available at law and in equity, and the right to recover reasonable attorneys' and paralegals' fees, costs, and expenses. Upon such foreclosure the Mortgagee may obtain appropriate title evidence, and may add the cost thereof to the principal balance due.

7. **Non-Waiver; Remedies Cumulative.** No delay by the Mortgagee in the exercise of any of Mortgagee's rights hereunder shall preclude the exercise thereof so long as the Mortgagor is in default hereunder, and no failure of the Mortgagee to exercise any of Mortgagee's rights hereunder shall preclude the exercise thereof in the event of a subsequent default by the Mortgagor hereunder. The Mortgagee may enforce any one or more of Mortgagee's rights or remedies hereunder successively or concurrently.

8. **Extensions; Reductions; Renewals; Continued Liability of Mortgagor.** The Mortgagee at Mortgagee's option, may extend the time for the payment of the indebtedness, or reduce the payments thereon, or accept a renewal Note or Notes therefore, without consent of any junior lien holder, and without the consent of the Mortgagor if the Mortgagor has then parted with title to the Mortgaged Premises. No such extension, reduction or renewal shall affect the priority of this mortgage or impair the security hereof in any manner whatsoever, or release, discharge or affect in any manner the personal liability of the Mortgagor to the Mortgagee.

9. **General Agreement of Parties.** All rights and obligations hereunder shall extend to and be binding upon the several heirs, representatives, successors and assigns of the parties to this mortgage. When applicable, use of the singular form of any word also shall mean or apply to the plural and masculine form shall mean and apply to the feminine or the neuter. The titles of the several paragraphs of this mortgage are for convenience only and do not define, limit or construe the contents of such paragraphs.

IN WITNESS WHEREOF, the Mortgagor has executed this mortgage this 19th day of July, 2013.

**Mortgagor:** 5 Star Investment Group V, LLC (legal name)

Signed: *Earl Miller*

Printed: Earl Miller

**NOTE 3-1**

STATE OF INDIANA        )
                        ) SS:
COUNTY OF ELKHART       )

Before me, a Notary public in and for said County and State, personally appeared _Earl Miller_ the _Manager_ of 5 Star Investment Group V, LLC, who acknowledged the execution of the foregoing mortgage.

Witness my hand and Notarial Seal this _15th_ day of _June_, 2013.

_Jeffrey Clemmer_, Notary Public
Residing in Elkhart County, Indiana

My Commission Expires:
_9/02/2018_

This Instrument Prepared By: Earl Miller,
P.O. Box 706, Middlebury, Indiana 46540.

I affirm, under the penalties for perjury, that I have taken reasonable care to redact each Social Security number in this document, unless required by law.
Earl Miller

A-66

# NOTE 3-1


## EXHIBIT "A"


Also known as: Sheriff Sale

DD 3-1

 COPY

5 Star Investment Group VII, LLC
Disclosure Document

### PROPRIETARY AND CONFIDENTIAL

This Document is for Discussion purposes only and is not intended to be used or considered as an offering of securities. Please see disclaimers at end of document for more information on offering requirements.

This document includes information that is proprietary and confidential and is not to be copied or distributed without the approval of an officer of 5Star Investment Group VII, LLC.

This offer is limited to accredited investors and non-accredited sophisticated investors resident in the United States and has been prepared to comply with the securities laws and regulations of the United States, particularly under Regulation D, Rule 506 of the Securities Act of 1933, as amended.

Because this Disclosure Document focuses primarily on details concerning the company rather than the industry in which the company operates or will operate, potential investors may wish to conduct their own separate investigation of the company's industry in order to obtain broader insight in assessing the company's prospects.

### THE COMPANY

5Star Investment Group VII, LLC ("Company") is a company being organized in the State of Indiana. Its office is located at 304 N. Main Street, Suite A, Middlebury, Indiana 46540, and its telephone number is 574-825-4100.

5Star Investment Group VII, LLC is being created solely for the purpose of attracting private lenders' funds, which in turn will be directed to and or managed 5Star Investment Group V, an Indiana limited liability company, and possibly one or more other companies, which will be identified and described to private lenders before any funds are accepted. 5Star Investment Group V, LLC was organized in the state of Indiana in order to invest in real estate.

The Company is a private Real Estate Investing Company, being founded by Mr. Earl Miller and Mr. Matthew Gingerich to acquire, rehabilitate, lease or resell residential and or commercial real estate. The company was started in 2008 with the goal of providing the opportunity for both private lenders and themselves the opportunity to profit from real estate investing while also offering affordable housing within Indiana and other states. The company is not a realtor; it is a real estate investor. As the company grew, we understood that many of our tenants, while wanting to own their own home, had economic, employment or credit problems, which kept them from qualifying for a traditional mortgage loan. Because we quickly recognized that huge pent-up demand, we expanded our rental business to include creating affordable, single-family housing throughout Indiana. The company also purchases homes, rehabilitates them and then

resells them for a profit, as well as purchasing homes via short sale, after which it sells them for a profit without holding them for a long period of time.

Our tenant/buyers understand and appreciate that 5Star Investment Group VII, LLC has demonstrated a strong commitment to parts of the community whose housing needs have been badly underserved and where few realistic options have been available to those seeking and capable of home ownership. 5Star Investment Group VII, LLC not only provides affordable housing but also by the very nature of the business, helps the local economy by providing work for local contractors, realtors, mortgage companies and other related businesses.

## RISKS OF INVESTMENT

The Company uses funds borrowed from private lenders to invest in real estate primarily but not necessarily exclusively in Indiana. We focus on residential properties, although we will consider investing in commercial and other properties in certain circumstances.

As a real-estate investment company, we are subject to risks including, but not limited to:

- Availability of investment capital from private lenders
- Local real estate markets
- Competition from other real-estate investment companies, which may offer competitive interest rates or possibly better terms and/or conditions to private lenders
- Availability of investment-grade properties
- Legal and regulatory issues
- Costs associated with rehabbing and maintaining properties
- The possibility of selling a home for less than it was purchased
- The possibility of selling a home for less profit than anticipated
- The possibility of a home going unsold for an extended period of time
- Unanticipated repair costs
- Changing market conditions
- Interest rate changes
- Potential damage caused by tenants
- The death or disability of either or both of Mr. Earl Miller and Mr. Matthew Gingerich.
- Because some deals are funded with multiple investors, a first lien position cannot be guaranteed.
- Potential lack of demand for a property or types of property

## MANAGEMENT

- Mr. Miller and Mr. Gingerich will both be members and managers of the Company.
- Both Mr. Miller and Mr. Gingerich will be compensated by the company out its profits from real estate investments.
- Both Mr. Miller and Mr. Gingerich will own 50% of the units, or equity of the Company.
- The company will not conduct related-party transactions between the company and its owners. This means that the company does not rent office space owned by the owners or otherwise conduct such business with its owners.

## COMPANY OPERATIONS

We will pay 6-10% simple interest to private lenders. Payments are made to our private lenders on an annual basis (monthly, quarterly, or otherwise to be specified) or at the time the property is sold. Invested funds are secured with a mortgage on the properties, and when appropriate, with a state UCC filing to record the security interest in the properties. Hazard insurance is secured on the properties, payable to our private lenders. Mr. Miller and Mr. Gingerich know the local real estate markets and look at numerous properties before purchasing them. They use qualified contractors to rehab purchased properties. Real estate attorneys conduct closings.

## TERMS OF THE OFFERING

The company is offering its investors ("private lenders" or "lenders") the opportunity to invest with the company. The minimum investment is $15,000 and there is no maximum individual investment, nor any minimum or maximum total amount of investments being sought, other than may be imposed by law or regulation. Only accredited investors or sophisticated non-accredited investors, with the guidance of a purchaser representative, resident in the United States, will be offered or sold such investment and any person or business entity not resident in the United States who may attempt to invest or invest in the company may and shall have such investment cancelled and funds returned upon the discovery of same. The investment is a security and will only be offered pursuant to a filing of Form D with the federal Securities and Exchange Commission, and notice filings in states where the Company has investors, and after investors have been offered an opportunity to review a private placement memorandum and ask questions of the Company's management and of their own professional advisors or purchaser representative. Such an offering will be governed by relevant securities laws and regulations, and in compliance with both state and federal laws and regulations. The investment will be in the form of an interest-bearing debt security. The company does not have a minimum amount of securities that must be sold by a certain date for the offering to go forward. The interest rate will be set at 10, simple interest, for a term of 30 months.

# DD 3-1

## USE OF PROCEEDS

The funds will be used to:

- Invest in residential real estate in and around the state of Indiana.
- Invest in residential real estate in and around other states.
- Invest in other types of real estate within the State of Indiana, or other states, at the Company's discretion.
- No commissions will be paid to any person or business entity for the sale of these securities, unless and except if they are licensed and/or registered broker-dealers within the State of Indiana, and the company does not anticipate doing so in any case, and may only be sold by authorized representatives of the company and in compliance with all relevant securities laws and regulations.

## FINANCIAL INFORMATION

The Company's managers and owners have sold millions of dollars in real estate to people all over the country, since 2007. They currently manage several LLCs that own several million dollars worth of real estate in the state of Indiana, and they have over 120 investors with whom they regularly work. They have also consistently maintained an A+ Rating with the Better Business Bureau.

## LITIGATION

The company may, from time to time, become engaged in certain litigation related to the eviction of tenants unable or unwilling to pay rent or otherwise abide by their rental agreement with the company. There is no past, present, or anticipated litigation that would have a material effect on the business, financial condition, or operations of the Company.

## DISCLAIMERS

THESE DEBT SECURITIES ARE NOT REGISTERED WITH THE SECURITIES EXCHANGE COMMISSION UNDER THE SECURITIES ACT OF 1933 (THE "ACT"). THESE DEBT SECURITIES WILL BE OFFERED AND SOLD IN RELIANCE ON REGULATION D, RULE 506 SECTION OF THE SECURITIES ACT OF 1933, AS AMENDED, AND UNDER THE BLUE-SKY LAWS OF THE STATES WHERE THEY MAY BE SOLD, PURSUANT TO A FILING BY THE COMPANY OF FORM D WITH THE FEDERAL SECURITIES AND EXCHANGE COMMISSION AND ANY STATE REQUIRING A NOTICE FILING RELEVANT THERETO AND ANY OTHER APPLICABLE.

ALL PURCHASES MUST BE MADE FOR INVESTMENT PURPOSES ONLY AND NOT WITH THE VIEW TO OR FOR SALE IN CONNECTION WITH A DISTRIBUTION OF THE SECURITY. ANY RESALE OF A SECURITY SOLD IN RELIANCE OF THIS EXEMPTION WITHIN 12 MONTHS OF THE SALE SHALL BE PRESUMED TO BE WITH A VIEW TO

DISTRIBUTION AND NOT FOR INVESTMENT, EXCEPT A RESALE PURSUANT TO A REGISTRATION OR TO AN ACCREDITED INVESTOR PURSUANT TO AN EXEMPTION.

NO PERSON HAS BEEN AUTHORIZED BY THE COMPANY TO GIVE ANY INFORMATION OR MAKE ANY REPRESENTATIONS OF ANY KIND WHATSOEVER CONCERNING THE COMPANY OR THIS OFFERING OTHER THAN THOSE CONTAINED IN THIS CIRCULAR, AND, IF GIVEN OR MADE, SUCH OTHER INFORMATION OR REPRESENTATIONS MUST NOT BE RELIED UPON AS HAVING BEEN AUTHORIZED BY THE COMPANY. NEITHER THE DELIVERY OF THIS DISCLOSURE DOCUMENT NOR ANY SALES MADE HEREUNDER SHALL, UNDER ANY CIRCUMSTANCES, IMPLY THAT THERE HAS BEEN NO CHANGE IN THE AFFAIRS OF THE COMPANY DESCRIBED HEREIN SINCE THE DATE HEREOF, OR THAT THE INFORMATION CONTAINED HEREIN IS CORRECT AS OF ANY TIME AFTER THE DATE IT WAS FIRST DISTRIBUTED. THIS DOES NOT CONSTITUTE AN OFFER OR SOLICITATION IN ANY STATE TO ANY PERSON TO WHOM SUCH OFFER OR SOLICITATION WOULD BE UNLAWFUL.

FORWARD LOOKING STATEMENTS

THE COMPANY AND ITS REPRESENTATIVES MAY FROM TIME TO TIME MAKE WRITTEN OR ORAL FORWARD-LOOKING STATEMENTS. ONE CAN IDENTIFY THESE FORWARD-LOOKING STATEMENTS BY USE OF WORDS SUCH AS "STRATEGY," "EXPECTS," "PLANS," "ANTICIPATES," "BELIEVES," "WILL," "CONTINUES," "ESTIMATES," "INTENDS," "PROJECTS," "GOALS," "TARGETS" AND OTHER WORDS OF SIMILAR MEANING. ONE CAN ALSO IDENTIFY THEM BY THE FACT THAT THEY DO NOT RELATE STRICTLY TO HISTORICAL OR CURRENT FACTS. THESE STATEMENTS ARE BASED ON OUR ASSUMPTIONS AND ESTIMATES AND ARE SUBJECT TO RISKS AND UNCERTAINTIES. IN CONNECTION WITH THE "SAFE HARBOR" PROVISIONS OF THE PRIVATE SECURITIES LITIGATION REFORM ACT OF 1995, THE COMPANY IS HEREBY IDENTIFYING IMPORTANT FACTORS THAT COULD CAUSE ACTUAL RESULTS AND OUTCOMES TO DIFFER MATERIALLY FROM THOSE CONTAINED IN ANY FORWARD-LOOKING STATEMENT MADE BY OR ON BEHALF OF THE COMPANY; ANY SUCH STATEMENT IS QUALIFIED BY REFERENCE TO THE FOLLOWING CAUTIONARY STATEMENTS.

THE COMPANY'S BUSINESS IS SUBJECT TO COMPETITION, CHANGES IN THE MARKETPLACE, AND THE EFFECTS OF CHANGING HOME PRICES AND/OR INTEREST RATES AND LOCAL ECONOMIC CONDITIONS. OUR RESULTS ARE DEPENDENT UPON OUR CONTINUED ABILITY TO BORROW MONEY FROM PRIVATE LENDERS, LOCATE PROPERTIES WORTH PURCHASING, REHABILITATING AND RESELLING OR LEASING TO TENANTS INTERESTED IN PURCHASING SUCH PROPERTIES, ANTICIPATING AND RESPONDING TO CHANGING MARKET CONDITIONS, AND OTHER IMPORTANT FACTORS INCORPORATED INTO THIS SECTION BY REFERENCE, WHICH COULD CAUSE THE COMPANY'S RESULTS TO DIFFER MATERIALLY FROM RESULTS THAT HAVE BEEN OR MAY BE PROJECTED

BY OR ON BEHALF OF THE COMPANY. THE COMPANY CAUTIONS THAT THE FOREGOING LIST OF IMPORTANT FACTORS IS NOT EXCLUSIVE. ANY FORWARD-LOOKING STATEMENTS ARE MADE AS OF THE DATE OF THE DOCUMENT IN WHICH THEY APPEAR. THE COMPANY DOES NOT UNDERTAKE TO UPDATE ANY FORWARD-LOOKING STATEMENT THAT MAY BE MADE FROM TIME TO TIME BY OR ON BEHALF OF THE COMPANY.

THIS OFFER IS SUBMITTED ON A CONFIDENTIAL BASIS FOR USE SOLELY IN CONNECTION WITH YOUR CONSIDERATION OF THIS OFFER. THIS DISCLOSURE DOCUMENT MAY NOT BE REPRODUCED IN WHOLE OR IN PART, AND NO ONE, FOR ANY REASON, SHOULD RELY ON ANY REPRODUCTION OF THIS MEMORANDUM.

THESE SECURITIES HAVE NOT BEEN APPROVED OR DISAPPROVED BY THE SECURITIES AND EXCHANGE COMMISSION OR ANY STATE SECURITIES COMMISSION OR OTHER REGULATORY AUTHORITY, NOR HAS THE COMMISSION OR ANY OTHER AUTHORITY ASSESSED THE ACCURACY OR ADEQUACY OF THIS DISCLOSURE DOCUMENT. ANY REPRESENTATION TO THE CONTRARY IS A CRIMINAL OFFENSE.

THIS DISCLOSURE DOCUMENT DOES NOT CONSTITUTE AN OFFER OR SOLICITATION IN ANY STATE OR OTHER JURISDICTION IN WHICH SUCH OFFER OR SOLICITATION IS NOT AUTHORIZED.

I hereby acknowledge that I have received the Disclosure Documents from 5Star Investment Group VII, LLC.

_____

Name  (Printed)                                    Date


_____

Name (Signature)                                   Date

A-73

# NOTE 3-2

Harold

 COPY

### PROMISSORY NOTE
### TERM NOTE

Middlebury, Indiana
September 13, 2013

$20000.00

FOR VALUE RECEIVED, the undersigned, 5Star Investment Group VII, LLC, ("Borrower"), who address is P.O. Box 706 Middlebury, Indiana 46540, promises to pay to the order of Adamczyk William ("Lender"), whose address is 30019 N Waukegan Rd., Apt. 109, Lake Bluff, IL 60044, the principal sum of Twenty-Thousand US dollars ($20000.00) Interest will accrue under this Note at the rate of Ten Percent (10%) per annum. Borrower promises to pay all attorney's fees, paralegal's fees, and any costs and expenses incurred by Lender in connection with collection under this Note. Borrower agrees that all amounts payable under this Note shall be paid without relief from valuation and appraisement laws. The principal and interest under this Note shall be payable at the address set forth above for Lender as follows:

    a.  Borrower shall make Twenty-Four (24) consecutive monthly payments of $166.67, which shall be due and payable beginning October 15, 2013, (September payment to be pro-rated from September 13 to September 15th) and shall be payable on the same day of each consecutive month thereafter; and

Then, on October 15, 2015 or the sale of the real estate serving as collateral for this Note under a Mortgage of even date, the balance of all principal and interest due and owing under this Note shall be paid in full. Any request from a borrower for his or her funds before the above mentioned date has been reached may or may not be honored at the sole discretion of the Company, and if and when agreed to by the Company, the borrower shall receive back his or her initial investment amount, minus an early-withdrawal penalty equal to two percent (2%) of the initial investment amount. No additional interest will be earned upon the funds invested or due to the borrower after such a request for early withdrawal is made and the loan amount is repaid.

    b.  If any payment shall be paid more than thirty (30) days after the due date thereof, a penalty equal to three percent (3%) of the amount due and owing shall be paid with said payment as a penalty for the delinquency.

If Borrower fails to pay interest or other amounts under this Note when due, or if Borrower shall be dissolved, merge or consolidate with any other firm or entity, or Borrower files a petition in bankruptcy, or one is filed against Borrower, or if Borrower defaults under the mortgage, Lender may declare all amounts due under this Note immediately due and payable.

The Lender may unilaterally defer (in writing or without notice to the Borrower) one or more monthly payments or may not require one or more monthly payments to be made when due, with our without notice to the Borrower, but any such deferral shall not be considered a waiver of the Lender's rights to enforce this Promissory Note, in whole or in part.

No failure by Lender to exercise any right under this Note, including any rights resulting from an event of default, shall operate as a waiver or otherwise prevent Lender from exercising any of Lender's rights under this Note at any other time, including the exercise by Lender of any rights at any time during the continuance of such event of default or on the occurrence of a subsequent even of default.

The holder of this Note, in its sole discretion, may renew this Note, accept a renewal Note or Notes, extend the time for the payment of the indebtedness evidenced by this Note, reduce the payments under this Note, or do any combination of such actions on any number of occasions; provided, however, any such action or omission shall not release the Borrower on the obligations evidenced by this Note. Borrower waives presentment for payment, protest, notice of protest, notice of non-payment or dishonor of this Note, and diligence in the collection of this Note; and Borrower consents to any actions by Lender or any holder of this Note as set forth in this paragraph.

Initial_____

If this Note is negotiated by Lender, the word "Lender" as used in this Note shall refer to the "holder" unless the context otherwise requires.

Because of our filing that we have to do with the Securities Exchange Commission we are required to have our investors indicate whether they are an "Accredited" or a "Sophisticated" investor. Please initial whichever option applies:

1. _____ I am an accredited investor by nature of my income or net worth.

   *Definition: (Any person whose individual, or joint net worth exceeds $1,000,000 or has an income in excess of $200,000 in each of the two most recent years or joint income with that person's spouse in excess of $300,000 in each of those years and has a reasonable expectation of reaching the same income level in the current year)*

2. _____ I am a sophisticated non-accredited investor, meaning that although I may not be an accredited investor by nature of my income or net worth, I have sufficient investing experience and an understanding of the risks and benefits of investing in general and this offering in particular.

Investor_____ Date September 13, 2013

Borrower: 5 Star Investment Group VII, LLC

Signed:_____ Printed:_____(Manager)

Borrower: Metro Homes Northwest, LLC

Signed:_____ Printed:_____(Manager)

Borrower: West Coast Development Group, INC

Signed:_____ Printed:_____(Manager)

## Personal Guaranty

Matthew Gingerich and Earl Miller each hereby agree to personally guaranty the repayment of the $20000 paid by the Lender pursuant to Section 1 above. This Guaranty shall expire and terminate upon the completion of the rehabilitation and remodeling of the real estate located at: 2025 SE Harold, Portland OR 97202

Matthew Gingerich _____, Date_____

Earl Miller _____, Date_____

DD 3-2

5 Star Investment Group VII, LLC
Disclosure Document

## PROPRIETARY AND CONFIDENTIAL

This Document is for Discussion purposes only and is not intended to be used or considered as an offering of securities. Please see disclaimers at end of document for more information on offering requirements.

This document includes information that is proprietary and confidential and is not to be copied or distributed without the approval of an officer of 5Star Investment Group VII, LLC.

This offer is limited to accredited investors and non-accredited sophisticated investors resident in the United States and has been prepared to comply with the securities laws and regulations of the United States, particularly under Regulation D, Rule 506 of the Securities Act of 1933, as amended.

Because this Disclosure Document focuses primarily on details concerning the company rather than the industry in which the company operates or will operate, potential investors may wish to conduct their own separate investigation of the company's industry in order to obtain broader insight in assessing the company's prospects.

## THE COMPANY

5Star Investment Group VII, LLC ("Company") is a company being organized in the State of Indiana. Its office is located at 304 N. Main Street, Suite A, Middlebury, Indiana 46540, and its telephone number is 574-825-4100.

5Star Investment Group VII, LLC is being created solely for the purpose of attracting private lenders' funds, which in turn will be directed to and or managed 5Star Investment Group , an Indiana limited liability company, and possibly one or more other companies, which will be identified and described to private lenders before any funds are accepted. 5Star Investment Group , LLC was organized in the state of Indiana in order to invest in real estate.

The Company is a private Real Estate Investing Company, being founded by Mr. Earl Miller and Mr. Matthew Gingerich to acquire, rehabilitate, lease or resell residential and or commercial real estate. The company was started in 2008 with the goal of providing the opportunity for both private lenders and themselves the opportunity to profit from real estate investing while also offering affordable housing within Indiana and other states. The company is not a realtor; it is a real estate investor. As the company grew, we understood that many of our tenants, while wanting to own their own home, had economic, employment or credit problems, which kept them from qualifying for a traditional mortgage loan. Because we quickly recognized that huge pent-up demand, we expanded our rental business to include creating affordable, single-family housing

1

throughout Indiana. The company also purchases homes, rehabilitates them and then resells them for a profit, as well as purchasing homes via short sale, after which it sells them for a profit without holding them for a long period of time.

Our tenant/buyers understand and appreciate that 5Star Investment Group VII, LLC has demonstrated a strong commitment to parts of the community whose housing needs have been badly underserved and where few realistic options have been available to those seeking and capable of home ownership. 5Star Investment Group VII, LLC not only provides affordable housing but also by the very nature of the business, helps the local economy by providing work for local contractors, realtors, mortgage companies and other related businesses.

## RISKS OF INVESTMENT

The Company uses funds borrowed from private lenders to invest in real estate primarily but not necessarily exclusively in Indiana. We focus on residential properties, although we will consider investing in commercial and other properties in certain circumstances.

As a real-estate investment company, we are subject to risks including, but not limited to:

- Availability of investment capital from private lenders
- Local real estate markets
- Competition from other real-estate investment companies, which may offer competitive interest rates or possibly better terms and/or conditions to private lenders
- Availability of investment-grade properties
- Legal and regulatory issues
- Costs associated with rehabbing and maintaining properties
- The possibility of selling a home for less than it was purchased
- The possibility of selling a home for less profit than anticipated
- The possibility of a home going unsold for an extended period of time
- Unanticipated repair costs
- Changing market conditions
- Interest rate changes
- Potential damage caused by tenants
- The death or disability of either or both of Mr. Earl Miller and Mr. Matthew Gingerich.
- Because some deals are funded with multiple investors, a first lien position cannot be guaranteed.
- Potential lack of demand for a property or types of property

## MANAGEMENT

- Mr. Miller and Mr. Gingerich will both be members and managers of the Company.
- Both Mr. Miller and Mr. Gingerich will be compensated by the company out its profits from real estate investments.
- Both Mr. Miller and Mr. Gingerich will own 50% of the units, or equity of the Company.
- The company will not conduct related-party transactions between the company and its owners. This means that the company does not rent office space owned by the owners or otherwise conduct such business with its owners.

## COMPANY OPERATIONS

We will pay 6-10% simple interest to private lenders. Payments are made to our private lenders on an annual basis (monthly, quarterly, or otherwise to be specified) or at the time the property is sold. Invested funds are secured with a mortgage on the properties, and when appropriate, with a state UCC filing to record the security interest in the properties. Hazard insurance is secured on the properties, payable to our private lenders. Mr. Miller and Mr. Gingerich know the local real estate markets and look at numerous properties before purchasing them. They use qualified contractors to rehab purchased properties. Real estate attorneys conduct closings.

## TERMS OF THE OFFERING

The company is offering its investors ("private lenders" or "lenders") the opportunity to invest with the company. The minimum investment is $15,000 and there is no maximum individual investment, nor any minimum or maximum total amount of investments being sought, other than may be imposed by law or regulation. Only accredited investors or sophisticated non-accredited investors, with the guidance of a purchaser representative, resident in the United States, will be offered or sold such investment and any person or business entity not resident in the United States who may attempt to invest or invest in the company may and shall have such investment cancelled and funds returned upon the discovery of same. The investment is a security and will only be offered pursuant to a filing of Form D with the federal Securities and Exchange Commission, and notice filings in states where the Company has investors, and after investors have been offered an opportunity to review a private placement memorandum and ask questions of the Company's management and of their own professional advisors or purchaser representative. Such an offering will be governed by relevant securities laws and regulations, and in compliance with both state and federal laws and regulations. The investment will be in the form of an interest-bearing debt security. The company does not have a minimum amount of securities that must be sold by a certain date for the offering to go forward. The interest rate will be set at 10, simple interest, for a term of 30 months.

A-78

## USE OF PROCEEDS

The funds will be used to:

- Invest in residential real estate in and around the state of Indiana.
- Invest in residential real estate in and around other states.
- Invest in other types of real estate within the State of Indiana, or other states, at the Company's discretion.
- No commissions will be paid to any person or business entity for the sale of these securities, unless and except if they are licensed and/or registered broker-dealers within the State of Indiana, and the company does not anticipate doing so in any case, and may only be sold by authorized representatives of the company and in compliance with all relevant securities laws and regulations.

## FINANCIAL INFORMATION

The Company's managers and owners have sold millions of dollars in real estate to people all over the country, since 2007. They currently manage several LLCs that own several million dollars worth of real estate in the state of Indiana, and they have over 120 investors with whom they regularly work. They have also consistently maintained an A+ Rating with the Better Business Bureau.

## LITIGATION

The company may, from time to time, become engaged in certain litigation related to the eviction of tenants unable or unwilling to pay rent or otherwise abide by their rental agreement with the company. There is no past, present, or anticipated litigation that would have a material effect on the business, financial condition, or operations of the Company.

## DISCLAIMERS

THESE DEBT SECURITIES ARE NOT REGISTERED WITH THE SECURITIES EXCHANGE COMMISSION UNDER THE SECURITIES ACT OF 1933 (THE "ACT"). THESE DEBT SECURITIES WILL BE OFFERED AND SOLD IN RELIANCE ON REGULATION D, RULE 506 SECTION OF THE SECURITIES ACT OF 1933, AS AMENDED, AND UNDER THE BLUE-SKY LAWS OF THE STATES WHERE THEY MAY BE SOLD, PURSUANT TO A FILING BY THE COMPANY OF FORM D WITH THE FEDERAL SECURITIES AND EXCHANGE COMMISSION AND ANY STATE REQUIRING A NOTICE FILING RELEVANT THERETO AND ANY OTHER APPLICABLE.

ALL PURCHASES MUST BE MADE FOR INVESTMENT PURPOSES ONLY AND NOT WITH THE VIEW TO OR FOR SALE IN CONNECTION WITH A DISTRIBUTION OF THE SECURITY. ANY RESALE OF A SECURITY SOLD IN

4

RELIANCE OF THIS EXEMPTION WITHIN 12 MONTHS OF THE SALE SHALL BE PRESUMED TO BE WITH A VIEW TO DISTRIBUTION AND NOT FOR INVESTMENT, EXCEPT A RESALE PURSUANT TO A REGISTRATION OR TO AN ACCREDITED INVESTOR PURSUANT TO AN EXEMPTION.

NO PERSON HAS BEEN AUTHORIZED BY THE COMPANY TO GIVE ANY INFORMATION OR MAKE ANY REPRESENTATIONS OF ANY KIND WHATSOEVER CONCERNING THE COMPANY OR THIS OFFERING OTHER THAN THOSE CONTAINED IN THIS CIRCULAR, AND, IF GIVEN OR MADE, SUCH OTHER INFORMATION OR REPRESENTATIONS MUST NOT BE RELIED UPON AS HAVING BEEN AUTHORIZED BY THE COMPANY. NEITHER THE DELIVERY OF THIS DISCLOSURE DOCUMENT NOR ANY SALES MADE HEREUNDER SHALL, UNDER ANY CIRCUMSTANCES, IMPLY THAT THERE HAS BEEN NO CHANGE IN THE AFFAIRS OF THE COMPANY DESCRIBED HEREIN SINCE THE DATE HEREOF, OR THAT THE INFORMATION CONTAINED HEREIN IS CORRECT AS OF ANY TIME AFTER THE DATE IT WAS FIRST DISTRIBUTED. THIS DOES NOT CONSTITUTE AN OFFER OR SOLICITATION IN ANY STATE TO ANY PERSON TO WHOM SUCH OFFER OR SOLICITATION WOULD BE UNLAWFUL.

FORWARD LOOKING STATEMENTS

THE COMPANY AND ITS REPRESENTATIVES MAY FROM TIME TO TIME MAKE WRITTEN OR ORAL FORWARD-LOOKING STATEMENTS. ONE CAN IDENTIFY THESE FORWARD-LOOKING STATEMENTS BY USE OF WORDS SUCH AS "STRATEGY," "EXPECTS," "PLANS," "ANTICIPATES," "BELIEVES," "WILL," "CONTINUES," "ESTIMATES," "INTENDS," "PROJECTS," "GOALS," "TARGETS" AND OTHER WORDS OF SIMILAR MEANING. ONE CAN ALSO IDENTIFY THEM BY THE FACT THAT THEY DO NOT RELATE STRICTLY TO HISTORICAL OR CURRENT FACTS. THESE STATEMENTS ARE BASED ON OUR ASSUMPTIONS AND ESTIMATES AND ARE SUBJECT TO RISKS AND UNCERTAINTIES. IN CONNECTION WITH THE "SAFE HARBOR" PROVISIONS OF THE PRIVATE SECURITIES LITIGATION REFORM ACT OF 1995, THE COMPANY IS HEREBY IDENTIFYING IMPORTANT FACTORS THAT COULD CAUSE ACTUAL RESULTS AND OUTCOMES TO DIFFER MATERIALLY FROM THOSE CONTAINED IN ANY FORWARD-LOOKING STATEMENT MADE BY OR ON BEHALF OF THE COMPANY; ANY SUCH STATEMENT IS QUALIFIED BY REFERENCE TO THE FOLLOWING CAUTIONARY STATEMENTS.

THE COMPANY'S BUSINESS IS SUBJECT TO COMPETITION, CHANGES IN THE MARKETPLACE, AND THE EFFECTS OF CHANGING HOME PRICES AND/OR INTEREST RATES AND LOCAL ECONOMIC CONDITIONS. OUR RESULTS ARE DEPENDENT UPON OUR CONTINUED ABILITY TO BORROW MONEY FROM PRIVATE LENDERS, LOCATE PROPERTIES WORTH PURCHASING,

5

A-80

REHABILITATING AND RESELLING OR LEASING TO TENANTS INTERESTED IN PURCHASING SUCH PROPERTIES, ANTICIPATING AND RESPONDING TO CHANGING MARKET CONDITIONS, AND OTHER IMPORTANT FACTORS INCORPORATED INTO THIS SECTION BY REFERENCE, WHICH COULD CAUSE THE COMPANY'S RESULTS TO DIFFER MATERIALLY FROM RESULTS THAT HAVE BEEN OR MAY BE PROJECTED BY OR ON BEHALF OF THE COMPANY. THE COMPANY CAUTIONS THAT THE FOREGOING LIST OF IMPORTANT FACTORS IS NOT EXCLUSIVE. ANY FORWARD-LOOKING STATEMENTS ARE MADE AS OF THE DATE OF THE DOCUMENT IN WHICH THEY APPEAR. THE COMPANY DOES NOT UNDERTAKE TO UPDATE ANY FORWARD-LOOKING STATEMENT THAT MAY BE MADE FROM TIME TO TIME BY OR ON BEHALF OF THE COMPANY.

THIS OFFER IS SUBMITTED ON A CONFIDENTIAL BASIS FOR USE SOLELY IN CONNECTION WITH YOUR CONSIDERATION OF THIS OFFER. THIS DISCLOSURE DOCUMENT MAY NOT BE REPRODUCED IN WHOLE OR IN PART, AND NO ONE, FOR ANY REASON, SHOULD RELY ON ANY REPRODUCTION OF THIS MEMORANDUM.

THESE SECURITIES HAVE NOT BEEN APPROVED OR DISAPPROVED BY THE SECURITIES AND EXCHANGE COMMISSION OR ANY STATE SECURITIES COMMISSION OR OTHER REGULATORY AUTHORITY, NOR HAS THE COMMISSION OR ANY OTHER AUTHORITY ASSESSED THE ACCURACY OR ADEQUACY OF THIS DISCLOSURE DOCUMENT. ANY REPRESENTATION TO THE CONTRARY IS A CRIMINAL OFFENSE.

THIS DISCLOSURE DOCUMENT DOES NOT CONSTITUTE AN OFFER OR SOLICITATION IN ANY STATE OR OTHER JURISDICTION IN WHICH SUCH OFFER OR SOLICITATION IS NOT AUTHORIZED.

I hereby acknowledge that I have received the Disclosure Documents from 5Star Investment Group VII, LLC.

_____

Name  (Printed)                                    Date


_____

Name (Signature)                                   Date

6

**A-81**

# NOTE 3-3

# NOTE 3-3

FAILING

### Amendment to Investor Paperwork

### 5 Star Investment Group, LLC
### An Indiana Limited Liability Company

 COPY

**Promissory Note:**

The original Promissory Note between 5 Star Investment Group VII, LLC and William Adamczyk dated September 13, 2013 which is incorporated herein by reference, is hereby revised, as mutually agreed to by both parties.

The provisions in this amendment shall supersede the interest payment terms and shall control and read as follows:

The Private Lender shall receive eight (8) consecutive monthly payments of $166.67 which shall be due and payable beginning December 15, 2013, (November payment to be pro-rated from October 16th to November 15th) and shall be payable on the same day of each consecutive month thereafter.

Then, on the sooner of July 15, 2013 or the sale of the real estate serving as collateral for this Promissory Note under a Mortgage of even date, the balance of all principal and interest due and owing under this Promissory Note shall be paid in full.

**Escrow Agreement:**

I authorize my funds held in 5 Star V Escrow Account in the amount of $20,000 to be transferred and used for 1114 NE Failing St., Portland, OR 97212.

5 Star Investment Group, LLC

*Earl Miller*                                Date: 10/16/2013

Earl Miller, Manager

_____                    Date: _____

William Adamczyk, Investor

### Personal Guaranty

Matthew Gingerich and Earl Miller each hereby agree to personally guaranty the repayment of the $20,000 paid by the Subscriber pursuant to Section 1 above. This Guaranty shall expire and terminate upon the completion of the rehabilitation and remodeling of the real estate located at: 1114 NE Failing St., Portland, OR 97212

Matthew Gingerich   *Matthew Gingerich* , Date 10/16/2013

Earl Miller   *Earl Miller* , Date 10/16/2013

A-82

# NOTE 3-3

HARO(D)

☐ COPY

## PROMISSORY NOTE
## TERM NOTE

Middlebury, Indiana
September 13, 2013

$20000.00

FOR VALUE RECEIVED, the undersigned, 5Star Investment Group VII, LLC, ("Borrower"), who address is P.O. Box 706 Middlebury, Indiana 46540, promises to pay to the order of Adamczyk William ("Lender"), whose address is 30019 N Waukegan Rd., Apt. 109, Lake Bluff, IL 60044, the principal sum of Twenty-Thousand US dollars ($20000.00) Interest will accrue under this Note at the rate of Ten Percent (10%) per annum. Borrower promises to pay all attorney's fees, paralegal's fees, and any costs and expenses incurred by Lender in connection with collection under this Note. Borrower agrees that all amounts payable under this Note shall be paid without relief from valuation and appraisement laws. The principal and interest under this Note shall be payable at the address set forth above for Lender as follows:

    a. Borrower shall make Twenty-Four (24) consecutive monthly payments of $166.67, which shall be due and payable beginning October 15, 2013, (September payment to be pro-rated from September 13 to September 15th) and shall be payable on the same day of each consecutive month thereafter; and

Then, on October 15, 2015 or the sale of the real estate serving as collateral for this Note under a Mortgage of even date, the balance of all principal and interest due and owing under this Note shall be paid in full. Any request from a borrower for his or her funds before the above mentioned date has been reached may or may not be honored at the sole discretion of the Company, and if and when agreed to by the Company, the borrower shall receive back his or her initial investment amount, minus an early-withdrawal penalty equal to two percent (2%) of the initial investment amount. No additional interest will be earned upon the funds invested or due to the borrower after such a request for early withdrawal is made and the loan amount is repaid.

    b. If any payment shall be paid more than thirty (30) days after the due date thereof, a penalty equal to three percent (3%) of the amount due and owing shall be paid with said payment as a penalty for the delinquency.

If Borrower fails to pay interest or other amounts under this Note when due, or if Borrower shall be dissolved, merge or consolidate with any other firm or entity, or Borrower files a petition in bankruptcy, or one is filed against Borrower, or if Borrower defaults under the mortgage, Lender may declare all amounts due under this Note immediately due and payable.

The Lender may unilaterally defer (in writing or without notice to the Borrower) one or more monthly payments or may not require one or more monthly payments to be made when due, with our without notice to the Borrower, but any such deferral shall not be considered a waiver of the Lender's rights to enforce this Promissory Note, in whole or in part.

No failure by Lender to exercise any right under this Note, including any rights resulting from an event of default, shall operate as a waiver or otherwise prevent Lender from exercising any of Lender's rights under this Note at any other time, including the exercise by Lender of any rights at any time during the continuance of such event of default or on the occurrence of a subsequent even of default.

The holder of this Note, in its sole discretion, may renew this Note, accept a renewal Note or Notes, extend the time for the payment of the indebtedness evidenced by this Note, reduce the payments under this Note, or do any combination of such actions on any number of occasions; provided, however, any such action or omission shall not release the Borrower on the obligations evidenced by this Note. Borrower waives presentment for payment, protest, notice of protest, notice of non-payment or dishonor of this Note, and diligence in the collection of this Note; and Borrower consents to any actions by Lender or any holder of this Note as set forth in this paragraph.

Initial

**A-83**

# NOTE 3-3

If this Note is negotiated by Lender, the word "Lender" as used in this Note shall refer to the "holder" unless the context otherwise requires.

Because of our filing that we have to do with the Securities Exchange Commission we are required to have our investors indicate whether they are an "Accredited" or a "Sophisticated" investor. Please initial whichever option applies:

1. _____ I am an accredited investor by nature of my income or net worth.

   *Definition: (Any person whose individual, or joint net worth exceeds $1,000,000 or has an income in excess of $200,000 in each of the two most recent years or joint income with that person's spouse in excess of $300,000 in each of those years and has a reasonable expectation of reaching the same income level in the current year)*

2. _WA_ I am a sophisticated non-accredited investor, meaning that although I may not be an accredited investor by nature of my income or net worth, I have sufficient investing experience and an understanding of the risks and benefits of investing in general and this offering in particular.

Investor _William Adams_ Date September 13, 2013

Borrower: 5 Star Investment Group VII, LLC
Signed: _Earl Miller_ Printed: _EARL MILLER_ (Manager)

Borrower: Metro Homes Northwest, LLC
Signed: _____ Printed: _Randall Palazzo_ (Manager)

## Personal Guaranty

Matthew Gingerich and Earl Miller each hereby agree to personally guaranty the repayment of the $20000 paid by the Lender pursuant to Section 1 above. This Guaranty shall expire and terminate upon the completion of the rehabilitation and remodeling of the real estate located at: 2025 SE Harold, Portland OR 97202

Matthew Gingerich _Matthew Gingerich_ , Date _7/17/2013_

Earl Miller _Earl Miller_ , Date _9-15-2013_

# NOTE 3-3

The below stated borrowers sign as additional borrowers on this Promissory Note regarding the joint venture entered therein pertaining to the property known as: **1116 NE Failing St., Portland, OR 97212** in promise to repay the lender the amount as specified in Section 1 above.

Borrower: Metro Homes Northwest, LLC

Signed: _Randall Palazzo_  Printed: Randall Palazzo  (Manager)
9777709FA89224E8...

Borrower: West Coast Development Group, INC

Signed: _Chris Sakys_  Printed: Chris Sakys  (President)
D131A880A2064DD...

A-85

# NOTE 3-4

5 Star Investment Group VII, LLC
304 North Main Street, Suite A, Middlebury, IN 46540

# PROMISSORY NOTE

 COPY

April 16, 2014      *$20,000.00*

FOR VALUE RECEIVED, the undersigned, 5 Star Investment Group VII, LLC, ("Borrower"), whose address is P.O. Box 706 Middlebury, Indiana 46540, promises to pay to the order of William Adamczyk ("Lender"), whose address is 30019 N. Waukegan Rd., Apt. 109, Lake Bluff, IL 60044, the principal sum of Twenty Thousand US dollars ($20,000.00) Interest will accrue under this Note at the rate of Ten Percent (10%) per annum. Borrower promises to pay all attorney's fees, paralegal's fees, and any costs and expenses incurred by Lender in connection with collection under this Note. Borrower agrees that all amounts payable under this Note shall be paid without relief from valuation and appraisement laws. The principal and interest under this Note shall be payable at the address set forth above for Lender as follows:

     a.   Borrower shall make Thirty (30) consecutive monthly payments of $166.66, which shall be due and payable beginning May 15, 2014 and shall be payable on the same day of each consecutive month thereafter; and then, on October 15, 2016 or the sale of the real estate serving as collateral for this Note under a Mortgage of even date, the balance of all principal and interest due and owing under this Note shall be paid in full. Any request from a lender for his or her funds before the above mentioned date has been reached may or may not be honored at the sole discretion of the Company, and if and when agreed to by the Company, the lender shall receive back his or her initial investment amount, minus an early-withdrawal penalty equal to two percent (2%) of the initial investment amount. No additional interest will be earned upon the funds invested or due to the lender after such a request for early withdrawal is made and the loan amount is repaid.

     b.   If any payment shall be paid more than thirty (30) days after the due date thereof, a penalty equal to three percent (3%) of the amount due and owing shall be paid with said payment as a penalty for the delinquency.

If Borrower fails to pay interest or other amounts under this Note when due, or if Borrower shall be dissolved, merge or consolidate with any other firm or entity, or Borrower files a petition in bankruptcy, or one is filed against Borrower, or if Borrower defaults under the mortgage, Lender may declare all amounts due under this Note immediately due and payable.

The Lender may unilaterally defer (in writing or without notice to the Borrower) one or more monthly payments or may not require one or more monthly payments to be made when due, with or without notice to the Borrower, but any such deferral shall not be considered a waiver of the Lender's rights to enforce this Promissory Note, in whole or in part.

No failure by Lender to exercise any right under this Note, including any rights resulting from an event of default, shall operate as a waiver or otherwise prevent Lender from exercising any of Lender's rights under this Note at any other time, including the exercise by Lender of any rights at any time during the continuance of such event of default or on the occurrence of a subsequent even of default.

Initial _____

**A-86**

# NOTE 3-4

The holder of this Note, in its sole discretion, may renew this Note, accept a renewal Note or Notes, extend the time for the payment of the indebtedness evidenced by this Note, reduce the payments under this Note, or do any combination of such actions on any number of occasions; provided, however, any such action or omission shall not release the Borrower on the obligations evidenced by this Note. Borrower waives presentment for payment, protest, notice of protest, notice of non-payment or dishonor of this Note, and diligence in the collection of this Note; and Borrower consents to any actions by Lender or any holder of this Note as set forth in this paragraph. Your investment may be pooled with one or more investors to purchase the property.

If this Note is negotiated by Lender, the word "Lender" as used in this Note shall refer to the "holder" unless the context otherwise requires.

By signing this document, I acknowledge that I have received and have had at least 48 hours to review the Private Placement Memorandum before making this investment.

**Because of our filing that we have to do with the Securities Exchange Commission we are required to have our investors indicate whether they are an "Accredited" or a "Sophisticated" investor. Please initial which ever option applies:**

1. _____ I am an accredited investor by nature of my income or net worth.
   *Definition: (Any person whose individual, or joint net worth exceeds $1,000,000 or has an income in excess of $200,000 in each of the two most recent years or joint income with that person's spouse in excess of $300,000 in each of those years and has a reasonable expectation of reaching the same income level in the current year)*

2. _____ I am a sophisticated non-accredited investor, meaning that although I may not be an accredited investor by nature of my income or net worth, I have sufficient investing experience and an understanding of the risks and benefits of investing in general and this offering in particular.

Investor_____ Date __April 16, 2014__

Borrower: 5 Star Investment Group VII, LLC

Signed ___*Earl Miller*___ Printed ___Earl Miller___ (Manager)

A-87

# NOTE 3-4

DocuSign Envelope ID: D3C0EFAC-D6D8-4F1D-B65F-FFD6285AE3A5

## Addendum to Promissory Note

The below stated borrower signs as an additional borrower on this Promissory Note regarding the joint venture entered therein pertaining to the property known as: 8235 SE 45th Ave., Portland, OR 97206 in promise to repay the lender the amount as specified in Section 1 above.

Borrower: Metro Homes Northwest, LLC

Signed: _Randall Palazzo_                Printed: Randall Palazzo
(Operations Officer of Metro Homes Northwest, LLC)

**A-88**

PPM 3-4

# PRIVATE PLACEMENT MEMORANDUM

(April 16, 2014)

### 5 Star Investment Group VII, LLC
**(An Indiana Limited Liability Company)**

**$3,000,000 being raised**
$15,000
Minimum

### Confidential Private Placement Memorandum

This Confidential Private Placement Memorandum and the exhibits hereto (collectively, the "Documents") of 5 Star Investment Group VII, LLC, a Indiana Limited liability company (the "Company"), relate to the offering on a "best-efforts" basis to accredited investors only (the "Offering") by the Company of Debt Units (the "Units"), with a minimum purchase requirement for each Investor of $15,000. The Number of Debt Units being Offered minimum purchase requirement and the $15,000 per Debt Unit price may be reduced in the sole and absolute discretion of the Company, but in no event will the Company have more than 99 private lenders. The Company is seeking to raise $3,000,000.

The period of the Offering will continue until the earlier of 12 Months from Date of Offering or the date on which the full $3,000,000 the "Termination Date"). Investors wishing to purchase Units should send the full amount of the purchase price of such Units, by check or wire transfer, to the non-interest bearing bank account (the "Escrow Account") Investors will become Private lenders of the Company only when their subscriptions have been formally accepted. Notes will be accepted on a best efforts basis by Contact Name ("Earl Miller"), who is the founder, sole Class A private lender, and sole manager of the Company. Earl Miller will not receive any compensation for or with respect to sales of Units. Earl Miller may also contract with one or more broker-dealers to sell Units on a commission basis and may pay a flat introduction fee to persons who introduce Investors to an investment in the Company.

Units will be sold <u>only</u> to persons who are "Accredited Investors", or sophisticated non-accredited investors, as such terms are defined under the Securities Act of 1933, as amended (the "Securities Act"). Investors who wish to purchase Units must fill out, sign and send to the Company, with their Securities Subscription Agreement, an "Accredited Investor" Certificate (<u>Exhibit C</u>) as a condition to being permitted to purchase Units. Please see <u>Exhibit C</u> for the categories of persons who qualify as "Accredited Investors".

An investment in Units is suited only for persons who have adequate means of providing for their current needs and personal contingencies and have no need for liquidity in their investment. The Units are only being offered to those persons who represent they can bear the complete economic loss of their investment in the Company. The Units have not been registered under the Securities Act and are being offered in reliance upon an exemption from the registration requirements thereunder. Offers and sales of

the Units will be made only to persons who satisfy the conditions set forth herein and who also represent in writing to the Company that, in connection with evaluating the merits and risks of an investment in the Company, they have such knowledge and experience in financial and business matters generally that they are capable of evaluating the merits and risks of an investment in the Company or that they are represented by a Purchaser Representative who satisfies such conditions (see Exhibit D).

The Company will use the proceeds of the Offering to fund its proposed business operations, which will consist of making first and second mortgage loans to entities controlled by Earl Miller, which entities will invest in real estate projects selected by Earl Miller. The Company will derive its income from the payment of interest on such loans and placement and exit fees. See the Section entitled "Description of the Company's Proposed Business."

This Confidential Private Placement Memorandum constitutes an offer only to the person to whom it has been delivered by the Company and only if such person meets the suitability requirements set forth herein.

EACH PERSON, BY ACCEPTING DELIVERY OF THE DOCUMENTS, AGREES AND ACKNOWLEDGES THAT THIS CONFIDENTIAL PRIVATE PLACEMENT MEMORANDUM AND THE INFORMATION CONTAINED HEREIN IS CONFIDENTIAL; AGREES TO RETURN THE DOCUMENTS TO THE COMPANY IF SUCH PERSON DOES NOT PURCHASE ANY OF THE UNITS OFFERED HEREBY; AND FURTHER AGREES TO HOLD THE COMPANY AND CONTACT NAME HARMLESS AGAINST CLAIMS, COSTS, EXPENSES OR DAMAGES THE COMPANY AND CONTACT NAME MAY SUFFER IF SUCH PERSON BREACHES THE CONFIDENTIALITY AND NON-DISCLOSURE THEREOF. THE DOCUMENTS ARE PERSONAL TO THE RECEIPIENT HEREOF AND MAY NOT BE SHOWN TO ANY OTHER PERSON, OTHER THAN SUCH RECEIPIENT'S LEGAL COUNSEL AND INVESTMENT ADVISORS. REPRODUCTION OF THE DOCUMENTS IS STRICTLY PROHIBITED

This Offering is subject to withdrawal, cancellation or modification by the Company without notice. The Company reserves the right, in its sole and absolute discretion, to reject any subscription, in whole or in part, for any reason, to accept less than the amount of the Units subscribed for, to accept subscriptions for less than $15,000, and to terminate the Offering at any time irrespective of the amount of Units sold and irrespective of the amount of gross proceeds raised.

The Date of this Confidential Private Placement Memorandum
is (April 16, 2014)

THIS OFFERING IS MADE ONLY TO PERSONS OR ENTITIES WHO ARE CONSIDERED ACCREDITED INVESTORS AS DEFINED IN REGULATION D, PROMULGATED UNDER THE SECURITIES ACT.

THE UNITS HAVE NOT BEEN APPROVED OR DISAPPROVED BY THE UNITED STATES SECURITIES AND EXCHANGE COMMISSION OR ANY OTHER REGULATORY AGENCY, NOR HAVE ANY SUCH AGENCIES PASSED UPON THE ACCURACY OR ADEQUACY OF STATEMENTS CONTAINED HEREIN OR THE MERITS OF ANY INVESTMENT CONTEMPLATED HEREBY. ANY REPRESENTATION TO THE CONTRARY IS A CRIMINAL OFFENSE.

THE UNITS ARE BEING OFFERED AND SOLD IN RELIANCE UPON APPLICABLE EXEMPTIONS FROM THE REGISTRATION REQUIREMENTS UNDER THE SECURITIES ACT, INCLUDING, WITHOUT LIMITATION, REGULATIONS AND EXEMPTIONS APPLICABLE TO ACCREDITED INVESTORS, AND CANNOT BE TRANSFERRED OR SOLD WITHOUT REGISTRATION UNDER THE SECURITIES ACT OR PURSUANT TO AN APPLICABLE EXEMPTION FROM REGISTRATION. THE SALE, TRANSFER OR OTHER DISPOSITION OF THE UNITS IS RESTRICTED BY APPLICABLE UNITED STATES FEDERAL AND STATE SECURITIES LAWS AND PURSUANT TO THE TERMS OF THE OPERATING AGREEMENT.

THE DOCUMENTS MAY CONTAIN CERTAIN STATEMENTS WITH RESPECT TO THE COMPANY'S FUTURE PERFORMANCE, INCLUDING CERTAIN STATEMENTS REGARDING THE COMPANY'S BUSINESS. SEE "RISK FACTORS." SUCH STATEMENTS REFLECT VARIOUS ASSUMPTIONS BY THE COMPANY CONCERNING ANTICIPATED RESULTS, WHICH MAY OR MAY NOT PROVE TO BE CORRECT. NO REPRESENTATIONS ARE MADE AS TO THE ACCURACY OF SUCH STATEMENTS. ANY STATEMENTS THAT ARE NOT BASED ON HISTORICAL FACTS ARE DEEMED TO BE FORWARD-LOOKING STATEMENTS, AS THE TERM IS DEFINED IN THE PRIVATE SECURITIES LITIGATION REFORM ACT OF 1995. FORWARD-LOOKING STATEMENTS ARE SUBJECT TO MANY UNCERTAINTIES AND RISKS. SEE "RISK FACTORS."

TO THE EXTENT ANY PROSPECTIVE INVESTOR HAS RECEIVED ANY FINANCIAL PROJECTIONS NOT CONTAINED HEREIN, SAID PROSPECTIVE INVESTOR HEREBY AGREES AND ACKNOWLEDGES THAT SAID PROSPECTIVE INVESTOR HAS NOT RELIED UPON SAID PROJECTIONS IN ACQUIRING UNITS HEREUNDER.

THE DOCUMENTS DO NOT CONSTITUTE AN OFFER TO SELL OR THE SOLICITATION OF AN OFFER TO BUY ANY SECURITY OTHER THAN THE UNITS OFFERED HEREBY, NOR DOES IT CONSTITUTE AN OFFER TO SELL OR A SOLICITATION OF AN OFFER

TO BUY SUCH SECURITIES BY ANYONE IN ANY JURISDICTION IN WHICH SUCH OFFER OR SOLICITATION IS NOT AUTHORIZED, OR IN WHICH THE PERSON MAKING SUCH OFFER OR

SOLICITATION IS NOT QUALIFIED TO DO SO, INCLUDING, WITHOUT LIMITATION, ANY FOREIGN JURISDICTION.

THE INFORMATION CONTAINED IN THE DOCUMENTS HAS BEEN SUPPLIED BY THE COMPANY. THE DOCUMENTS CONTAIN SUMMARIES, BELIEVED BY THE COMPANY TO BE ACCURATE, OF CERTAIN DOCUMENTS THAT ARE REFERRED TO HEREIN. FOR COMPLETE INFORMATION CONCERNING THE RIGHTS AND OBLIGATIONS OF THE PARTIES, COPIES OF DOCUMENTS REFERRED TO HEREIN WILL BE MADE AVAILABLE AT THE PRINCIPAL OFFICE OF THE COMPANY UPON THE REQUEST OF AN INVESTOR. ALL SUCH SUMMARIES SET FORTH HEREIN ARE QUALIFIED IN THEIR ENTIRETY BY THIS REFERENCE. INVESTORS MAY ALSO REQUEST ADDITIONAL INFORMATION CONCERNING THE COMPANY FROM CONTACT NAME OR HIS REPRESENTATIVES AND UPON TENDERING A SUBSCRIPTION TO THE COMPANY, INVESTORS WILL BE REQUIRED TO REPRESENT, AMONG OTHER THINGS, THAT THE INVESTORS HAVE RECEIVED ADEQUATE RESPONSES TO ALL INQUIRIES MADE BY SUCH INVESTORS TO THE COMPANY AND CONTACT NAME OR HIS REPRESENTATIVES CONCERNING THE COMPANY, ITS PROPOSED BUSINESS, FINANCIAL RESULTS OF OPERATIONS, AND THE OFFERING, AND THAT THE INVESTORS HAVE BEEN AFFORDED SUCH RIGHT AND OPPORTUNITY TO MAKE SUCH INQUIRIES.

THE COMPANY HAS PREPARED AND PRESENTED THE INFORMATION CONTAINED IN THE DOCUMENTS, WITHOUT INDEPENDENT REVIEW, ANALYSIS AND/OR EVALUATION. INVESTORS SHOULD NOT RELY UPON ANY PROMISE OR REPRESENTATION CONCERNING THE COMPANY'S FUTURE PERFORMANCE CONTAINED HEREIN OR IN ANY OTHER DOCUMENT, AND INVESTORS SHOULD ONLY RELY ON THE INVESTOR'S OWN EVALUATION OF THE COMPANY'S BUSINESS, AND THE RISKS ASSOCIATED WITH AN INVESTMENT IN THE COMPANY.

IN DECIDING WHETHER TO PURCHASE UNITS, EACH INVESTOR MUST CONDUCT AND RELY ON ITS OWN EVALUATION OF THE COMPANY AND THE TERMS OF THE OFFERING, INCLUDING THE MERITS AND RISKS INVOLVED IN MAKING AN INVESTMENT DECISION WITH RESPECT TO THE UNITS. INVESTORS SHOULD NOT CONSTRUE THE CONTENTS OF THE DOCUMENTS OR ANY PRIOR OR SUBSEQUENT COMMUNICATIONS FROM THE COMPANY OR ANY PROFESSIONAL ASSOCIATED WITH THE OFFERING, AS LEGAL OR TAX ADVICE. EACH ACCREDITED INVESTOR WHO IS AUTHORIZED TO RECEIVE THESE DOCUMENTS SHOULD CONSULT THEIR OWN COUNSEL, ACCOUNTANT AND/OR BUSINESS ADVISOR AS TO LEGAL, TAX AND

RELATED MATTERS CONCERNING THEIR INVESTMENT IN THE COMPANY AND THEIR PURCHASE OF THE UNITS OFFERED HEREBY.

NO GENERAL SOLICITATION WILL BE CONDUCTED AND NO OFFERING LITERATURE OR ADVERTISING IN ANY FORM WILL OR MAY BE EMPLOYED IN THE OFFERING OF THE SECURITIES, EXCEPT FOR THE DOCUMENTS.

THE DOCUMENTS SPEAK AS OF THE DATE INDICATED, EXCEPT WHERE NOTED. NO DELIVERY OF THE DOCUMENTS OR ANY SALE MADE IN CONNECTION WITH THIS OFFERING SHOULD IMPLY THAT THE COMPANY'S AFFAIRS HAVE NOT CHANGED SINCE THE DATE OF THE DOCUMENTS.

IT IS THE RESPONSIBILITY OF ANY INVESTOR WISHING TO PURCHASE THE UNITS OFFERED HEREBY TO OBSERVE THE LAWS OF ANY RELEVANT JURISDICTION OUTSIDE THE UNITED STATES IN CONNECTION WITH ANY SUCH PURCHASE, INCLUDING OBTAINING ANY REQUIRED GOVERNMENTAL, REGULATORY OR OTHER CONSENTS OR OBSERVING ANY OTHER APPLICABLE LEGAL OR OTHER FORMALITIES PRIOR TO SUBSCRIBING FOR THE UNITS OF THE COMPANY.

THE DOCUMENTS HAVE BEEN PREPARED IN THE ENGLISH LANGUAGE AND NO AUTHORIZED TRANSLATION HAS BEEN MADE. ALL INVESTORS BY SUBSCRIBING FOR THE UNITS MUST AGREE THAT THEY ARE FULLY CONVERSANT IN THE ENGLISH LANGUAGE TO MAKE AN INFORMED DECISION REGARDING ANY SUCH INVESTMENT IN THE COMPANY.

AN INVESTOR PRIOR TO SUBSCRIBING FOR THE SECURITIES HERETO SHOULD READ, AND IS URGED TO READ, THE DOCUMENTS IN THEIR ENTIRETY.

\* \* \*

THE DOCUMENTS SUPERSEDE, RESTATE AND REPLACE ANY AND ALL PRIOR DOCUMENTATION PROVIDED BY THE COMPANY, CONTACT NAME, AND ANY AFFILIATES THEREOF IN CONNECTION WITH THE OFFER OR SALE OF THE UNITS, AND INVESTORS HEREBY AGREE AND ACKNOWLEDGE THAT IN CONNECTION WITH THE PURCHASE OF UNITS, INVESTORS HAVE RELIED ONLY ON THE INFORMATION CONTAINED IN THE DOCUMENTS IN CONNECTION WITH THE OFFERING.

Prospective Investors should not construe the contents of the Documents or any prior or subsequent communications from the Company, Contact Name, or any of their respective agents or representatives, as legal, tax, and/or investment advice. EACH INVESTOR SHOULD CONSULT HIS, HER OR ITS OWN LEGAL COUNSEL, ACCOUNTANT, AND/OR OTHER PROFESSIONAL ADVISOR AS TO LEGAL, TAX, INVESTMENT, ACCOUNTING, SECURITIES AND/OR RELATED MATTERS CONCERNING AN INVESTMENT IN THE COMPANY. (Each prospective Investor is responsible for any fees or charges therefor.)

NO REPRESENTATIONS ARE MADE AS TO THE FEDERAL, STATE, OR LOCAL INCOME TAX CONSEQUENCES RESULTING FROM AN INVESTMENT IN THE UNITS. NO ASSURANCES ARE GIVEN THAT ANY DEDUCTIONS OR OTHER INCOME TAX ADVANTAGES WHICH MAY BE CONTEMPLATED WILL BE AVAILABLE.

**The Units being offered hereby have not been registered under the Securities Act or the securities laws of any jurisdiction, including any foreign jurisdiction, and are being offered in reliance upon exemptions from registration under the Securities Act. The right of Investors to sell, transfer, pledge or otherwise dispose of or assign the Units issued is limited by the Securities Act and state securities laws, and the laws of other jurisdictions, and pursuant to the terms of the Operating Agreement. See the Section entitled "Risk Factors."**

[Remainder of this page left intentionally blank]

## 5 Star Investment Group VII, LLC

### Disclosure Document

### PROPRIETARY AND CONFIDENTIAL

This Document is for Discussion purposes only and is not intended to be used or considered as an offering of securities. Please see disclaimers at end of document for more information on offering requirements.

This document includes information that is proprietary and confidential and is not to be copied or distributed without the approval of an officer of **5 Star Investment Group VII, LLC**

This offer is limited to accredited investors and non-accredited sophisticated investors resident in the United States and has been prepared to comply with the securities laws and regulations of the United States, particularly under Regulation D, Rule 506 of the Securities Act of 1933, as amended.

Because this Disclosure Document focuses primarily on details concerning the company rather than the industry in which the company operates or will operate, potential investors may wish to conduct their own separate investigation of the company's industry in order to obtain broader insight in assessing the company's prospects.

### THE COMPANY

5 Star Investment Group VII, LLC, ("Company") is a company being organized in the State of Indiana. Its office is located at 304 N. Main Street, Suite A, Middlebury, Indiana 46540, and its telephone number is 574-825-4100.

5 Star Investment Group VII, LLC is being created solely for the purpose of attracting private lenders' funds, which in turn will be directed to and or managed 5 Star Portland Holdings, LLC, an Indiana limited liability company, and possibly one or more other companies, which will be identified and described to private lenders before any funds are accepted. 5 Star Portland Holdings, LLC, was organized in the state of Indiana in order to invest in real estate.

The Company is a private Real Estate Investing Company, being founded by Mr. Earl Miller and Mr. Matthew Gingerich to acquire, rehabilitate, lease or resell residential or commercial real estate. The company was started in 2008 with the goal of providing the opportunity for both private lenders and themselves the opportunity to profit from real estate investing while also offering affordable housing within Indiana and other states. The company is not a realtor; it is a real estate investor. As the company grew, we understood that many of our tenants, while wanting to own their own home, had economic, employment or credit problems, which kept them from qualifying for a traditional mortgage loan. Because we quickly recognized that huge pent-up demand, we expanded our rental business to include creating affordable, single-family housing throughout Indiana. The company also purchases homes, rehabilitates them and then resells them for a profit, as well as purchasing homes via short sale, after which it sells them for a profit without holding them for a long period of time.

Our tenant/buyers understand and appreciate that 5 Star Investment Group VII, LLC has demonstrated a strong commitment to parts of the community whose housing needs have been badly underserved and where few realistic options have been available to those seeking and capable of home ownership. 5 Star Investment Group VII, LLC not only provides affordable housing but also by the very nature of the business, helps the local economy by providing work for local contractors, realtors, mortgage companies and other related businesses.

## RISKS OF INVESTMENT

The Company uses funds borrowed from private lenders to invest in real estate primarily but not necessarily exclusively in Indiana. We focus on residential properties, although we will consider investing in commercial and other properties in certain circumstances.

As a real-estate investment company, we are subject to risks including, but not limited to:

- Availability of investment capital from private lenders
- Local real estate markets
- Competition from other real-estate investment companies, which may offer competitive interest rates or possibly better terms and/or conditions to private lenders
- Availability of investment-grade properties
- Legal and regulatory issues
- Costs associated with rehabbing and maintaining properties
- The possibility of selling a home for less than it was purchased
- The possibility of selling a home for less profit than anticipated
- The possibility of a home going unsold for an extended period of time
- Unanticipated repair costs
- Changing market conditions
- Interest rate changes
- Potential damage caused by tenants
- The death or disability of either or both of Mr. Earl Miller and Mr. Matthew Gingerich.
- Because some deals are funded with multiple investors, a first lien position cannot be guaranteed.
- Potential lack of demand for a property or types of property

## MANAGEMENT

- Mr. Miller and Mr. Gingerich will both be members and managers of the Company.
- Both Mr. Miller and Mr. Gingerich will be compensated by the company out its profits from real estate investments.
- Both Mr. Miller and Mr. Gingerich will own 50% of the units, or equity of the Company.
- The company will not conduct related-party transactions between the company and its owners. This means that the company does not rent office space owned by the owners or otherwise conduct such business with its owners.

## COMPANY OPERATIONS

We will pay 10-12% simple interest to private lenders. Payments are made to our private lenders on an annual basis (monthly, quarterly, or otherwise to be specified) or at the time the property is sold. Invested funds are secured with a mortgage on the properties, and when appropriate, with a state UCC filing to record the security interest in the properties. Hazard insurance is secured on the properties, payable to our private lenders. Mr. Miller and Mr. Gingerich know the local real estate markets and look at numerous properties before purchasing them. They use qualified contractors to rehab purchased properties. Real estate attorneys conduct closings.

## TERMS OF THE OFFERING

The company is offering its investors ("private lenders" or "lenders") the opportunity to invest with the company. The minimum investment is $15,000 and there is no maximum individual investment, nor any minimum or maximum total amount of investments being sought, other than may be imposed by law or regulation. Only accredited investors or sophisticated non-accredited investors, with the guidance of a purchaser representative, resident in the United States, will be offered or sold such investment and any person or business entity not resident in the United States who may attempt to invest or invest in the company may and shall have such investment cancelled and funds returned upon the discovery of same. The investment is a security and will only be offered pursuant to a filing of Form D with the federal Securities and Exchange Commission, and notice filings in states where the Company has investors, and after investors have been offered an opportunity to review a private placement memorandum and ask questions of the Company's management and of their own professional advisors or purchaser representative. Such an offering will be governed by relevant securities laws and regulations, and in compliance with both state and federal laws and regulations. The investment will be in the form of an interest-bearing debt security. The company does not have a minimum amount of securities that must be sold by a certain date for the offering to go forward.

## USE OF PROCEEDS

The funds will be used to:

- Invest in residential real estate in and around the state of Indiana.
- Invest in residential real estate in and around other states.
- Invest in other types of real estate within the State of Indiana, or other states, at the Company's discretion.
- No commissions will be paid to any person or business entity for the sale of these securities, unless and except if they are licensed and/or registered broker-dealers within the State of Indiana, and the company does not anticipate doing so in any case, and may only be sold by authorized representatives of the company and in compliance with all relevant securities laws and regulations.

## FINANCIAL INFORMATION

The Company's managers and owners have sold millions of dollars in real estate to people all over the country, since 2007. They currently manage several LLCs that own several million dollars worth of real estate in the state of Indiana, and they have over 120 investors with whom they regularly work. They have also consistently maintained an A+ Rating with the Better Business Bureau.

## LITIGATION

The company may, from time to time, become engaged in certain litigation related to the eviction of tenants unable or unwilling to pay rent or otherwise abide by their rental agreement with the company. There is no past, present, or anticipated litigation that would have a material effect on the business, financial condition, or operations of the Company.

## DISCLAIMERS

THESE DEBT SECURITIES ARE NOT REGISTERED WITH THE SECURITIES EXCHANGE COMMISSION UNDER THE SECURITIES ACT OF 1933 (THE "ACT"). THESE DEBT SECURITIES WILL BE OFFERED AND SOLD IN RELIANCE ON REGULATION D, RULE 506 SECTION OF THE SECURITIES ACT OF 1933, AS AMENDED, AND UNDER THE BLUE-SKY LAWS OF THE STATES WHERE THEY MAY BE SOLD, PURSUANT TO A FILING BY THE COMPANY OF FORM D WITH THE FEDERAL SECURITIES AND EXCHANGE COMMISSION AND ANY STATE REQUIRING A NOTICE FILING RELEVANT THERETO AND ANY OTHER APPLICABLE.

ALL PURCHASES MUST BE MADE FOR INVESTMENT PURPOSES ONLY AND NOT WITH THE VIEW TO OR FOR SALE IN CONNECTION WITH A DISTRIBUTION OF THE SECURITY. ANY RESALE OF A SECURITY SOLD IN RELIANCE OF THIS EXEMPTION WITHIN 12 MONTHS OF THE SALE SHALL BE PRESUMED TO BE WITH A VIEW TO DISTRIBUTION AND NOT FOR INVESTMENT, EXCEPT A RESALE PURSUANT TO A REGISTRATION OR TO AN ACCREDITED INVESTOR PURSUANT TO AN EXEMPTION.

NO PERSON HAS BEEN AUTHORIZED BY THE COMPANY TO GIVE ANY INFORMATION OR MAKE ANY REPRESENTATIONS OF ANY KIND WHATSOEVER CONCERNING THE COMPANY OR THIS OFFERING OTHER THAN THOSE CONTAINED IN THIS CIRCULAR, AND, IF GIVEN OR MADE, SUCH OTHER INFORMATION OR REPRESENTATIONS MUST NOT BE RELIED UPON AS HAVING BEEN AUTHORIZED BY THE COMPANY. NEITHER THE DELIVERY OF THIS DISCLOSURE DOCUMENT NOR ANY SALES MADE HEREUNDER SHALL, UNDER ANY CIRCUMSTANCES, IMPLY THAT THERE HAS BEEN NO CHANGE IN THE AFFAIRS OF THE COMPANY DESCRIBED HEREIN SINCE THE DATE HEREOF, OR THAT THE INFORMATION CONTAINED HEREIN IS CORRECT AS OF ANY TIME AFTER THE DATE IT WAS FIRST DISTRIBUTED. THIS DOES NOT CONSTITUTE AN OFFER OR SOLICITATION IN ANY STATE TO ANY PERSON TO WHOM SUCH OFFER OR SOLICITATION WOULD BE UNLAWFUL.

## FORWARD LOOKING STATEMENTS

THE COMPANY AND ITS REPRESENTATIVES MAY FROM TIME TO TIME MAKE WRITTEN OR ORAL FORWARD-LOOKING STATEMENTS. ONE CAN IDENTIFY THESE FORWARD-LOOKING STATEMENTS BY USE OF WORDS SUCH AS "STRATEGY," "EXPECTS," "PLANS," "ANTICIPATES," "BELIEVES," "WILL," "CONTINUES," "ESTIMATES," "INTENDS," "PROJECTS," "GOALS," "TARGETS" AND OTHER WORDS OF SIMILAR MEANING. ONE CAN ALSO IDENTIFY THEM BY THE FACT THAT THEY DO NOT RELATE STRICTLY TO HISTORICAL OR CURRENT FACTS. THESE STATEMENTS ARE BASED ON OUR ASSUMPTIONS AND ESTIMATES AND ARE SUBJECT TO RISKS AND UNCERTAINTIES. IN CONNECTION WITH THE "SAFE HARBOR" PROVISIONS OF THE PRIVATE SECURITIES LITIGATION REFORM ACT OF 1995, THE COMPANY IS HEREBY IDENTIFYING IMPORTANT FACTORS THAT COULD CAUSE ACTUAL RESULTS AND OUTCOMES TO DIFFER MATERIALLY FROM THOSE CONTAINED IN ANY FORWARD-LOOKING STATEMENT MADE BY OR ON BEHALF OF THE COMPANY; ANY SUCH STATEMENT IS QUALIFIED BY REFERENCE TO THE FOLLOWING CAUTIONARY STATEMENTS.

THE COMPANY'S BUSINESS IS SUBJECT TO COMPETITION, CHANGES IN THE MARKETPLACE, AND THE EFFECTS OF CHANGING HOME PRICES AND/OR INTEREST RATES AND LOCAL ECONOMIC CONDITIONS. OUR RESULTS ARE DEPENDENT UPON OUR CONTINUED ABILITY TO BORROW MONEY FROM PRIVATE LENDERS, LOCATE PROPERTIES WORTH PURCHASING, REHABILITATING AND RESELLING OR LEASING TO TENANTS INTERESTED IN PURCHASING SUCH PROPERTIES, ANTICIPATING AND RESPONDING TO CHANGING MARKET CONDITIONS, AND OTHER IMPORTANT FACTORS INCORPORATED INTO THIS SECTION BY REFERENCE, WHICH COULD CAUSE THE COMPANY'S RESULTS TO DIFFER MATERIALLY FROM RESULTS THAT HAVE BEEN OR MAY BE PROJECTED BY OR ON BEHALF OF THE COMPANY. THE COMPANY CAUTIONS THAT THE FOREGOING LIST OF IMPORTANT FACTORS IS NOT EXCLUSIVE. ANY FORWARD-LOOKING STATEMENTS ARE MADE AS OF THE DATE OF THE DOCUMENT IN WHICH THEY APPEAR. THE COMPANY DOES NOT UNDERTAKE TO UPDATE ANY FORWARD-LOOKING STATEMENT THAT MAY BE MADE FROM TIME TO TIME BY OR ON BEHALF OF THE COMPANY.

THIS OFFER IS SUBMITTED ON A CONFIDENTIAL BASIS FOR USE SOLELY IN CONNECTION WITH YOUR CONSIDERATION OF THIS OFFER. THIS DISCLOSURE DOCUMENT MAY NOT BE REPRODUCED IN WHOLE OR IN PART, AND NO ONE, FOR ANY REASON, SHOULD RELY ON ANY REPRODUCTION OF THIS MEMORANDUM.

THESE SECURITIES HAVE NOT BEEN APPROVED OR DISAPPROVED BY THE SECURITIES AND EXCHANGE COMMISSION OR ANY STATE SECURITIES COMMISSION OR OTHER REGULATORY AUTHORITY, NOR HAS THE COMMISSION OR ANY OTHER AUTHORITY ASSESSED THE ACCURACY OR ADEQUACY OF THIS DISCLOSURE DOCUMENT. ANY REPRESENTATION TO THE CONTRARY IS A CRIMINAL OFFENSE.
THIS DISCLOSURE DOCUMENT DOES NOT CONSTITUTE AN OFFER OR SOLICITATION IN ANY STATE OR OTHER JURISDICTION IN WHICH SUCH OFFER OR SOLICITATION IS NOT AUTHORIZED.

# NOTE 3-5

5 Star Investment Group VII, LLC
304 North Main Street, Suite A, Middlebury, IN 46540

# PROMISSORY NOTE  COPY

February 18, 2015      *$20,000.00*      Investment: I10001283

FOR VALUE RECEIVED, the undersigned, 5 Star Investment Group VII, LLC, ("Borrower"), whose address is P.O. Box 706 Middlebury, Indiana 46540, promises to pay to the order of William Adamczyk ("Lender"), whose address is 30019 N. Waukegan Road, Apt. 109, Lake Bluff, IL 60044, the principal sum of Twenty Thousand US dollars ($20,000.00) Interest will accrue under this Note at the rate of Ten Percent (10%) per annum. Borrower promises to pay all attorney's fees, paralegal's fees, and any costs and expenses incurred by Lender in connection with collection under this Note. Borrower agrees that all amounts payable under this Note shall be paid without relief from valuation and appraisement laws. The principal and interest under this Note shall be payable at the address set forth above for Lender as follows:

a. Borrower shall make Thirty (30) consecutive monthly payments of $166.67, which shall be due and payable beginning April 15, 2015, (March payment to be pro-rated from February 18th to March 15th) and shall be payable on the same day of each consecutive month thereafter (all interest checks to be mailed on the 25th of each month); and then, on September 15, 2017 the balance of all principal and interest due and owing under this Note shall be paid in full. Any request from a lender for his or her funds before the above mentioned date has been reached may or may not be honored at the sole discretion of the Company, and if and when agreed to by the Company, the lender shall receive back his or her initial investment amount, minus an early-withdrawal penalty equal to two percent (2%) of the initial investment amount. No additional interest will be earned upon the funds invested or due to the lender after such a request for early withdrawal is made and the loan amount is repaid.

a. If any payment shall be paid more than thirty (30) days after the due date thereof, a penalty equal to three percent (3%) of the amount due and owing shall be paid with said payment as a penalty for the delinquency.

If Borrower fails to pay interest or other amounts under this Note when due, or if Borrower shall be dissolved, merge or consolidate with any other firm or entity, or Borrower files a petition in bankruptcy, or one is filed against Borrower, Lender may declare all amounts due under this Note immediately due and payable.

The Lender may unilaterally defer (in writing or without notice to the Borrower) one or more monthly payments or may not require one or more monthly payments to be made when due, with our without notice to the Borrower, but any such deferral shall not be considered a waiver of the Lender's rights to enforce this Promissory Note, in whole or in part.

No failure by Lender to exercise any right under this Note, including any rights resulting from an event of default, shall operate as a waiver or otherwise prevent Lender from exercising any of Lender's rights under this Note at any other time, including the exercise by Lender of any rights at any time during the continuance of such event of default or on the occurrence of a subsequent even of default.

Initial_____

**A-100**

# NOTE 3-5

The holder of this Note, in its sole discretion, may renew this Note, accept a renewal Note or Notes, extend the time for the payment of the indebtedness evidenced by this Note, reduce the payments under this Note, or do any combination of such actions on any number of occasions; provided, however, any such action or omission shall not release the Borrower on the obligations evidenced by this Note. Borrower waives presentment for payment, protest, notice of protest, notice of non-payment or dishonor of this Note, and diligence in the collection of this Note; and Borrower consents to any actions by Lender or any holder of this Note as set forth in this paragraph. Your investment may be pooled with one or more investors.

If this Note is negotiated by Lender, the word "Lender" as used in this Note shall refer to the "holder" unless the context otherwise requires.

By signing this document, I acknowledge that I have received and have had at least 48 hours to review the Private Placement Memorandum before making this investment.

Because of our filing that we have to do with the Securities Exchange Commission we are required to have our investors indicate whether they are an "Accredited" or a "Sophisticated" investor.
Please initial which ever option applies:

1. _____I am an accredited investor by nature of my income or net worth.
   *Definition: (Any person whose individual, or joint net worth exceeds $1,000,000 or has an income in excess of $200,000 in each of the two most recent years or joint income with that person's spouse in excess of $300,000 in each of those years and has a reasonable expectation of reaching the same income level in the current year)*

1. _____I am a sophisticated non-accredited investor, meaning that although I may not be an accredited investor by nature of my income or net worth, I have sufficient investing experience and an understanding of the risks and benefits of investing in general and this offering in particular.

**Investment: I10001283**


**Borrower: 5 Star Investment Group VII, LLC**

Signed _____*Earl Miller*_____ Printed _____Earl Miller_____ (Manager)


Investor_____ Date <u>February 18, 2015</u>

PPM 3-5

# 5 Star Investment Group VII, LLC

## PRIVATE PLACEMENT MEMORANDUM

April 23, 2014

Earl Miller

# PRIVATE PLACEMENT MEMORANDUM
April 23rd , 2014

## 5 Star Investment Group VII, LLC
### (An Indiana Limited Liability Company)

Amount of Debt being offered: $5.0 Million

Minimum Investment: $15,000.00

### Confidential Private Placement Memorandum

The period of the Offering will continue until the earlier of 12 Months from April 23rd, 2014 or the date on which the full total amount of debt being sought has been raised (the "Termination Date"). Securities will be sold on a best efforts basis by Mr. Earl Miller ("Mr. Miller"), who is a founder and a Manager of the Company. Other employees of the Company will act as Promoters of the Company. As Promoters, these persons are authorized to encourage others to invest in the Company and introduce such potential investors to the Company. Promoters may be compensated for their work. The Company may also contract with one or more broker-dealers to sell Securities on a commission basis and may pay a flat introduction fee to persons who introduce Investors to an investment in the Company. The Company's Operating Agreement, a confidential document, is available upon request from the Company.

Securities will be sold to persons who are "Accredited Investors", as such term is defined under the Securities Act of 1933, as amended (the "Securities Act", or "The Act"), and to sophisticated non-accredited investors.

An investment in these securities is suited only for persons who have adequate means of providing for their current needs and personal contingencies and have no need for liquidity in their investment. The Securities are only being offered to those persons who represent they can bear the complete economic loss of their investment in the Company. The Securities have not been registered under the Securities Act and are being offered in reliance upon an exemption from the registration requirements thereunder. Offers and sales of the Securities will be made only to persons who satisfy the conditions set forth herein and who also represent in writing to the Company that, in connection with evaluating the merits and risks of an investment in the Company, they have such knowledge and experience in financial and business matters generally that they are capable of evaluating the merits and risks of an investment in the Company or that they are represented by a Purchaser Representative who satisfies such conditions.

This Confidential Private Placement Memorandum constitutes an offer only to the person to whom it has been delivered by the Company and only if such person meets the suitability requirements set forth herein.

EACH PERSON, BY ACCEPTING DELIVERY OF THE DOCUMENTS, AGREES AND ACKNOWLEDGES THAT THIS CONFIDENTIAL PRIVATE PLACEMENT MEMORANDUM AND THE INFORMATION CONTAINED HEREIN IS CONFIDENTIAL; AGREES TO RETURN THE DOCUMENTS TO THE COMPANY IF SUCH PERSON DOES NOT PURCHASE ANY OF THE SECURITIES OFFERED HEREBY; AND FURTHER AGREES TO HOLD THE COMPANY AND MR. EARL MILLER HARMLESS AGAINST CLAIMS, COSTS, EXPENSES OR DAMAGES THE COMPANY AND MR. EARL MILLER MAY SUFFER IF SUCH PERSON BREACHES THE CONFIDENTIALITY AND NON-DISCLOSURE THEREOF. THE DOCUMENTS ARE PERSONAL TO THE RECIPIENT HEREOF AND MAY NOT BE SHOWN TO ANY OTHER PERSON, OTHER THAN SUCH RECIPIENT'S LEGAL COUNSEL AND INVESTMENT ADVISORS. REPRODUCTION OF THE DOCUMENTS IS STRICTLY PROHIBITED

This Offering is subject to withdrawal, cancellation or modification by the Company without notice. The Company reserves the right, in its sole and absolute discretion, to reject any subscription, in whole or in part, for any reason, to accept less than the amount of the Securities subscribed for, to accept subscriptions for less than Minimum Investment being Offered, and to terminate the Offering at any time irrespective of the amount of Securities sold and irrespective of the amount of gross proceeds raised.

The company does not have a minimum amount of securities that must be sold by a certain date for the offering to go forward. This means the Company will accept funds as they are invested and will invest additional funds when they are invested, without any requirement to wait for any certain amount of funds before making investments. The Company's management reserves the right to structure invested funds, including but not limited to fund names, the opening and closing of different funds, pooling or not pooling funds.

### Instructions for Investing in Securities

Investors who wish to purchase Securities must do all of the following no later than the Termination Date:

(1) Fill out and execute the Execution Page, which serves as a counterpart signature page for the Operating Agreement and the Securities Subscription Agreement or a Promissory Note;

(2) Fill out and execute the "Accredited Investor" Certificate;

(3) If applicable, fill out and execute the Purchaser Representative's Certificate;

(4) Send all of the documents listed above as (1) and (2), and (3) if applicable, to the following address:

> Mr. Earl Miller
> 5 Star Investment Group VII, LLC
> 304 N Main St., Ste A
> Middlebury, IN 46540
> Phone: (574) 825-4100
> Fax: (574) 825-4120

(5) Remit the amount of the purchase price for the securities subscribed for in accordance with the instructions contained in Schedule I to the Securities Subscription Agreement.

**A-104**

**The Date of this Confidential Private Placement Memorandum is April 23rd, 2014**

THIS OFFERING IS MADE TO PERSONS OR ENTITIES WHO ARE CONSIDERED ACCREDITED INVESTORS AS DEFINED IN REGULATION D, PROMULGATED UNDER THE SECURITIES ACT AND SOPHISTICATED NON-ACCREDITED INVESTORS.

THE SECURITIES HAVE NOT BEEN APPROVED OR DISAPPROVED BY THE UNITED STATES SECURITIES AND EXCHANGE COMMISSION OR ANY OTHER REGULATORY AGENCY, NOR HAVE ANY SUCH AGENCIES PASSED UPON THE ACCURACY OR ADEQUACY OF STATEMENTS CONTAINED HEREIN OR THE MERITS OF ANY INVESTMENT CONTEMPLATED HEREBY. ANY REPRESENTATION TO THE CONTRARY IS A CRIMINAL OFFENSE.

THE SECURITIES ARE BEING OFFERED AND SOLD IN RELIANCE UPON APPLICABLE EXEMPTIONS FROM THE REGISTRATION REQUIREMENTS UNDER THE SECURITIES ACT, INCLUDING, WITHOUT LIMITATION, REGULATIONS AND EXEMPTIONS APPLICABLE TO ACCREDITED INVESTORS, AND CANNOT BE TRANSFERRED OR SOLD WITHOUT REGISTRATION UNDER THE SECURITIES ACT OR PURSUANT TO AN APPLICABLE EXEMPTION FROM REGISTRATION. THE SALE, TRANSFER OR OTHER DISPOSITION OF THE SECURITIES IS RESTRICTED BY APPLICABLE UNITED STATES FEDERAL AND STATE SECURITIES LAWS AND PURSUANT TO THE TERMS OF THE OPERATING AGREEMENT.

THE DOCUMENTS MAY CONTAIN CERTAIN STATEMENTS WITH RESPECT TO THE COMPANY'S FUTURE PERFORMANCE, INCLUDING CERTAIN STATEMENTS REGARDING THE COMPANY'S BUSINESS. SEE "RISK FACTORS." SUCH STATEMENTS REFLECT VARIOUS ASSUMPTIONS BY THE COMPANY CONCERNING ANTICIPATED RESULTS, WHICH MAY OR MAY NOT PROVE TO BE CORRECT. NO REPRESENTATIONS ARE MADE AS TO THE ACCURACY OF SUCH STATEMENTS. ANY STATEMENTS THAT ARE NOT BASED ON HISTORICAL FACTS ARE DEEMED TO BE FORWARD-LOOKING STATEMENTS, AS THE TERM IS DEFINED IN THE PRIVATE SECURITIES LITIGATION REFORM ACT OF 1995. FORWARD-LOOKING STATEMENTS ARE SUBJECT TO MANY UNCERTAINTIES AND RISKS. SEE "RISK FACTORS."

TO THE EXTENT ANY PROSPECTIVE INVESTOR HAS RECEIVED ANY FINANCIAL PROJECTIONS NOT CONTAINED HEREIN, SAID PROSPECTIVE INVESTOR HEREBY AGREES AND ACKNOWLEDGES THAT SAID PROSPECTIVE INVESTOR HAS NOT RELIED UPON SAID PROJECTIONS IN ACQUIRING SECURITIES HEREUNDER.
THE DOCUMENTS DO NOT CONSTITUTE AN OFFER TO SELL OR THE SOLICITATION OF AN OFFER TO BUY ANY SECURITY OTHER THAN THE SECURITIES OFFERED HEREBY, NOR DOES IT CONSTITUTE AN OFFER TO SELL OR A SOLICITATION OF AN OFFER TO BUY SUCH SECURITIES BY ANYONE IN ANY JURISDICTION IN WHICH SUCH OFFER OR SOLICITATION IS NOT AUTHORIZED, OR IN WHICH THE PERSON MAKING SUCH OFFER OR SOLICITATION IS NOT QUALIFIED TO DO SO, INCLUDING, WITHOUT LIMITATION, ANY FOREIGN JURISDICTION.

THE INFORMATION CONTAINED IN THE DOCUMENTS HAS BEEN SUPPLIED BY THE COMPANY. THE DOCUMENTS CONTAIN SUMMARIES, BELIEVED BY THE COMPANY TO BE ACCURATE, OF CERTAIN DOCUMENTS THAT ARE REFERRED TO HEREIN. FOR COMPLETE INFORMATION CONCERNING THE RIGHTS AND OBLIGATIONS OF THE PARTIES, COPIES OF DOCUMENTS REFERRED TO HEREIN WILL BE MADE AVAILABLE AT THE PRINCIPAL OFFICE OF THE COMPANY UPON THE REQUEST OF AN INVESTOR. ALL SUCH SUMMARIES SET FORTH HEREIN ARE QUALIFIED IN THEIR ENTIRETY BY THIS REFERENCE. INVESTORS MAY ALSO REQUEST ADDITIONAL INFORMATION CONCERNING THE COMPANY FROM MR. EARL MILLER OR HIS REPRESENTATIVES AND UPON TENDERING A SUBSCRIPTION TO THE COMPANY, INVESTORS WILL BE REQUIRED TO REPRESENT, AMONG OTHER THINGS, THAT THE INVESTORS HAVE RECEIVED ADEQUATE RESPONSES TO ALL INQUIRIES MADE

BY SUCH INVESTORS TO THE COMPANY AND MR. EARL MILLER OR HIS REPRESENTATIVES CONCERNING THE COMPANY, ITS PROPOSED BUSINESS, FINANCIAL RESULTS OF OPERATIONS, AND THE OFFERING, AND THAT THE INVESTORS HAVE BEEN AFFORDED SUCH RIGHT AND OPPORTUNITY TO MAKE SUCH INQUIRIES.

THE COMPANY HAS PREPARED AND PRESENTED THE INFORMATION CONTAINED IN THE DOCUMENTS, WITHOUT INDEPENDENT REVIEW, ANALYSIS AND/OR EVALUATION. INVESTORS SHOULD NOT RELY UPON ANY PROMISE OR REPRESENTATION CONCERNING THE COMPANY'S FUTURE PERFORMANCE CONTAINED HEREIN OR IN ANY OTHER DOCUMENT, AND INVESTORS SHOULD ONLY RELY ON THE INVESTOR'S OWN EVALUATION OF THE COMPANY'S BUSINESS, AND THE RISKS ASSOCIATED WITH AN INVESTMENT IN THE COMPANY.

IN DECIDING WHETHER TO PURCHASE SECURITIES, EACH INVESTOR MUST CONDUCT AND RELY ON ITS OWN EVALUATION OF THE COMPANY AND THE TERMS OF THE OFFERING, INCLUDING THE MERITS AND RISKS INVOLVED IN MAKING AN INVESTMENT DECISION WITH RESPECT TO THE SECURITIES. INVESTORS SHOULD NOT CONSTRUE THE CONTENTS OF THE DOCUMENTS OR ANY PRIOR OR SUBSEQUENT COMMUNICATIONS FROM THE COMPANY OR ANY PROFESSIONAL ASSOCIATED WITH THE OFFERING, AS LEGAL OR TAX ADVICE. EACH ACCREDITED INVESTOR OR SOPHISTICATED NON-ACCREDITED INVESTOR WHO IS AUTHORIZED TO RECEIVE THESE DOCUMENTS SHOULD CONSULT THEIR OWN COUNSEL, ACCOUNTANT AND/OR BUSINESS ADVISOR AS TO LEGAL, TAX AND RELATED MATTERS CONCERNING THEIR INVESTMENT IN THE COMPANY AND THEIR PURCHASE OF THE SECURITIES OFFERED HEREBY.

NO GENERAL SOLICITATION WILL BE CONDUCTED AND NO OFFERING LITERATURE OR ADVERTISING IN ANY FORM WILL OR MAY BE EMPLOYED IN THE OFFERING OF THE SECURITIES, EXCEPT FOR THE DOCUMENTS.

THE DOCUMENTS SPEAK AS OF THE DATE INDICATED, EXCEPT WHERE NOTED. NO DELIVERY OF THE DOCUMENTS OR ANY SALE MADE IN CONNECTION WITH THIS OFFERING SHOULD IMPLY THAT THE COMPANY'S AFFAIRS HAVE NOT CHANGED SINCE THE DATE OF THE DOCUMENTS.

IT IS THE RESPONSIBILITY OF ANY INVESTOR WISHING TO PURCHASE THE SECURITIES OFFERED HEREBY TO OBSERVE THE LAWS OF ANY RELEVANT JURISDICTION OUTSIDE THE UNITED STATES IN CONNECTION WITH ANY SUCH PURCHASE, INCLUDING OBTAINING ANY REQUIRED GOVERNMENTAL, REGULATORY OR OTHER CONSENTS OR OBSERVING ANY OTHER APPLICABLE LEGAL OR OTHER FORMALITIES PRIOR TO SUBSCRIBING FOR THE SECURITIES OF THE COMPANY.

THE DOCUMENTS HAVE BEEN PREPARED IN THE ENGLISH LANGUAGE AND NO AUTHORIZED TRANSLATION HAS BEEN MADE. ALL INVESTORS BY SUBSCRIBING FOR THE SECURITIES MUST AGREE THAT THEY ARE FULLY CONVERSANT IN THE ENGLISH LANGUAGE TO MAKE AN INFORMED DECISION REGARDING ANY SUCH INVESTMENT IN THE COMPANY.

AN INVESTOR PRIOR TO SUBSCRIBING FOR THE SECURITIES HERETO SHOULD READ, AND IS URGED TO READ, THE DOCUMENTS IN THEIR ENTIRETY.

*    *    *

THE DOCUMENTS SUPERSEDE, RESTATE AND REPLACE ANY AND ALL PRIOR DOCUMENTATION PROVIDED BY THE COMPANY, MR. EARL MILLER, AND ANY AFFILIATES THEREOF IN CONNECTION WITH THE OFFER OR SALE OF THE SECURITIES, AND INVESTORS HEREBY AGREE AND ACKNOWLEDGE THAT IN CONNECTION WITH THE PURCHASE OF SECURITIES, INVESTORS HAVE RELIED ONLY ON THE INFORMATION CONTAINED IN THE DOCUMENTS IN CONNECTION WITH THE OFFERING.

A-106

Prospective Investors should not construe the contents of the Documents or any prior or subsequent communications from the Company, Mr. Earl Miller, or any of their respective agents or representatives, as legal, tax, and/or investment advice. EACH INVESTOR SHOULD CONSULT HIS, HER OR ITS OWN LEGAL COUNSEL, ACCOUNTANT, AND/OR OTHER PROFESSIONAL ADVISOR AS TO LEGAL, TAX, INVESTMENT, ACCOUNTING, SECURITIES AND/OR RELATED MATTERS CONCERNING AN INVESTMENT IN THE COMPANY. (Each prospective Investor is responsible for any fees or charges therefor.)

NO REPRESENTATIONS ARE MADE AS TO THE FEDERAL, STATE, OR LOCAL INCOME TAX CONSEQUENCES RESULTING FROM AN INVESTMENT IN THE SECURITIES. NO ASSURANCES ARE GIVEN THAT ANY DEDUCTIONS OR OTHER INCOME TAX ADVANTAGES WHICH MAY BE CONTEMPLATED WILL BE AVAILABLE.

The Securities being offered hereby have not been registered under the Securities Act or the securities laws of any jurisdiction, including any foreign jurisdiction, and are being offered in reliance upon exemptions from registration under the Securities Act. The right of Investors to sell, transfer, pledge or otherwise dispose of or assign the Securities issued is limited by the Securities Act and state securities laws, and the laws of other jurisdictions, and pursuant to the terms of the Operating Agreement. See the Section entitled "Risk Factors."

[Remainder of this page left intentionally blank]

**5 Star Investment Group VII, LLC**
Private Placement Memorandum

PROPRIETARY AND CONFIDENTIAL

This document includes information that is proprietary and confidential and is not to be copied or distributed without the approval of an officer of 5 Star Investment Group VII, LLC.

This offer is available to accredited investors and sophisticated non-accredited investors and has been prepared to comply with the securities laws and regulations of the United States.

Because this Private Placement Memorandum focuses primarily on details concerning the company rather than the industry in which the company operates or will operate, potential investors may wish to conduct their own separate investigation of the company's industry in order to obtain broader insight in assessing the company's prospects.

THE COMPANY

5 Star Investment Group VII, LLC ("Company") is a limited liability company ("LLC") organized in the State of Indiana. Its principal office is located at 304 N. Main St., Ste A, Middlebury, IN 46540, and its telephone number is (574) 825-4100.

5 Star Investment Group VII, LLC has been created for the purpose of investing in single-family residential and multi-family residential (multi-unit apartment buildings), which it will do through the use of several options. These options include, but are not limited to, Promissory Notes, Subscription Agreements, and borrowing from one or more financial institutions as opposed to individuals. To be clear, this Executive Summary does not contain an offer of securities for sale.

Promissory Notes are debt securities, meaning the Company is promising to use its best efforts to return private lenders' or investors' their principal and an interest rate based on simple interest. Subscription Agreements are equity securities, meaning the Company is promising to use its best efforts to return investors their principal and a preferred return on investment in the form of a mutually-agreed upon portion of profits on properties investors' funds are invested into. Such equity securities may also result in a payout of a kicker, meaning an additional payment to investors based upon additional equity appreciation on properties investors' funds are invested into. Such additional equity appreciation would be above and beyond that originally anticipated by the Company when originally investing, and is at the sole discretion of the Company.

Earl Miller is an Indiana native who started his real estate career in 2006 as the sales manager of an Ohio company that sold condos on the Gulf Coast of Florida. The resort consisted of 450 units that were 23 stories high, overlooking the Gulf Coast. Earl has personally sold millions of dollars of real estate to investors all over the country.

5 Star Investment Group is a member of an elite group of highly trained and experienced commercial and multi-family real estate professionals. This group meets regularly to mastermind and streamline strategies that will group the organization and benefit our investors.

5 Star has partnered with a growing South Carolina-based Commercial Real Estate Investment firm and together, they manage over 2000 apartment units and hold assets valued at over $50,000,000. Each company operates with similar core values – this allows them to recognize and capitalize on each organization's strengths.

The 5 Star "client first" philosophy is that every decision we make has to be able to benefit our client and 5 Star or it is not an opportunity we are interested in.

A-108

5 Star believes that there are many qualities and skills required to be a successful and professional real estate organization including:

- Integrity
- In-depth community and market knowledge
- Market savvy
- Effective negotiation skills
- Being a good listener and communicator
- Choosing to respond quickly to client needs

In addition, 5 Star has found that the latest technologies, when managed properly, allow them to implement effective and efficient processes which creates more time to spend with investors.

**Mission:** To provide win-win opportunities that are based on tried, tested, and proven systems.

**Vision:** To have a 5 Star Company that is built on the foundation of Integrity, Trust, Loyalty, and Friendship.

**Company Motto:** What goes around ALWAYS comes around! Life IS relationships and everything else is just details.

## RISKS OF INVESTMENT

This executive summary does not constitute an offer of securities for sale to or a solicitation of offers to invest from any person who may receive it. In the future, the Company may make such an offer, and would have funds from investors who would be called "Private Lenders" or "Investors." The Company will use its funds to acquire real estate primarily, although not necessarily exclusively, in the State of Indiana. The Company is focused primarily, although not necessarily exclusively, on single-family residential and multi-family residential (multi-unit apartment buildings).

Whatever the source of funding for funds the Company chooses to invest in real estate the funds it invests in real estate will be subject to certain risks. The Company will do its best to manage these risks. As a real-estate investment company, the Company is subject to risks including, but not limited to:

- Availability of investment capital
- Local real estate markets
- Competition from other real-estate investment companies
- Availability of investment-grade properties
- Legal and regulatory issues
- Potential vacancies
- Non-payment of rent by tenants
- Potential damage caused by tenants
- Costs associated with rehabbing and maintaining properties
- Unanticipated repair costs
- Lower Net Operating Income ("NOI") than projected
- The possibility of selling a property for less than it was purchased, including the possibility that there would be no equity in a property
- Interest rate increases
- Inability to obtain financing or refinance its debt
- The death or disability of Mr. Miller
- Changing market conditions
- Potential lack of demand for a property or types of property

A-109

■ [For any rental or lease properties, the potential for damage to the properties or the failure to receive rental or lease payments as due]

## MANAGEMENT

- Mr. Miller will be a Manager of the Company.
- Mr. Miller shall not be paid a salary or wages of any type by the Company.
- Either the Company or a property management company hired by the Company will manage the properties the Company invests in.
- The Managers of the Company, as well other employees of the Company, who will be identified in relevant filings with the US Securities and Exchange Commission, will serve as Promoters of the Company, in addition to their other roles. Promoters will assist the Company by introducing potential private lenders or investors to the Company, and promoters may be compensated by the Company for such work. Promoters will not be paid any commissions, unless they are registered and licensed as securities brokers.
- The Company may conduct related-party transactions between the Company and its owners and employees. A related party is another company that has one or more things in common with The Company, such as management or ownership. Such transactions may include but are not necessarily limited to borrowing, lending, purchasing, selling, and may be conducted on terms and conditions that are different from market terms and conditions.
- Further, the Company may borrow money from or receive investments from investors and then lend the money to a related-party company. This means that this Company may borrow money or receive an investment and then lend such funds to one or more other company that share similar ownership. The company or companies that such money is loaned to will be fully responsible for returning such funds plus interest or other profits to this Company and the Company will remain fully responsible for returning your loan or investment principal plus promised interest or profit.
- The Manager will have the sole authority to manage the affairs of the Company, including the sole authority to:
  o Identify properties to be loaned against or purchased by the Company;
  o Monitor and assess Company performance and set the Company's accounting procedures
  o Oversee rehabilitation, management, leasing, and disposing of properties
  o Otherwise direct the day-to-day operations of the Company.

## COMPANY OPERATIONS

The Company intends to operate its business in a manner that will both secure its funds' value while reasonably working to enhance the value of its investments. For example, the Company believes in using "value plays" or "value-adding components." To illustrate such components, the Company intends to, where possible, increase rents to meet current market pricing.

The Company reserves the right to offer different Private Lenders or Investors different returns, based on mutually agreed to terms and conditions which will be put in writing. For example, the Company may give better returns to Private Lenders or Investors who provide funding earlier than other Private Lenders or Investors, or those who agree to provide funding above the minimum investment. These are only examples, and there may be other terms and conditions that will provide different rates of return to different Private Lenders.

The Company may, from time to time, engage in joint ventures or partnerships with other companies or individuals. Joint ventures may be in the form of contractual relationships with another person, persons, business or businesses, as well as other, less formal agreements. Such joint ventures or partnerships may be registered under state law, where required. There may be times when the Company will hold a lien position on behalf of its Investors, instead of the Investors themselves holding such a lien position. Also, the Company may offer its investors 1st, 2nd or 3rd lien positions, depending upon the investment amounts and opportunities.

A-110

Invested funds are a debt due from the LLC to its Private Lenders in the form of Promissory Notes, secured by the Company's investment in properties.. All property owned by the Company, or an affiliate of the company, will be managed either by the Company itself, or by a property management company hired by the Company. Property and casualty insurance will be obtained by the Company, or an affiliate of the Company, on property purchased using Private Lenders' or Investors' funds. Qualified contractors will be engaged to perform work on the property as may be necessary. A real estate attorney, or title company, will conduct closings.

## TERMS OF THE OFFERING

The Company is offering the opportunity to invest in the Company. The minimum investment is $15,000 and there is a maximum investment of $5 Million. Such investments must be made with the knowledge that funds must be kept within the Company for a minimum of one year and a maximum of five years' time or until the exercise by Mr. Miller of the Private Lender or Investor exit strategy, if earlier.

Accredited investors and sophisticated non-accredited investors will be offered or sold such investment. The investment is a security and will only be offered pursuant to a filing of Form D with the federal Securities and Exchange Commission, and notice filings in states where the Company has Private Lenders or Investors and such a filing is required, and after Private Lenders or Investors have been offered an opportunity to review a private placement memorandum and ask questions of the Company's management and of their own professional advisors or purchaser representative. Such an offering will be governed by relevant securities laws and regulations, and in compliance with both state and federal laws and regulations. Investments will be in the form of debt securities or Promissory Notes issued by the Company. The Company does not have a minimum amount of securities that must be sold by a certain date for the offering to go forward.

In most cases, the Company will offer its private lenders or investors the opportunity to make investments in properties which require the use of funds from two or more private lenders or investors. This type of investment is commonly referred to as "pooling." The Company intends to take advantage of such opportunities with the written consent of its investors. Such consents would be given on a deal-to-deal basis and may have an impact on the interest rates paid to investors for their investments.

## USE OF FUNDS

Our company began operations by just purchasing houses in our local market area. As our business has grown, we recognize the power of closely monitoring market cycles on a city-by-city basis. We also recognize the value of timing in terms of buying into a market. We have adjusted our investing strategy so we can enter and exit different markets quickly, as each area reaches its maximum potential.

While recognizing that much research is needed and is conducted by the Company, and acknowledging that this is at best an imprecise market investment approach, here are some of the aspects we look for to help us decide on when and where to invest our funds. On a city-by-city basis and when we look at states as a whole, we look for:

- Job growth
- Population growth
- Path of progress
- Local economic trends

As an example as a source of such data, chamber of commerce reports can prove especially helpful when analyzing for both negative and positive trends. To give our potential investors a better understanding of the strategies we use in market places, we want to explain that there are several different methodologies we can employ that can lead to profit for the Company and its investors.

9

1.  Buy a home → Rehab → Sell
2.  Buy empty lot → Build New (in high demand area)
3.  Buy a home → Demolish home → Rebuild New
4.  Buy a home with large lot → Remodel home → Subdivide Lot → Build additional house

Similar processes are used when the Company invests in multifamily apartments. The Company may also, from time to time, invest in development projects. This means that the Company may on its own or with one or more partner companies, invest in projects where land is currently undeveloped (has no buildings on it. The development would involve the construction of homes, apartment units, storage units, or other residential or commercial real estate.

The Company plans to use its funds to:

- Invest in single-family residential and multi-family residential (multi-unit apartment buildings) primarily, although not necessarily exclusively, in the State of Indiana.
- The Company is focused on residential real estate investments. It is possible that another investment opportunity, for example with commercial property in Indiana or another state, may arise that the Company may choose to consider. No investor funds would be used to invest in non-residential real estate investments without the written mutual agreement of the Company and one or more of its investors.
- Cover offering expenses. These may include offering preparation, filing, printing, legal, accounting and other fees and expenses related to the Offering. Fees include securities filing fees, legal fees for preparation of documents, and other fees such as printing and postage.
- Cover on-going legal and accounting fees
- Cover working capital reserve. Working capital reserve is for on-going operational expenses including regular bookkeeping services, office supplies, software, equipment, and office expenses.
- No commissions will be paid to any person or business entity for the sale of these securities, unless and except if they are licensed and/or registered broker-dealers within a particular state or states, and the Company does not anticipate doing so in any case, and may only be sold by authorized representatives of the Company and in compliance with all relevant securities laws and regulations.

## FINANCIAL INFORMATION

Certain financial information on the company is available upon request. Financial information should be treated as confidential.

## SECURITIES COUNSEL

In 2014, the Company retained the legal services of The Law Offices of Ralph M. Sherman, PC, a professional services company incorporated in the State of Michigan. The Company is utilizing the legal services, in particular, of Sherman Law Offices' Founding Partner, Ralph M. Sherman, Esq., who is licensed in both the Commonwealth of Massachusetts and the State of Michigan, and who has been practicing securities law since October of 1988. These legal services are addressed solely to the Company and its Managing Member. In any possible future offering made by the Company, potential investors would be advised to conduct due diligence and obtain advice from their own professional advisors, such as attorneys, accountants, or finance professionals.

## LITIGATION

The Company may, from time to time, become engaged in certain litigation related to the operation of their business, similar to other investing businesses. There is no past, present, or anticipated litigation that would have a material effect on the business, financial condition, or operations of the Company.

## DISCLAIMERS

THESE SECURITIES ARE NOT REGISTERED WITH THE SECURITIES EXCHANGE COMMISSION UNDER THE SECURITIES ACT OF 1933, AS AMENDED (THE "ACT"). THESE SECURITIES ARE BEING OFFERED AND SOLD IN RELIANCE ON REGULATION D, RULE 506 OF THE SECURITIES ACT OF 1933, AS AMENDED, AND OTHER RELATED RULES UNDER REGULATION D, PURSUANT TO A FILING OF FORM D WITH THE FEDERAL SECURITIES AND EXCHANGE COMMISSION, AND WHERE REQUIRED, AT THE STATE LEVEL TO PROVIDE NOTICE TO SUCH STATE SECURITIES REGULATOR(S), PURSUANT TO RELEVANT AND APPLICABLE REGULATIONS AND EXEMPTIONS AND PURSUANT TO EXEMPTIONS FROM REGISTRATION UNDER THE SECURITIES LAWS AND REGULATIONS OF SUCH STATES AND THE DISTRICT OF COLUMBIA.

ALL PURCHASES MUST BE MADE FOR INVESTMENT PURPOSES ONLY AND NOT WITH THE VIEW TO OR FOR SALE IN CONNECTION WITH A DISTRIBUTION OF THE SECURITY. ANY RESALE OF A SECURITY SOLD IN RELIANCE OF THIS EXEMPTION WITHIN 12 MONTHS OF THE SALE SHALL BE PRESUMED TO BE WITH A VIEW TO DISTRIBUTION AND NOT FOR INVESTMENT, EXCEPT FOR A RESALE PURSUANT TO A REGISTRATION OR TO AN ACCREDITED INVESTOR OR SOPHISTICATED NON-ACCREDITED INVESTOR PURSUANT TO AN EXEMPTION.

NO PERSON HAS BEEN AUTHORIZED BY THE COMPANY TO GIVE ANY INFORMATION OR MAKE ANY REPRESENTATIONS OF ANY KIND WHATSOEVER CONCERNING THE COMPANY OR THIS OFFERING OTHER THAN THOSE CONTAINED IN THIS CIRCULAR, AND, IF GIVEN OR MADE, SUCH OTHER INFORMATION OR REPRESENTATIONS MUST NOT BE RELIED UPON AS HAVING BEEN AUTHORIZED BY THE COMPANY. NEITHER THE DELIVERY OF THIS PRIVATE PLACEMENT MEMORANDUM NOR ANY SALES MADE HEREUNDER SHALL, UNDER ANY CIRCUMSTANCES, IMPLY THAT THERE HAS BEEN NO CHANGE IN THE AFFAIRS OF THE COMPANY DESCRIBED HEREIN SINCE THE DATE HEREOF, OR THAT THE INFORMATION CONTAINED HEREIN IS CORRECT AS OF ANY TIME AFTER THE DATE IT WAS FIRST DISTRIBUTED. THIS DOES NOT CONSTITUTE AN OFFER OR SOLICITATION IN ANY STATE TO ANY PERSON TO WHOM SUCH OFFER OR SOLICITATION WOULD BE UNLAWFUL.

## FORWARD LOOKING STATEMENTS

The Company and its representatives may from time to time make written or oral forward-looking statements. One can identify these forward-looking statements by use of words such as "strategy," "expects," "plans," "anticipates," "believes," "will," "continues," "estimates," "intends," "projects," "goals," "targets" and other words of similar meaning. One can also identify them by the fact that they do not relate strictly to historical or current facts. These statements are based on our assumptions and estimates and are subject to risks and uncertainties. In connection with the "safe harbor" provisions of the Private Securities Litigation Reform Act of 1995, the Company is hereby identifying important factors that could cause actual results and outcomes to differ materially from those contained in any forward-looking statement made by or on behalf of the Company; any such statement is qualified by reference to the following cautionary statements.

The Company's business is subject to competition and changes in the marketplace, and other risks both known and unknown. Our results are dependent upon our continued ability to borrow money from private lenders, anticipating and responding to changing market conditions, and other important factors incorporated into this section by reference, which could cause the Company's results to differ materially from results that have been or may be projected by or on behalf of the Company. The Company cautions that the foregoing list of important factors is not exclusive. Any forward-looking statements are made as of the date of the document in which they appear. The Company does not undertake to update any forward-looking statement that may be made from time to time by or on behalf of the Company.

THIS OFFER IS SUBMITTED ON A CONFIDENTIAL BASIS FOR USE SOLELY IN CONNECTION WITH YOUR CONSIDERATION OF THIS OFFER. THIS PRIVATE PLACEMENT MEMORANDUM MAY NOT BE REPRODUCED IN WHOLE OR IN PART, AND NO ONE, FOR ANY REASON, SHOULD RELY ON ANY REPRODUCTION OF THIS MEMORANDUM.

THESE SECURITIES HAVE NOT BEEN APPROVED OR DISAPPROVED BY THE SECURITIES AND EXCHANGE COMMISSION OR ANY STATE SECURITIES COMMISSION OR OTHER REGULATORY AUTHORITY, NOR HAS THE COMMISSION OR ANY OTHER AUTHORITY ASSESSED THE ACCURACY OR ADEQUACY OF THIS PRIVATE PLACEMENT MEMORANDUM. ANY REPRESENTATION TO THE CONTRARY IS A CRIMINAL OFFENSE.

THIS PRIVATE PLACEMENT MEMORANDUM DOES NOT CONSTITUTE AN OFFER OR SOLICITATION IN ANY STATE OR OTHER JURISDICTION IN WHICH SUCH OFFER OR SOLICITATION IS NOT AUTHORIZED.

[Remainder of this page left intentionally blank]

A-114