UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| William Adamczyk | ) | |
|---|---|---|
| | ) | |
| Plaintiff | ) | |
| | ) | Case No. 16-cv-516 |
| v. | ) | |
| | ) | Judge Andrea R. Wood |
| Earl D. Miller, | ) | |
| Matthew Gingerich, | ) | Magistrate Judge Jeffrey T. Gilbert |
| 5 Star Investment Group I, LLC | ) | |
| 5 Star Investment Group V, LLC, | ) | |
| 5 Star Investment Group VII, LLC, | ) | |
| 5 Star Investment Group, LLC, | ) | |
| 5 Star Commercial, LLC, | ) | |
| 5 Star Portland Holdings, LLC, | ) | |
| Twin City of Winston Salem, LLC, | ) | |
| Southern Equity Group Trust, | ) | |
| Metro Homes Northwest, LLC, and | ) | |
| Dilusso Homes, LLC | ) | |
| | ) | |
| Defendants | ) | |

## PLAINTIFF'S RESPONSE IN OPPOSITION TO
## DEFENDANT'S MOTION TO DISMISS

Plaintiff William Adamczyk, by his undersigned attorneys, provides the following Response in Opposition to the Motion to Dismiss for Lack of Personal Jurisdiction filed by Defendant Metro Homes Northwest, LLC (Metro Homes) and joined in by Defendant Dilusso Homes, LLC (Dilusso Homes).

This Court should deny the Defendants' motion because Defendants Metro Homes and Dilusso Homes were engaged in a joint venture with Defendants Earl Miller, Matthew Gingerich, and their 5 Star Companies. In 2013, Plaintiff was approached by a 5 Star investor, his brother, as part of a referral program operated by the 5 Star Companies. (Compl. ¶ 9). Plaintiff would ultimately make three principal investments

1

totaling $125,500 in exchange for promissory notes guaranteeing a 10% return, and promising a security interest in the specific properties associated with each note. (Compl. ¶ 10–15). 5 Star Company employees repeatedly called Plaintiff to encourage him to roll his principal into new properties, and Plaintiff's principal investments would eventually become associated with ten different promissory notes and ten different properties. *Id.* A number of the properties were development projects undertaken by 5 Star and Metro Homes, and at least one property, 4134 N. Michigan, was a joint development project undertaken by 5 Star, Metro Homes and Dilusso Homes. (Compl. ¶ 178–84). The promissory note issued to Plaintiff for the 4134 N. Michigan property was signed by 5 Star, Metro Homes, and Dilusso Homes as borrowers, explicitly referred to the project as a joint venture, and was personally guaranteed by Earl Miller and Matthew Gingerich. (Compl. ¶ 181–84; Exhibit B at 3). The Defendants' collective failure to honor their obligations have cost the Plaintiff nearly his entire life savings.

Personal jurisdiction over one co-venturer establishes personal jurisdiction for all of them, and Plaintiff's prima facie showing of personal jurisdiction over Defendants Earl Miller, Matthew Gingerich, and their 5 Star Companies was not refuted by the affirmative evidence submitted by Defendants in their affidavits. Virtually all of Plaintiff's interaction with the 5 Star Companies occurred via phone or mail to his home in Illinois for over two years. The Defendants could reasonably foresee being sued in Illinois and the exercise of personal jurisdiction over them does not offend notions of fair play or substantial justice.

The affirmative evidence submitted by Metro Homes and Dilusso provides nothing to refute the existence of joint venture, and even if it did Plaintiff has submitted

sufficient affirmative evidence in this motion to establish a dispute of material fact regarding the joint venture's existence. The Defendants jointly borrowed money from Plaintiff, and that promissory note explicitly referred to the enterprise as a joint venture. The Development Agreements between Metro Homes, Dilusso Homes, and the 5 Star Companies created a profit-sharing arrangement, and under Oregon law profit-sharing itself creates a rebuttable presumption of partnership. Therefore, this Court has personal jurisdiction over Metro Homes and Dilusso Homes as the 5 Star Companies' partners in a joint venture giving rise to the claims in the complaint. The Defendants' motion to dismiss for lack of personal jurisdiction should be denied.

## I. Metro Homes Northwest, LLC and Dilusso Homes, LLC Participation in a Joint Venture Establishes Personal Jurisdiction.

### A. Legal Standard

Participants in joint ventures are subject to the personal jurisdiction analysis applied to their co-venturers because "the minimum contacts of one co-venturer are attributable to other co-venturers such that personal jurisdiction over one means personal jurisdiction over all." *Wendt v. Handler, Thayer, &Duggan, LLC*, 613 F. Supp. 2d 1021, 1030 (N.D. Ill. 2009) (quoting *Hill v. Shell Oil Co.,* 140 F.Supp.2d 911, 914 (N.D.Ill.2001)) (internal quotation marks omitted).

While the Plaintiff has the burden of demonstrating personal jurisdiction, "all reasonable inferences consistent with the complaint" are drawn in the plaintiff's favor. *ABN AMRO, Inc. v. Capital Int'l Ltd.*, 595 F. Supp. 2d 805, 818 (N.D. Ill. 2008). This is especially true in this instance, because determining whether a party participated in a joint venture is a question of fact, and the determination "is ordinarily best left to the trier of fact." *Hallmark Ins. Administrators, Inc. v. Colonial Penn Life Ins. Co.*, 697 F. Supp.

319, 325 (N.D. Ill. 1988), *aff'd*, 990 F.2d 984 (7th Cir. 1993); *see also* Preliminary Hearings, 5C FED. PRAC. & PROC. CIV. § 1373 (3d ed.) ("If the issue is of so complex or uncertain a nature that witnesses are necessary, it would be wise for the court to defer the determination of the matter until trial.").

A plaintiff is only required to make a prima facie showing of personal jurisdiction, but upon the submission of evidence or affidavits by a defendant, a plaintiff is required to go beyond the pleadings and submit affirmative evidence. *ABN AMRO, Inc. v. Capital Int'l Ltd.*, 595 F. Supp. 2d 805, 818 (N.D. Ill. 2008). In considering the evidence, "[a]ny conflicts in the pleadings and affidavits are to be resolved in the plaintiffs' favor, but the court accepts as true any facts contained in the defendants' affidavits that remain unrefuted by the plaintiffs." *Id.* (quoting *Interlease Aviation Investors II (Aloha) L.L.C. v. Vanguard Airlines, Inc.,* 262 F.Supp.2d 898, 904 n. 3 & 905 (N.D.Ill. 2003)) (quotation marks omitted).

### B. Metro Homes Northwest, LLC and Dilusso Homes, LLC Participated in a Joint Venture with Earl Miller, Matthew Gingerich, and their Investment Entities

Metro Homes and Dilusso Homes were participants in a joint venture with Earl Miller, Matthew Gingerich, and their 5 Star entities that gave rise to Plaintiff's claims. The determination is a question of fact, and there is, at a minimum, sufficient evidence to create a material dispute that must be resolved in Plaintiff's favor and left to a final determination by the trier of fact.

While the promissory notes and other liabilities to Plaintiff are governed by both Illinois and federal law, the existence of a joint venture between Metro Homes, Dilusso Homes, and the 5 Star Companies is governed by Oregon law. State law governs joint

venture formation, and in diversity suits, the choice of law determination is controlled by the forum state's conflict rules, while the appropriate choice of law rules for federal questions remains unsettled. *See Hill v. Shell Oil Co.,* 149 F. Supp. 2d 416, 418-19 (N.D. Ill. 2001); *see also Klaxon Co. v. Stentor Elec. Mfg. Co.,* 313 U.S. 487 (1941).

While Plaintiff's complaint contains both diversity claims and federal question claims, the distinction in this case is unimportant because federal common law and Illinois both follow the "most significant contacts test." *Id.* The "most significant contacts test" examines "the place of contracting, the place of negotiations, the place of performance, the location of the subject matter, and the domicile, residence, nationality, place of incorporation, and place of business of the parties." *Id.* at 419. As the Defendants' motion makes emphatically clear, Oregon is the state with the most significant contacts to the Defendants' dealing with one another, and therefore any possible joint venture formation. (Mot. to Dismiss at 3).

"A joint venture is a partnership for a single transaction, and partnership law controls the parties' relationship." *Roselius v. Hoehne*, 147 Or. App. 687, 696, 938 P.2d 229, 233 (Or. Ct. App. 1997). Partnership formation in Oregon is governed by statute, specifically O.R.S. § 67.055, which was enacted in 1997. *See Wirth v. Sierra Cascade, LLC*, 234 Or. App. 740, 753, 230 P.3d 29, 37 (Or. Ct. App. 2010).

O.R.S. § 67.055 states, in relevant part (emphasis added):

> (1) Except as otherwise provided in subsection (3) of this section, the association of two or more persons to carry on as co-owners a business for profit creates a partnership, <u>whether or not the persons intend to create a partnership</u>.
> ****
> (4) In determining whether a partnership is created, the following rules apply:

  (a) Factors indicating that persons have created a partnership include:
    (A) Their receipt of or right to receive a share of profits of the business;
    (B) Their expression of an intent to be partners in the business;
    (C) Their participation or right to participate in control of the business;
    (D) Their sharing or agreeing to share losses of the business or liability for claims by third parties against the business; and
    (E) Their contributing or agreeing to contribute money or property to the business.
  (b) Joint tenancy, tenancy in common, tenancy by the entireties, joint property, common property or part ownership does not by itself create a partnership, even if the co-owners share profits made by the use of the property.
  (c) The sharing of gross returns does not by itself create a partnership, even if the persons sharing them have a joint or common right or interest in property from which the returns are derived.
  (d) It is <u>a rebuttable presumption that a person who receives a share of the profits of a business is a partner in the business</u>, unless the profits were received in payment of:
    (A) A debt by installments or otherwise;
    \*\*\*\*
    (E) Interest or other charge on a loan, whether or not the amount of payment varies with the profits of the business, and whether or not the loan agreement or instrument includes a direct or indirect present or future ownership interest in collateral or rights to income, proceeds or increase in value derived from collateral; or
    \*\*\*\*
  (e) <u>An agreement to share losses by the owners of a business is not necessary to create a partnership.</u>

The enactment of § 67.055 substantially displaced existing precedent governing partnership formation, most significantly by removing intent as an essential requirement. *See Wirth v. Sierra Cascade, LLC*, 234 Or. App. 740, 758, 230 P.3d 29, 40 (Or. App. Ct. 2010) ("Most importantly, under ORS 67.055(1), a partnership may be created unintentionally by the parties."). The statute does not indicate which, if any, of the

6

factors must exist, and explicitly states that the sharing of losses is not an essential element. *Id.* at 759–60. However, Oregon Courts have inferred profit sharing to be the "most important" factor, because it creates a rebuttable presumption of partnership. *Id.*

The Defendants' Motion to Dismiss characterizes their relationship with 5 Star Investment Group, LLC and 5 Star Portland Holdings, LLC as that of a borrower to a lender. (Mot. to Dismiss at 2). This drastically understates their shared interest in the real estate development projects at the heart of this case, and, indeed, the silence about the profit sharing agreement in Defendants' Motion and the accompanying affidavits speaks volumes.

Plaintiff was not in possession of the Development Agreements between the Defendants, but was able to obtain a copy from documents filed in a lawsuit by Metro Homes against 5 Star. The Development Agreement for the 4134 N. Michigan property allocated 50% of the profits to Dilusso Homes, 25% to Metro Homes, and 25% to 5 Star. (Exhibit A at 1). The existence of this profit share creates a rebuttable presumption the parties were engaged in a joint venture in connection with the 4134 N. Michigan property. While 5 Star did contribute funding in exchange for 10% interest and a share of the profits, the arrangement is more properly characterized as an equity interest, as opposed a more traditional "participation loan" that would fall into the § 67.055(4)(d)(E) exception to the presumption.

First, the 5 Star Companies had no real ownership stake in the interest collected on the loan. The rate set by the Development Agreement and the rate set by the Promissory Note issued to Plaintiff are identical; the ten percent interest payments represent money flowing from Metro Homes and Dilusso Homes to Plaintiff, through 5

7

Star. (Exhibit B at 1). In the event the project failed to turn a profit, 5 Star would literally have no revenue, much less be able to recoup its time and cost incurred in connection with the project. Unless 5 Star realized some gain from its share of the project's profits, it would necessarily incur a loss, notwithstanding language in the agreement that "5 Star nor its investors shall bear any responsibility of loss, if any." (Exhibit A at 2).

The substantially below market rate on the funds is further evidence that the financing arrangement is more properly characterized as an equity stake, rather than a mere participation loan between a borrower and a lender. Andrea C. Barach, *A Practical Guide to Equity Participation Loans: Legal Principles and Drafting Considerations*, 20 REAL EST. L.J. 115, 130 (1991) ("[I]f the interest charged on the note is substantially below market, then the lender does share in the losses since its receipt of the interest without any participation fails to fully compensate the lender[.]").

Documents related to development agreements between the Defendants suggest that the interest rate on the more traditional "hard money" loans was set a full 800 points higher at 18%, while typically participation loans set rates only .5% to 2% below market. *See* Exhibit C at 1; Spencer J. Coopchik, Yildiray Yildirim, *Drafting and Securitizing Participation Mortgages: A Reintroduction*, 8 J. BUS. ENTREPRENEURSHIP & L. 467, 468-69 (2015). This extreme divergence from the market rate is strong evidence for characterizing the 5 Star financing as equity rather than debt.

Later modifications to the 4134 N. Michigan Development Agreement provide further evidence of a partnership relationship between the Defendants. In June 2014, Metro Homes and 5 Star apparently bought out Dilusso Homes interest in the project for $75,000. (Exhibit A at 9). The buyout alone is indicative of a partnership relationship,

since the buyout payment is an undifferentiated joint transfer of money from Metro Homes and 5 Star to Dilusso Homes, in exchange for an equal division of Dilusso Homes' profit share. *Id.* At this point the agreement was also amended to give 5 Star an early profit draw equal to 5% of any financing it contributed to the project, with 5 Star responsible for repayment of the advance if the profits were insufficient. (Exhibit A at 11). So while loss sharing is not necessary for joint venture formation in Oregon, 5 Star clearly acquired a progressively larger share of both the profits and the losses associated with the project.

On top of all this, the "addenda" downplayed by Defendants' motion explicitly referred to the development project as a "<u>joint venture</u>." (Exhibit B at 3) (emphasis added). Indeed, these addenda added Metro Homes and Dilusso Homes as additional borrowers, making Plaintiff the lender and 5 Star, Metro Homes, and Dilusso Homes <u>co-borrowers</u>. Joint and several liability for the Promissory Note essentially renders any loss a shared loss, since 5 Star would be obligated for the repayment if losses rendered Metro Homes and Dilusso Homes unable to do so, and this is further evidence that the Defendants were engaged in a joint venture. *See e.g.*, *O'Brien v. Cacciatore*, 227 Ill. App. 3d 836, 845, 591 N.E.2d 1384, 1390 (1992) (applying Illinois law and finding joint liability, or its absence, highly indicative of joint venture relationships).

The Development Agreement for the 4134 N. Michigan project also clearly demonstrates the existence of joint participation and control over the project. First, the parties jointly exercised control over the project ex ante when they negotiated the detailed Development Agreement. The agreement designated which property would be developed, that Metro Homes would be the developer in charge, who they would hire as

9

general contractor, and how the day-to-day responsibilities would be divided. (Exhibit A at 2). It states that the pro forma estimate was "derived from each individuals [sic] input" and that "all parties have reviewed and agreed on the attached plans to renovate or construct on property[.]" *Id.* While Metro Homes and Dilusso Homes likely had a greater level of involvement in day-to-day oversight of the project, 5 Star retained control by distributing funds in response to detailed draw requests and reserving the right—or possibly even the obligation—to pay contractors directly. *Id.* All parties received a weekly accounting that included "checks, invoices, bank statements, expenses [sic] reports, closing statement and documents" and had the right to "request and receive additional information" at any time. *Id.* The detailed nature of the draw request arrangement, and the integral role it played in the day-to-day operations of the projects is made especially apparent in the complaint filed by Metro Homes against 5 Star in Portland. (Exhibit D). Once 5 Star became unresponsive to draw requests, the projects became paralyzed. (Exhibit D at ¶ 109) ("[Metro Homes] is unable to pay the amounts owed to subcontractors and lenders without payment pursuant to the 5 Star Entities Agreements.").

The only real evidence weighing against the existence of a joint venture is the language in the Development Agreement that it is not intended to create a partnership. (Exhibit A at 1). This, of course, is counterbalanced by the Defendants' actual dealings and the "addenda" that describe the enterprise as "regarding the joint venture entered therein pertaining to the property known as 4134 N Michigan Ave., Portland, OR 97217." (Exhibit A at 8). And, even if the Defendants' did not actually intend to enter into a joint venture, Oregon law expressly disclaims intent as an essential element. O.R.S. § 67.055.

The other factors relevant to partnership formation are clearly satisfied: the Defendants shared profits; there was joint participation and control; the Defendants shared losses; and the Defendants contributed money or property to the business. O.R.S. § 67.055. Profit sharing by itself creates a rebuttable presumption of a joint venture. *Id.* Defendants cannot avail themselves of any exception to the presumption because 5 Star was not loaning money at all; 5 Star was in reality a joint borrower with Metro Homes and Dilusso Homes. Even if it was considered to be some sort of "participation loan" from 5 Star, the specific terms warrant recharacterizing the debt as equity given the dramatically below market rate.

The Defendants make no showing, in their affidavits or otherwise, that would refute the existence of a joint venture between them and their co-defendants beyond their characterization of their relationship as that of lender-borrower. Mr. Palazzo's affidavit is technically not even offered in support of this Motion to Dismiss, but in support of some other motion to appoint a temporary receiver. (Declaration of Randall Palazzo ¶ 1). The failure to offer anything to refute the existence of a joint venture, coupled with the motion's silence on the profit sharing arrangement, is especially remarkable given that, upon inquiry, Plaintiff told Defendant Metro Homes that his theory of personal jurisdiction was premised on joint venture liability. All that aside, there may be enough evidence to find that a joint venture existed between the Defendants as a matter of law. At minimum, the joint venture's existence is a dispute of material fact that must be resolved in Plaintiff's favor for purposes of the Motion to Dismiss.

### C. The Joint Venture has Sufficient Minimum Contacts with Illinois to Establish Specific Personal Jurisdiction.

Because Metro Homes and Dilusso Homes were participants in a joint venture with Earl Miller, Matthew Gingerich, and their 5 Star Companies, personal jurisdiction over any one is sufficient for jurisdiction over all. *Wendt v. Handler, Thayer, &Duggan, LLC*, 613 F. Supp. 2d 1021, 1030 (N.D. Ill. 2009).

An exercise of specific personal jurisdiction is appropriate when a defendant has created minimum contacts giving rise to the claim by purposefully directing activities at the forum state, or purposefully availing themselves of the privilege of doing business in the state. *Citadel Grp. Ltd. v. Washington Reg'l Med. Ctr.*, 536 F.3d 757, 761 (7th Cir. 2008). The minimum contacts analysis is not "mechanical or quantitative", and in the context of a contract requires consideration of the negotiations, contemplated consequences, the terms of the contract, and the actual course of dealing between the parties. *Id.* at 761-62. While the mere existence of a contract is not dispositive for establishing minimum contact, neither is a defendant's physical absence from the forum state. *See e.g.*, *Abbott Labs., Inc. v. BioValve Techs., Inc.*, 543 F. Supp. 2d 913, 920, 924 (N.D. Ill. 2008).

Even if Defendants Metro Homes and Dilusso Homes have standing to do so, they have provided no evidence that rebuts Plaintiff's prima facie showing of sufficient minimum contacts to establish personal jurisdiction over Matthew Gingerich, Earl Miller, and the entities controlled by them.

Miller, Gingerich and their entities purposefully and repeatedly availed themselves of the privilege of doing business in the state of Illinois. Plaintiff was introduced to the 5 Star Companies by his brother as part of a referral program initiated by the 5 Star Companies, a program that called existing lenders and encouraged them to

bring in new lenders. (Compl. ¶¶ 47–48). Plaintiff traveled only once to Indiana to meet with a 5 Star employee, and subsequently called their office to initiate his first investment. *Id.* at ¶¶ 48-49. In response, the 5 Star Companies express mailed documents to Plaintiff's home in Illinois, including instructions for wiring funds to the company. *Id.* at ¶ 49. All further business, including interest payments and signing of additional promissory notes, was conducted via phone and mail to Plaintiff's home in Illinois. *Id.* at ¶¶ 50-58. The 5 Star Companies called Plaintiff to initiate rollovers of these principal investments into ten different properties. *Id.* After his initial introduction to the 5 Star Companies, for over two years, all negotiations and business dealings between Plaintiff and the 5 Star Companies were done at Plaintiff's home in Illinois via phone and mail, and primarily initiated by 5 Star Company employees. The terms of the promissory notes lists Plaintiff's Illinois address, and it grants broad rights to Plaintiff to pursue collection of the note. (Exhibit B at 1) ("Borrower waives presentment for payment, protest, notice of protest, notice of non-payment or dishonor of this Note, and diligence in the collection of this Note[.]"). The broad collection rights and the absence of a competing choice of law provision support the foreseeability of Plaintiff haling the 5 Star Companies and their co-venturers into court in Illinois.

"The main factor in the minimum contacts due process analysis is foreseeability," and the 5 Star Companies could reasonably expect to be haled into court in Illinois if they failed to make interest payments to a person with whom they almost exclusively conducted business with in Illinois. *Mors v. Williams*, 791 F. Supp. 739, 742 (N.D. Ill. 1992) (finding minimum contacts sufficient where plaintiff initiated negotiations out of state but defendant subsequently solicited loan in Illinois). The notes were signed in

Illinois, the money came from Illinois, the interest was sent to Illinois, calls were made to Illinois to secure investments in additional properties, and the obligations lay in Illinois. Plaintiff's Complaint contains sufficient allegations to make out a prima facie case of personal jurisdiction over Miller, Gingerich, and their entities, and Plaintiff's submission of the Promissory Note and the Development Agreement are sufficient affirmative evidence to establish personal jurisdiction over Metro Homes and Dilusso Homes as co-venturers.

Finally, Defendants Metro Homes and Dilusso Homes maintain they never saw the Plaintiff's promissory note, but at minimum, they saw and signed the addenda attached to it, and that addenda makes explicit reference to the promissory note. (Exhibit B at 3). Because no discovery has been taken, at this time Plaintiff has no other affirmative evidence to refute this claim, but the signed addenda is sufficient in and of itself to refute their claim they never saw the promissory note. Plaintiff also disputes Metro Homes' characterization of 5 Star as Plaintiff's agent, an assertion for which they provide no legal authority. (Mot. to Dismiss at 4). Plaintiff also suggests that Defendants' footnoted confusion over the "Section 1" language of the addenda is most sensibly clarified by referring to the first paragraph, or section, of the Promissory Note, which contains Plaintiff's name, address, the amount of the loan, the interest rate, and payment terms. (Exhibit B at 1; Mot. to Dismiss at 11 n.2). And given that a core concern of personal jurisdiction analysis is fairness, it is worth noting that Metro Homes and Dilusso Homes seem to concede that there would potentially be personal jurisdiction in Indiana. It is difficult to understand why litigating in Illinois instead is meaningfully

"less fair", or why requiring Plaintiff to litigate his case against them in Indiana, where none of them reside, would be "more fair."

WHEREFORE Plaintiff William Adamczyk respectfully asks this Court to deny the Defendants' Motion to Dismiss for Lack of Personal Jurisdiction.

Respectfully Submitted,

William Adamczyk

**April 11, 2016**          By: /s/ J. Samuel Tenenbaum____

J. Samuel Tenenbaum
Joseph Delich – JD Candidate 2016 (No. 2015LS00190)
Bluhm Legal Clinic
Northwestern University School of Law
375 E. Chicago Avenue
Chicago, Illinois 60611
(312) 503-4808 (telephone)
(312) 503-8777 (facsimile)
s-tenenbaum@law.northwestern.edu
j-delich2016@nlaw.northwestern.edu

*Counsel for William Adamczyk*

# CERTIFICATE OF SERVICE

      I hereby certify that on April 11, 2016, a copy of the foregoing **PLAINTIFF'S RESPONSE IN OPPOSITION TO THE MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION** was filed electronically. Notice of this filing will be sent to the attorneys of record by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

                                                    By: /s/ J. Samuel Tenenbaum____

                                                            J. Samuel Tenenbaum